**FILED**

November 22, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
                        **AM**
                                        DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ABEL CUELLAR LOPEZ, Individually, | § | |
| and as Wrongful Death Beneficiary of | § | |
| X.J.L., et al, | § | |
|     *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 02:24-00079-AM |
| | § | |
| DANIEL DEFENSE, LLC; | § | |
| DANIEL DEFENSE HOLDINGS, LLC; | § | |
| M.C. DANIEL GROUP, INC.; | § | |
| FIREQUEST INTERNATIONAL, INC.; | § | |
| FLASH CO., INC.; | § | |
| PROJECT ECHO HOLDINGS, LLC d/b/a | § | |
| AMERICAN HOLOPTICS; | § | |
| KOUCAR MANAGEMENT, LLC; and | § | |
| OASIS OUTBACK, LLC | § | |
|     *Defendants* | § | |

---

### DANIEL DEFENSE, LLC f/k/a DANIEL DEFENSE, INC.,
### DANIEL DEFENSE HOLDINGS, LLC, AND M.C. DANIEL GROUP, INC.'S
### RULE 12(B)(6) MOTION TO DISMISS

TO CHIEF UNITED STATES DISTRICT JUDGE ALIA MOSES:

Now come Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings, LLC, and M.C. Daniel Group, Inc. (collectively here, "Daniel Defense") and file this Rule 12(b)(6) Motion to Dismiss. The Court should dismiss all of Plaintiffs' claims against Daniel Defense as congressionally mandated by the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA").

# TABLE OF CONTENTS

INTRODUCTION.......................................................................................................... 1

BACKGROUND............................................................................................................ 3

ARGUMENTS AND AUTHORITIES ........................................................................ 3

I.     The standards for dismissal under Rule 12(b)(6) are well established.............................. 3

II.    The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties. .............................. 4

     A.    Congress provided extensive findings in support of its legislation and clearly laid out its purposes ........................................................................................... 4

     B.    The PLCAA prohibits bringing "qualified civil liability actions." ........................ 6

III.    Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed........................................................................................................... 9

IV.    Section 46.06(a)(2) cannot serve as the basis for either a predicate exception or a negligence per se exception............................................................................................... 10

     A.    Plaintiffs' purported PLCAA exceptions fail as a matter of law. ........................ 10

     B.    Plaintiffs' attempted reliance on Section 46.06(a)(2) as a predicate exception fails for three reasons. ....................................................................................... 13

          1.    Plaintiffs fail to plead any facts that the alleged statutory violation caused their harm. ...................................................................................... 14

          2.    Plaintiffs' allegations affirmatively negate the "offer" as a proximate cause of their harm. .............................................................................. 15

          3.    Under the PLCAA, Section 46.06(a)(2) cannot serve as a predicate statute. ...................................................................................................... 20

     C.    Plaintiffs cannot rely on Section 46.06(a)(2) as the basis for a negligence per se exception. ................................................................................................... 21

          1.    Plaintiffs' negligence per se claim based on Section 46.06(a)(2) fails because they fail to plead causation at all, and their allegations expressly negate the "offer" as a proximate cause of Plaintiffs' injuries. ...................................................................................................... 22

          2.    Plaintiffs fail to adequately plead a negligence per se claim. ................... 23

168255

       3.    Plaintiffs lack an analogous common law duty necessary for their negligence per se claim. .............................................................. 24

V.    Plaintiffs seek to punish and deter Daniel Defense's protected speech regarding Second Amendment-protected activity, in violation of the First Amendment................. 27

    A.    Incitement is the appropriate First Amendment standard for evaluating Plaintiffs' Speech Claims, and they do not and cannot meet it. ........................... 29

        1.    Plaintiffs' Speech Claims are based upon a theory of incitement. ............ 29

        2.    Plaintiffs have not, and cannot, meet the standard for incitement. .......... 31

            a.    The legal standard for incitement is exacting. .............................. 31

            b.    The allegations here do not rise to incitement. ............................. 32

    B.    Plaintiffs' Speech Claims also fail commercial speech scrutiny. .......................... 36

    C.    Plaintiffs' Speech Claims are content- and viewpoint-based. ............................. 39

VI.    Plaintiffs' remaining claims against Daniel Defense fail under Texas law. .................... 42

    A.    Plaintiffs' claims against Daniel Defense for "aiding and abetting" the tortious conduct of other defendants fail as a matter of law because Texas does not recognize such a cause of action. ........................................................................ 42

    B.    Because Plaintiffs' negligence claims are subject to dismissal, so is their claim for gross negligence. ......................................................................................... 44

VII.    The Court should deny Plaintiffs leave to amend their claims because any amendment would be futile............................................................................................................. 45

CONCLUSION ..................................................................................................................... 46

CERTIFICATE OF SERVICE................................................................................................. 47

168255

## INTRODUCTION

The Court should dismiss all of Plaintiffs' claims because under the PLCAA Daniel Defense is immune from this suit. *See* Section III, *infra*. With the PLCAA, Congress prohibited ***bringing*** actions against firearms manufacturers and sellers for harm caused by the criminal conduct of individuals like the Assailant. The PLCAA is not just a defense to liability; it mandates ***immunity from suit***. *See In re Academy, Ltd.*, 625 S.W.3d 19, 34 (Tex. 2021) ("*Academy*") (citing federal cases).

There are, of course, exceptions to immunity. Plaintiffs in other cases filed against Daniel Defense –*Torres*, *Zamora*, and *Albarado*– have alleged violations of the Federal Trade Commission Act and Texas Deceptive Trade Practices Act as the basis for both a "predicate exception" and a negligence per se exception. Plaintiffs do not plead either of these statutes as a basis for PLCAA exceptions here. Instead, Plaintiffs allege that Daniel Defense, through an email, offered to sell the Rifle to the Assailant when he was 17 in violation of Section 46.06(a)(2) of the Texas Penal Code. This provision prohibits intentionally or knowingly selling, renting, leasing, giving or offering to sell a firearm to a person under the age of 18.[1]

Plaintiffs' reliance on Section 46.06(a)(2) generally fails because the email at issue is not an offer and, regardless, Plaintiffs plead no facts to establish Daniel Defense knew the Assailant was 17 when it sent the email.

Plaintiffs cannot rely on Section 46.06(a)(2) as the basis for a "predicate exception" for three reasons. First, Plaintiffs plead no facts that the alleged violation –the email– caused their harm. Rather, and second, Plaintiffs expressly negate the email as a cause of their harm because they allege the Assailant chose to attack the school, using a Daniel Defense rifle, ***months before*** it sent the email.

---

[1] It is undisputed the Assailant both purchased the Rifle and took possession of it when he was 18.

Third, as a matter of law, Section 46.06(a)(2) cannot serve as a predicate exception. *See* Section IV(B), *infra*.

Plaintiffs also rely on the alleged violation of this provision as the basis for a negligence per se exception to PLCAA immunity, and it fails for similar reasons including failing to allege causal facts and, instead, alleging facts that negate the email as a cause of Plaintiffs' harm. Additionally, Plaintiffs inadequately plead negligence per se because they do not allege that any court has held that a violation of Section 46.06(a)(2) constitutes negligence per se. Plaintiffs also lack an analogous common law duty, preluding their negligence per se claim. *See* Section IV(C), *infra*.

But even if Daniel Defense was not wholly immune from this lawsuit under the PLCAA, the First Amendment bars Plaintiffs' negligence claims. Plaintiffs allege that Daniel Defense's fully protected speech—over a span of years—influenced the Assailant to violence, causing their injuries. But as the Supreme Court recently reaffirmed, mere negligence is ***never*** an appropriate standard of liability under the First Amendment. Instead, Plaintiffs must demonstrate that the speech rises to the level of incitement. Their allegations fall woefully short of that exacting standard. *See* Section V(A), *infra*. Nor does the Petition survive scrutiny under any other standard. Plaintiffs' claims, if permitted to persist, would unconstitutionally infringe and restrict Daniel Defense's protected speech. *See* Section V(B), *infra*. Worse yet, Plaintiffs' theory of liability is a thinly veiled attempt to restrict the pro-Second Amendment and patriotic messages and viewpoint that Daniel Defense promotes. The First Amendment, however, flatly forbids such content- and viewpoint-based restrictions of speech. *See* Section V(C), *infra*.

Plaintiffs' remaining claims for "aiding and abetting" and gross negligence are untenable under state law. Texas and the Fifth Circuit do not recognize a cause of action for aiding and abetting the tortious conduct of another defendant. *See* Section VI(A), *infra*. Finally, a finding of negligence

168255

is a prerequisite to claim for gross negligence. Because Plaintiffs' negligence claims are subject to dismissal, the Court should also dismiss their gross negligence claim. *See* Section VI(B), *infra*.

Daniel Defense is not and cannot be liable for the criminal acts of the Assailant. All of Plaintiffs' claims against Daniel Defense are precluded by the PLCAA's immunity, the Constitution, and Texas law. Accordingly, the Court should dismiss all of Plaintiffs' claims against Daniel Defense with prejudice.

## BACKGROUND

Plaintiffs originally filed this lawsuit on May 24, 2024 in Uvalde County District Court.[2] Daniel Defense removed the action on July 26, 2024. Doc. 1.

Plaintiffs assert five causes of action against Daniel Defense: negligence (First Cause of Action) and negligence per se (Second Cause of Action); aiding and abetting Defendant EOTech (Third Cause of Action); aiding and abetting Defendant Firequest (Fourth Cause of Action); and gross negligence (Fifth Cause of Action). Petition, ¶¶ 457-461, 462-466, 467-469, 470-475, 479-479. Plaintiffs allege the "predicate exception" to the PLCAA based on an alleged violation of Section 46.06(a)(2). *Id.*, ¶ 461; *see* 15 U.S.C. § 7903(5)(A)(iii) (the PLCAA predicate exception). Additionally, Plaintiffs assert the negligence per se exception based also on an alleged violation of the same statute. Petition, ¶ 466; *see* 15 U.S.C. § 7903(5)(A)(ii).

## ARGUMENTS AND AUTHORITIES

**I.    The standards for dismissal under Rule 12(b)(6) are well established.**

The standards governing motions to dismiss under Rule 12(b)(6) are well known and, recently, this Court summarized them.

> To survive dismissal under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

---

[2] Plaintiffs' Original Petition is attached as Exhibit A-2 to Daniel Defense's Notice of Removal. Doc. 1.

168255

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The factual allegations of the complaint must be taken as true, and all reasonable inferences must be drawn in favor of a plaintiff's claims. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Galindo v. City of Del Rio*, No. DR-20-CV-20-AM/CW, 2021 WL 2763033, at *2 (W.D. Tex. Mar. 26, 2021); *see Fernandez-Lopez v. Hernandez*, No. DR:19-CV-46-AM-CW, 2020 WL 9396523, at *10 (W.D. Tex. Oct. 1, 2020), *report and recommendation adopted*, 2020 WL 9396487 (W.D. Tex. Nov. 20, 2020) (citing standards).

While the Court must accept all of Plaintiffs' factual allegations as true for purposes of Rule 12(b)(6), that "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see BG Gulf Coast LNG, L.L.C. v. Sabine-Neches Navigation Dist. of Jefferson Cnty., Tex.*, 49 F.4th 420, 425 (5th Cir. 2022) (citing *Iqbal* and stating "we do not presume that a complaint's legal conclusions are true, no matter how well they are pleaded"); *Mandawala v. Northeast Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (same).

Applying these standards, the Court should dismiss all of Plaintiffs' claims against Daniel Defense.

## II.     The PLCAA broadly prohibits bringing actions against firearms manufacturers and sellers arising out of the criminal misuse of firearms by third parties.

### A.     Congress provided extensive findings in support of its legislation and clearly laid out its broad purposes.

Congress enacted the PLCAA on October 26, 2005. It enumerated several legislative findings, recognizing a variety of concerns –constitutional, legal, and commercial– with respect to actions

4

against firearms manufacturers and sellers arising from the criminal conduct of others.  15 U.S.C. § 7901(a).  Those findings are:

- The Second Amendment preserves the right of the people to keep and bear arms, including of individuals not in the military.

- Lawsuits have been commenced against manufacturers, distributors, and dealers of firearms, which operate as designed and intended, for harm caused by misuse by third parties, including criminals.

- Businesses engaged in lawful interstate and foreign commerce regarding firearms "***are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . that function as designed and intended.***"

- Imposing liability on an entire industry for harm solely caused by others, including criminal actors, is an abuse of the legal system, erodes confidence in the Nation's laws, threatens to diminish constitutional rights and civil liberties, destabilizes industries lawfully competing in our free enterprise system, and is an unreasonable burden on interstate and foreign commerce.

- The liability actions commenced or contemplated by litigants against the firearm industry are based on theories without foundation in the common law and jurisprudence of the United States and sustaining such actions "would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislators of the several states" and would constitute a deprivation of rights guaranteed by the Fourteenth Amendment.

- The liability actions commenced or contemplated by litigants against the firearm industry "attempt to use the judicial branch to circumvent the Legislative branch of government to regulate interstate and foreign commerce through judgments and judicial decrees" threatening the Separation of Powers doctrine and weakening principles of federalism, State sovereignty and comity between the States.

15 U.S.C. § 7901(a) (emphasis added).

Consistent with those findings, Congress identified  seven broad purposes for the PLCAA:

(1) ***Prohibiting "causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."***

5

(2)    ***Preserving citizens' access to firearms and ammunition "for all lawful purposes, including hunting, self-defense, collecting, and competitive or recreational shooting."***

(3)    Guaranteeing citizens' rights, privileges, and immunities under the Fourteenth and Fifth Amendments to the Constitution.

(4)    ***Preventing "the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce."***

(5)    ***Protecting the First Amendment rights of manufacturers***, distributors, dealers, and importers of firearms or ammunition products, and trade associations, to speak freely, to assemble peaceably, and to petition the Government for a redress of their grievances.

(6)    Preserving and protecting the Separation of Powers doctrine and important principles of federalism, State sovereignty and comity between sister States.

(7)    Exercising congressional power under the Full Faith and Credit Clause of the Constitution.

15 U.S.C. § 7901(b) (emphasis added).

**B.    The PLCAA prohibits bringing "qualified civil liability actions."**

Next, in Section 7902, "Prohibition on bringing of qualified civil liability actions in Federal or State court," Congress prohibited bringing any "qualified civil liability actions" in federal or state court.

**(a) In general**

A ***qualified civil liability action*** may not be brought in any Federal or State court.

**(b) Dismissal of pending actions**

A qualified civil liability action that is pending on October 26, 2005, shall be immediately dismissed by the court in which the action was brought or is currently pending.

15 U.S.C. § 7902 (bold italics added).

In Section 7903(5)(A), Congress defined a "qualified civil liability action" as well as ***six exceptions*** to such an action.

6

The term "qualified civil liability action" *means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party*, but shall not include--

(i) an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

(ii) an action brought against a seller for negligent entrustment or negligence per se;[3]

(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--[4]

(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

(iv) an action for breach of contract or warranty in connection with the purchase of the product;

(v) an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that

---

[3] There is no exception for ordinary negligence claims. *Id.*

[4] In the PLCAA caselaw, this exception is referred to as the "predicate exception."

7

> constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or
>
> **(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

15 U.S.C. § 7903(5)(A) (bold italics added).  Thus, if an action meets the definition of a "qualified civil liability action," each claim is barred unless it falls within one of the enumerated exceptions.[5]

The PLCAA clearly prohibits civil actions against manufacturers and sellers for actual and punitive damages, injunctive or declaratory relief, as well as "other relief." *Id.*[6]  The statute provides immunity from suit as the Texas Supreme Court explained in *Academy*.

> "By its terms, the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions."  ***The PLCAA thus "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions.***"

*Academy*, 625 S.W.3d at 35 (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–398 (2d Cir. 2008)) (emphasis added); *see Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (stating the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").

---

[5] Plaintiffs attempt to assert both the predicate exception and the negligence per se exception based on violations of Section 46.906(a)(2) of the Texas Penal Code. Petition, ¶¶ 461, 466.  As shown below, both exceptions are inapplicable as a matter of law in this case.

[6] Under the PLCAA, a "manufacturer" means "with respect to a qualified product, a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in business as such a manufacturer under chapter 44 of Title 18." 15 U.S.C. § 7903(2).  Daniel Defense is a "manufacturer" for purposes of the PLCAA.  Daniel Defense is also a "seller" as defined in 15 U.S.C. § 7903(6) which includes a "dealer" as defined in 18 U.S.C. § 921(a)(11).  The definition of a "dealer" includes "any person engaged in the business of selling firearms at wholesale or retail . . . ." *Id.*  Daniel Defense sells the firearms it manufactures including the Rifle.  A "qualified product" "means a firearm as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18, including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).  The Rifle is a "qualified product."

168255

Importantly, no provision in the PLCAA "shall be construed to create a public or private cause of action or remedy." 15 U.S.C. § 7903(5)(C); *see Academy*, 625 S.W.3d at 30 (acknowledging the PLCAA does not create a public or private cause of action); *see also Phillips v. Lucky Gunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) (same).

## III. Plaintiffs' action against Daniel Defense is "a qualified civil liability action" and should be dismissed.

Plaintiffs' action against Daniel Defense is within the broad scope of the PLCAA. Again, a "qualified civil liability action" has five separate requirements:

> (i)    "a civil action or proceeding or an administrative proceeding",
>
> (ii)   "brought by any person",
>
> (iii)  "against a manufacturer or seller of a qualified product",
>
> (iv)   "for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief", and
>
> (v)    "resulting from the criminal or unlawful misuse of a qualified product by the person or third party."

15 U.S.C. § 7903(5); *Academy*, 625 S.W.3d at 26.

Plaintiffs' petition satisfies all five elements of a "qualified civil liability action." **First**, the complaint is indisputably a "civil action or proceeding" because it is a lawsuit pending in this Court. **Second**, the action is brought by multiple people –Plaintiffs. **Third**, the complaint is brought against the manufacturer and seller of a qualified product. It is undisputed that Daniel Defense manufactured and sold, through the FFL transfer process, the Rifle. *See* Petition, ¶ 144 (stating in petition Assailant bought Rifle manufactured by Daniel Defense); *id.*, ¶ 234 (stating Daniel Defense sold Rifle to Assailant). **Fourth**, Plaintiffs seek actual and exemplary damages from Daniel Defense. *Id.*, p. 98-100. **Fifth**, Plaintiffs' claims against Daniel Defense result from "the criminal or unlawful misuse of a qualified product by" a "third party." *Id.*, ¶ 447 (stating Assailant "murdered nineteen fourth-grade students and two teachers").

9

Plaintiffs' action against Daniel Defense is squarely within the PLCAA's definition of a "qualified civil liability action." Accordingly, the Court should grant Daniel Defense's motion and dismiss all of Plaintiffs' claims against it. *See e.g.*, 84 F. Supp. 3d at 1228 (dismissing all of plaintiffs' claims and concluding plaintiffs failed to establish alleged predicate exception or negligent-entrustment exception); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469, at *8 (N.D. W. Va. Nov. 5, 2010), *aff'd*, 436 F. App'x 151 (4th Cir. 2011) (granting motion to dismiss after concluding plaintiffs failed to establish a PLCAA exception).

Each of Plaintiffs' claims against Daniel Defense is barred by the PLCAA unless it falls within a viable exception. As shown below, however, Plaintiffs fail to plead any viable exception.

**IV.   Section 46.06(a)(2) cannot serve as the basis for either a predicate exception or a negligence per se exception.**

### A.   Plaintiffs' purported PLCAA exceptions fail as a matter of law.

Seeking to avoid the PLCAA's broad grant of immunity from suit, Plaintiffs argue Daniel Defense violated Section 46.06(a)(2) of the Texas Penal Code which they contend qualifies as both a predicate exception and a negligence per se exception to immunity. *See* Petition, ¶¶ 461, 466. Section 46.06(a)(2), "Unlawful Transfer of Certain Weapons," provides that a person commits an offense if the person "***intentionally or knowingly*** sells, rents, leases, or gives or ***offers to sell***, rent, lease, or give ***to any child younger than 18 years of age any firearm***, club, or location-restricted knife . . . ." TEX. PEN. CODE § 46.06(a)(2) (emphasis added). Plaintiffs allege the Assailant created an account on Daniel Defense's website on April 27, 2022 (when he was still 17), added the Rifle to his account, but he did not complete the purchase. Petition, ¶ 354. Plaintiffs allege that two days later, on April 29, 2022, Daniel Defense sent an email to the Assailant, that stated "Your DDM4®v7® is ready in your cart!" *See* Petition, ¶ 356 (the "April 29, 2022 email"). Plaintiffs contend this email was an "offer" to sell a firearm in violation Section 46.06(a)(2). *Id.*, ¶¶ 357, 358, 459, 463.

10

Plaintiffs' reliance on this alleged statutory violation as the basis for two PLCAA exceptions is misplaced.

***First***, the email is not an "offer to sell" within the meaning of Section 46.06, it merely furnishes product information. Section 46.06(a)(2), by contrast, applies only to an illegal sale, "give[]," or offer to imminently sell a firearm to a minor. *See Way v. Boy Scouts of America*, 856 S.W.2d 230, 237 (Tex. App.—Dallas 1993, writ denied) (affirming summary judgment on the plaintiff's negligence *per se* claim, explaining that § 46.06—formerly § 46.07—"is a prohibition of the actual transfer of firearms to minors," not a prohibition against advertisements, *i.e.*, communications that do not propose an imminent unlawful transfer). That conclusion is underscored by the statute's title—"Unlawful ***Transfer*** of Certain Weapons." TEX. PEN. CODE § 46.06 (emphasis added); *see also* SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 221–24 (2012) (the title and headings of statutes are permissible indicators of meaning). Again, it is undisputed that the Assailant purchased and took possession of the Rifle ***legally*** after turning 18 and, thus, there was no unlawful transfer.

The April 29, 2022 email is not an "offer to sell." Plaintiffs fail to quote the entire email. The full text of the email reads:

> Your DDM4®v7® is ready in your cart!
>
> We wanted to circle back around and make sure you didn't miss our last e-mail. We figure you're on the fence about the items in your cart. We'll be happy to answer any questions you might have by contacting us at 1-866-554-GUNS (4867) Monday - Friday 8AM to 5PM EST. If you would prefer to check with your local dealer, you can CLICK HERE and find one near you.[7]

---

[7] Because Plaintiffs repeatedly reference this email in their Petition, the Court may take judicial notice of its contents. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (when reviewing a motion to dismiss, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

168255

No "offer to sell" is made in the email.  It merely reminds the recipient who placed an item in a cart on Daniel Defense's website of that fact and confirms the company's readiness to answer any questions about the item.[8]

At most, that email was a "mere request to consider and examine and negotiate," not the "offer to sell," *i.e.*, solicitation, that Section 46.06(a)(2) contemplates.  *Way*, 856 S.W.2d at 237.  As the court in *Way* observed, interpreting Section 46.06(a)(2) broadly to encompass a mere communication or advertisement, as opposed to a solicitation to sell as part of an unlawful transfer, "would make virtually any firearm advertisement in Texas illegal."  *Id*.  That is precisely the interpretation Plaintiffs advocate here.  According to Plaintiffs, the Assailant "repeatedly" visited Daniel Defense's website "over the course of months," Petition, ¶ 120, weeks before he put the Rifle in his cart and received the "offer," *see id.*, ¶¶ 354-356.  But if the April 29, 2022 email constitutes an "offer to sell" within the meaning of Section 46.06(a)(2), as Plaintiffs claim, then so too would the bare product and price listing on Daniel Defense's website.  That cannot be the case.  "Such a sweeping interpretation" is not only inconsistent with the statute's plain meaning, but also would unconstitutionally restrict protected speech.  *See Way*, 856 S.W.2d at 237; *see also* Section V, *infra* (Plaintiffs' claims are barred by the First Amendment).

***Second***, Section 46.06(a)(2) prohibits a person from "intentionally or knowingly" offering to sell a firearm to a person under the age of 18.  Tex. Pen. Code § 46.06(a)(2).  But Plaintiffs allege no facts to show that Daniel Defense plausibly knew the Assailant's age when it sent the April 29, 2022 email.  Instead, attempting to shore up this deficiency, Plaintiffs allege "[u]pon information and belief, Daniel Defense knew and was aware that the Shooter was below the age of eighteen when it sent him

---

[8] Any doubt this communication was not an "offer to sell" to a minor within the meaning of Section 46.06—or even perceived as such—is dispelled by Plaintiffs' allegation that the Assailant ordered the Rifle "within minutes of" turning eighteen. Petition, ¶ 120.  The only reasonable inference from that allegation is that even the Assailant understood Daniel Defense's automated communication was not an "offer to sell" him a firearm because he was not yet 18 years old, and his age would necessarily be verified by a licensed dealer before any sale or transfer could occur.

a targeted offer to sell him the DDM4v7." Petition, ¶ 363.[9]  While pleading on information and belief

can be proper in some circumstances, this is true only if Plaintiffs detail "the grounds for [their]

suspicions."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436,

443 (7th Cir. 2011).  Specifically, "[t]he grounds for the plaintiff's suspicions must make the

allegations *plausible*[.]"  *Id.*; *see also Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.").  Plaintiffs' allegations do not meet that basic

standard.  Instead of factual allegations, or even factual grounds for suspicion, Plaintiffs rely upon

successive layers of assumption and speculation, leaving their allegations upon "information and

belief" wholly insufficient.

In view of these basic shortcomings, Plaintiffs' reliance on Section 46.06 fails as a matter of

law.

### B.     Plaintiffs' attempted reliance on Section 46.06(a)(2) as a predicate exception fails for three reasons.

Even assuming, *arguendo*, that the April 29, 2022 email is an "offer to sell" within the

meaning of Section 46.06, and that Daniel Defense knew the Assailant's age at the time, Plaintiffs

still fail to plead a viable predicate exception.

The PLCAA's "predicate exception" applies only if the alleged statutory violation "was a

proximate cause of the harm for which relief is sought . . . ."  15 U.S.C. § 7903(5)(A)(iii).  The failure

---

[9] The Terms and Conditions on Daniel Defense's website explain that for the sale of any firearm, the purchaser must be of legal age and must present a valid government identification document when the purchaser personally receives the firearm from a Federal Firearms Licensee.  The Terms and Conditions can be found at: https://danieldefense.com/firearm-purchase-terms-and-conditions

Again, because Plaintiffs repeatedly reference Daniel Defense's website and its contents in their petition (*e.g.*, Petition, ¶¶ 95, 105, 118), the Court may take judicial notice of its contents. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 491 n.12 (5th Cir. 2013) (district court was entitled to take judicial notice of posts appearing on website); *Reed v. LKQ Corp.*, 436 F. Supp. 3d 892, 901 n.7 (N.D. Tex. 2020) (taking judicial notice of information posted on the defendant's website).

13

to sufficiently plead proximate cause in connection with the statutory violation means no predicate exception can apply, leaving the PLCAA's immunity from suit firmly in place. For instance, in *Prescott v. Slide Fire Sols., LP*, the plaintiffs alleged a violation of 18 U.S.C. § 1001(a)(2), which prohibits giving false information in any matter within the jurisdiction of a federal department or agency, as a predicate exception. 341 F. Supp. 3d 1175, 1191 (D. Nev. 2018). The plaintiffs maintained the defendant made false representations about bump stocks in a letter to the ATF. The district court dismissed the plaintiffs' claims, concluding they failed to allege the statutory violation was a proximate cause of their harm.

> While the letter alludes to Slide Fire's alleged misrepresentation, it is not clear that this influenced the ATF's conclusion. On this point, Plaintiffs have not come forward with any authority suggesting that a device's utility to those with disabilities impacts whether that device constitutes a firearm or firearm part. Significantly, if a device's marketability to those with disabilities was not a factor in the ATF's finding, then ***it follows that Plaintiffs cannot show that Slide Fire's misrepresentation proximately caused the injuries that are the subject of this case.*** *See* 15 U.S.C. § 7903(5)(A)(iii) (requiring a defendant's alleged predicate violation be a "proximate cause of the harm for which relief is sought"). ***Therefore, at this juncture, the Court is not satisfied that Slide Fire's alleged misrepresentation to the ATF gives rise to a predicate statutory violation under the PLCAA.***

*Id.* (citation omitted).

As *Prescott* illustrates, here, Plaintiffs must allege (and ultimately prove) that Daniel Defense's email caused their harm. Plaintiffs' petition, however, not only (1) fails to adequately plead causation, but (2) also expressly negates it. Lastly, and independently, Plaintiffs cannot rely on Section 46.06 to support a predicate exception because Congress deliberately excluded such statutes from serving as predicate statutes.

### 1. Plaintiffs fail to plead any facts that the alleged statutory violation caused their harm.

Plaintiffs offer a sole, conclusory allegation that the "offer" caused their harm. *See* Petition, ¶ 461 (stating Daniel Defense's violation of Section 46.06(a)(2) "was a proximate cause of the harm

for which relief is sought").  They plead no facts that the Assailant either chose to purchase the Rifle or used it to commit his crimes *because* he received the April 29, 2022 email in violation of Section 46.06.  In such circumstances, dismissal under Rule 12(b)(6) is required.  *Prescott*, 341 F. Supp. 3d at 1191; *see also Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2022 WL 1050314, at *4 (W.D. Tex. Apr. 7, 2022) (dismissing claim because plaintiff failed to plead specific facts to support causation); *Rodriguez v. Xerox Bus. Services, LLC*, No. EP-16-CV-00041-FM, 2017 WL 3023213, at *4 (W.D. Tex. Mar. 27, 2017) (conclusory allegations of proximate causation were insufficient); *Linke United States Bratcher v. United States*, No. W-14-CV-444, 2015 WL 12743613, at *4 (W.D. Tex. June 2, 2015) (dismissing claim because plaintiff's alleged violations of army regulations were too attenuated to allege proximate causation).[10]

Plaintiffs' allegation that the "offer" caused their harm are improper legal conclusions—not facts.  *See* Petition, ¶ 461.  Therefore, Plaintiffs have failed to sufficiently plead the alleged violation of Section 46.06(a)(2) was a proximate cause of their injuries.  Moreover, no amendment can resolve the issue because, as addressed below, Plaintiffs' allegations expressly negate causation.

### 2. Plaintiffs' allegations affirmatively negate the "offer" as a proximate cause of their harm.

Dismissal is warranted when a claimant's allegations *negate a claim*.  "Even if some allegations support a claim, if other allegations negate the claim on its face, then the pleading does not survive the 12(b)(6) review."  *Thornton v. Ditech Fin. LLC*, No. 2:18-CV-156, 2018 WL 4408979, at *3 (S.D. Tex. Sept. 17, 2018) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *see Britt v. Nueces Cnty.*, No. 2:23-CV-00319, 2024 WL 346525, at *1 (S.D. Tex. Jan. 30, 2024) (same); *Long Range*

---

[10] *See also Madden v. Gribbon*, No. 3:21-CV-1168-S, 2022 WL 4360558, at *8 (N.D. Tex. Sept. 20, 2022) (dismissing claim when plaintiffs failed to plead facts demonstrating causation); *Hitchcock Indep. Sch. Dist. v. Arthur J. Gallagher & Co.*, No. 3:20-CV-00125, 2021 WL 1095320, at *3, n. 1 (S.D. Tex. Feb. 26, 2021), *report and recommendation adopted*, No. 3:20-CV-00125, 2021 WL 1092538 (S.D. Tex. Mar. 22, 2021) (same); *Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*, No. 3:18-CV-00173, 2018 WL 7291722, at *8 (S.D. Tex. Dec. 21, 2018), *report and recommendation adopted*, No. 3:18-CV-00173, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) (same).

168255

*Sys., Inc. v. NTN Wireless Communications, Inc.*, No. 3-03-CV-0598-L, 2003 WL 21283194, at *1 (N.D. Tex. May 28, 2003) (dismissal on the pleadings is appropriate if "the facts stated in plaintiff's complaint affirmatively negate its cause of action"). An example is instructive.

In *Bonin v. Sabine River Auth. of Tex.*, the plaintiffs sued two river authorities and several entities that owned two hydroelectric generators (the Entergy Defendants) after their property was damaged in a flood. No. 1:17-CV-00134-TH, 2019 WL 1246259, at *1 (E.D. Tex. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1244705 (E.D. Tex. Mar. 18, 2019), *aff'd sub nom.*, 961 F.3d 381 (5th Cir. 2020). The plaintiffs alleged the river authorities had a contract with the Entergy Defendants that placed a duty on them to control the water. *Id.* at *2. The Entergy Defendants moved to dismiss the plaintiff's negligence claim. *Id.* at *3. Under Texas law, private entities only have a duty to control surface water, while the state has exclusive domain over floodwaters. *Id.* at *6. The district court dismissed the plaintiff's negligence claim because their complaint alleged their property was damaged by floodwater and not surface water.

> In summary, the Plaintiffs alleged that the waters that caused their damages were released from the upstream body through the spillway gates into the Sabine River. As a matter of law, the water was no longer "surface water" as soon as the spillway gates released the water into the Sabine River. The water became floodwaters when it overflowed the natural watercourse of the Sabine River. Accordingly, ***based on the Plaintiffs' own articulation of the events in the operative complaint, the Plaintiffs have not alleged that they were harmed by "surface waters"—they only alleged that they were harmed by "floodwaters."*** Based on the Texas law cited by the Entergy Defendants (which was not disputed nor distinguished by the Plaintiffs), the Entergy Defendants owed no duty to control such floodwaters, they cannot breach a duty they do not owe, and they cannot proximately cause damages if they have no duty to control the waters in the first place. ***Stated another way, the operative complaint fails to allege sufficient facts to state a negligence claim for which relief can be granted because it includes only allegations that the Plaintiffs were harmed by floodwaters, not surface waters.***

*Id.* at *7 (citations omitted) (emphasis added); *see DM Arbor Court, Ltd. v. City of Houston*, No. CV H-18-1884, 2021 WL 4926015, at *34–35 (S.D. Tex. Oct. 21, 2021) (dismissing claim for failing to allege proximate causation, stating "[t]o the extent the third amended complaint includes factual

allegations touching on concepts of causation, they refute the notion that the City's communications plausibly served as the proximate cause of DMAC's damages").

Applying this principle here, Plaintiffs' allegations negate their proposed predicate exception. Specifically, Plaintiffs' allegations assert the Assailant had decided on his attack, *and decided to use a Daniel Defense rifle*, long before he received the April 29, 2022 email.   Specifically, Plaintiffs allege:

- "*By the end of 2021, the Shooter had begun to formulate the idea of committing a mass shooting with a Daniel Defense DDM4v7*." Petition, ¶ 272 (emphasis added).

- "*In November 2021*, within weeks of downloading Call of Duty: Modern Warfare, *the Shooter began to research the tools he felt he needed for a mass shooting*. He began to research firearms online." *Id.*, ¶ 274 (emphasis added).

- "[The Assailant] took a job at a local Whataburger and began saving money. He told acquaintances that he was 'saving for something big.'" *Id.*, ¶ 277.

- "On December 29, 2021, the Shooter visited Daniel Defense's website and browsed Daniel Defense's AR-15s." *Id.*, ¶ 280.

- "From December 29, 2021 until he carried out the shooting – a period of nearly five months – the Shooter repeatedly visited Daniel Defense's website . . . . He repeatedly viewed the DDM4v7 online. *The Shooter visited Daniel Defense's website so frequently that the Safari browser on his iPhone automatically created a bookmark for Daniel Defense's website as a 'frequently visited site*." *Id.*, ¶ 281 (emphasis added).

- "In researching the DDM4v7, the Shooter saw himself as equipping for battle in the same way that he had time and time again when playing Call of Duty. *In a January 2022 online conversation* with an acquaintance, the Shooter and the acquaintance discussed types of AR-15 rounds. The acquaintance claimed that he had 'green tips,' a common phrase used to refer to armor piercing rounds. *The Shooter explained* that '[t]hose suck' because '[t]hey're made to go through armored stuff … but *they're not good for hitting ppl it goes straight through them [m]ost of the time'*. That was the type of knowledge the Shooter gained from playing Call of Duty." *Id.*, ¶ 282 (emphasis added).

17

- "The shooter's interest in the DDM4v7 made him increasingly motivated to earn extra money so that he could afford the DDM4v7. The Shooter began tracking his work hours and earnings.  In March 2022, he created a note that said:

  Money to get by April
  1000 from Wendy's
  264
  450 from child support
  😐😐💀💀💀💀💀💀💀💀💀💀💀💀💀

  *Id.*, ¶ 286.

- "***In April 2022, the Shooter legally purchased sixty thirty-round AR-15 compatible high-capacity magazines** from cheaperthandirt.com." Id.*, ¶ 289 (emphasis added).

- "In January 2022, the Shooter visited Defendant Firequest's website, firequest.com, and viewed the Hell-Fire Gen 2 snap-on trigger system." *Id.*, ¶ 293.

- "***At the beginning of March 2022, the Shooter purchased a Hell-Fire Gen 2 snap-on trigger from Firequest.*** *Id.*, ¶ 294 (emphasis added).

- "***On April 16, 2022***, the Shooter made another purchase inspired by Daniel Defense's marketing, another purchase that equipped him to carry out a close-quarters mass shooting.  ***The Shooter purchased a holographic combat sight manufactured by Defendant EOTech***." *Id.*, ¶ 315 (emphasis added).

- "As ***the Shooter was planning to kill as many people as possible in the close quarters of an elementary*** school, EOTech's marketing of its holographic battle sight described exactly what he wanted." *Id.*, ¶ 329 (emphasis added).

- "Because ***the Shooter planned to assault a school***, where children would be on lockdown, he could expect that he would need to breach. EOTech's advertising portrayed its holographic battle sight as the perfect tool." *Id.*, ¶ 332 (emphasis added).

- "On April 27, 2022, when the Shooter was still seventeen . . . he signed up for an account on Daniel Defense's website." *Id.*, ¶ 352.

- "***On April 27, 2022, after creating his Daniel Defense account, the Shooter added the DDM4v7 to his shopping cart on Daniel Defense's website but did not complete the purchase.*** *Id.*, ¶ 354 (emphasis added).

These factual allegations expressly negate Plaintiffs' conclusory allegation that the "offer to sell" –the April 29, 2022 email– proximately caused their harm. There simply is no support for that legal conclusion in view of all the prior conduct Plaintiffs allege occurred. According to Plaintiffs, the Assailant conceived his murderous plot in 2021 and prepared for it throughout early 2022, including purchasing items found at the crime scene (extra magazines, the trigger system, and the optical sight).

Most importantly, with respect to Plaintiffs' claims against Daniel Defense, Plaintiffs affirmatively allege the Assailant had already decided to buy and use the Daniel Defense DDM4v7 rifle to commit his crimes *before* he received the April 29, 2022 email. As shown above, the Assailant first began researching the rifle in 2021. Petition, ¶¶ 274, 280, 281. Then, on April 27, 2022, he created an account on Daniel Defense's website and—*that same day*—selected the DDM4v7 rifle and placed it into his virtual checkout cart. *Id.*, ¶ 354. The Assailant was not waiting for an "offer" from Daniel Defense to purchase the rifle or commit his attack. To the contrary, the only reasonable inference from these allegations is the Assailant had already decided on the attack and the rifle—he was only waiting until his 18th birthday when he could legally purchase the rifle. *See, e.g.*, *id.*, ¶ 389 (alleging the Assailant purchased the Rifle "[j]ust minutes after midnight on May 16," when he turned 18). That the Assailant waited to purchase the Rifle *legally* as an 18-year-old further contradicts Plaintiffs' theory that Daniel Defense's alleged violation of Section 46.06—the "offer" to the Assailant *before* he turned 18—proximately caused Plaintiffs' injuries.

In sum, Plaintiffs' own articulation of events shows the Assailant decided to attack the school well before Daniel Defense sent the April 29, 2022 email. Plaintiffs' petition therefore negates the "offer" as a proximate cause of their harm and, thus, precludes Plaintiffs from relying on an alleged

19

168255

violation of Section 46.06(a)(2) to establish a predicate exception to PLCAA immunity. *Bonin*, 2019 WL 1246259, at *7; *DM Arbor Court, Ltd.*, 2021 WL 4926015, at *34–35.

### 3. Under the PLCAA, Section 46.06(a)(2) cannot serve as a predicate statute.

The PLCAA lists two categories of statutes that may serve as the basis for a predicate exception. 15 U.S.C. § 7903(5)(A)(iii). The first category concerns recordkeeping laws regarding firearms. *Id.* at § 7903(5)(A)(iii)(I). The second category concerns *select* provisions of Section 922 of the Gun Control Act. Specifically, an exception exists for:

> [A]ny case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under *subsection (g) or (n)* of section 922 of Title 18 . . . .

*Id.* at § 7903(5)(A)(iii)(II) (emphasis added). With respect to Section 922, Congress specifically limited the predicate exception to violations of subsections (g) and (n).

Section 922, "Unlawful Acts," identifies numerous illegal acts involving firearms and ammunition. *See* 18 U.S.C. § 922(a)-(u) (identifying various unlawful acts). The PLCAA, however, identifies only two of these provisions as predicate statutes: (1) subsection (g)—prohibiting certain persons (convicted felons, aliens, the dishonorably discharged, *etc.*) from shipping firearms or ammunition in interstate or foreign commerce; *id.*, § 922(g); and (2) subsection (n)—prohibiting persons under indictment for certain crimes from shipping or transporting firearms or ammunition in interstate or foreign commerce, *id.*, § 922(n). No other provision in Section 922 is identified as a potential predicate statute. 15 U.S.C. § 7903(5)(A)(iii)(II).

Importantly, among those other unlawful acts in Section 922 omitted as predicate statutes is Section *922(b)*. This provision makes it unlawful for a licensed importer, manufacturer, dealer, or collector "to sell or deliver—(1) any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age . . . ." 18 U.S.C. § 922(b)(1).

It is fundamental that "[w]hen a statute sets forth exceptions to a general rule, [courts] generally construe the exceptions narrowly in order to preserve the primary operation of the provision . . . ." *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 90–91 (2d Cir. 2016) (internal citations omitted). Here, Congress specifically identified those provisions in Section 922 that can serve as the basis for a predicate exception, and it deliberately omitted Section 922(b). 15 U.S.C. § 7903(5)(A)(iii)(II). To construe the PLCAA predicate exception to include any other provisions in Section 922 would thus render the phrase "subsection (g) or (n)" superfluous. *Id.*; *see Texas v. United States Envtl. Prot. Agency*, 91 F.4th 280, 298 (5th Cir. 2024) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"); *United States v. Lauderdale Cnty.*, 914 F.3d 960, 966 (5th Cir. 2019) (same). Consequently, Section 922(b) is not a predicate statute.

Congress could have omitted "subsection (g) or (n)" from Section 7903(5)(A)(iii)(II) and made all provisions in Section 922, or any larger subset of them, the basis for a predicate exception. Congress chose not to do so here. Because the federal statute prohibiting sales of firearms to persons under 18 is not a predicate statute, neither is any state statute that prohibits the sale (or mere offer of sale) to a person under 18. To permit Section 46.06(a)(2) to serve as a predicate statute would thwart Congress' intent to exclude statutes concerning firearms and minors as predicate statutes. In short, because 18 U.S.C. § 922(b) is not a predicate statute, neither is Section 46.06(a)(2).

### C. Plaintiffs cannot rely on Section 46.06(a)(2) as the basis for a negligence per se exception.

Plaintiffs also assert a negligence per se claim based on the alleged violation of Section 46.06(a)(2), which they contend invokes the PLCAA's negligence per se exception. *See* Petition, ¶¶ 462-466. But Plaintiffs' negligence per se claim, and its corresponding PLCAA exception, fails for at least three reasons.

21

**1.** **Plaintiffs' negligence per se claim based on Section 46.06(a)(2) fails because they fail to plead causation at all, and their allegations expressly negate the "offer" as a proximate cause of Plaintiffs' injuries.**

To prove a claim for negligence per se and establish an exception to the PLCAA, a plaintiff must show the "defendant's act or omission in violation of a statute or ordinance" "proximately caused the injury." *See Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 27 (Tex. App.—Texarkana 2011, pet. denied) (reciting elements for negligence per se claim); *Ochoa v. P.A.M. Cartage Carriers, LLC*, No. 5:17-CV-787-XR, 2019 WL 360528, at *5 (W.D. Tex. Jan. 29, 2019) (same); *Sanchez v. Swift Transp. Co. of Arizona, LLC*, No. 4:15CV15-LG, 2017 WL 5654909, at *1 (W.D. Tex. May 30, 2017) (same).

As with their claimed predicate exception, for their negligence per se exception, ***Plaintiffs must allege (and ultimately prove) Daniel Defense's supposed statutory violation proximately caused their injuries***. Here, while Plaintiffs make a cursory allegation of a statutory violation, they make no allegation that such purported violation proximately caused Plaintiffs injuries. *See* Petition, ¶ 465 (stating only that "Daniel Defense violated Texas Penal Code § 46.06(a)(2) without excuse."). Plaintiffs plead no facts, or even a conclusory allegation, that Daniel Defense's supposed violation of Section 46.06 proximately caused their harm. Petition, ¶ 463-465. Accordingly, Plaintiffs fail to sufficiently plead a predicate exception, and dismissal is warranted. *See Prescott*, 341 F. Supp. 3d at 1191; *see also Miller v. Salvaggio*, No. SA-20-CV-00642-JKP, 2022 WL 1050314, at *4 (W.D. Tex. Apr. 7, 2022) (dismissing claim because plaintiff failed to plead specific facts to support causation); *Rodriguez v. Xerox Bus. Services, LLC*, No. EP-16-CV-00041-FM, 2017 WL 3023213, at *4 (W.D. Tex. Mar. 27, 2017) (conclusory allegations of proximate causation were insufficient); *Linke United States Bratcher v. United States*, No. W-14-CV-444, 2015 WL 12743613, at *4 (W.D. Tex. June 2, 2015) (dismissing claim because plaintiff's alleged violations of army regulations were too attenuated to allege proximate causation). Again, conclusory allegations of causation are insufficient under Rule 12(b)(6). *See* Section IV(A)(1), *supra*. A complete failure to plead causation of any kind is clearly

similarly insufficient.  Additionally, Plaintiffs' petition expressly negates the "offer" as a proximate cause of their injuries because the Assailant had already decided on the attack and the weapon he would use before the alleged "offer" was made.  *See* Section IV(A)(2), *supra*.

Accordingly, both Plaintiffs' alleged predicate exception and negligence per se exception fail as a matter of law.  Plaintiffs' claims are qualified actions that are barred under the PLCAA, and the Court should dismiss all of Plaintiffs' claims against Daniel Defense.

### 2.     Plaintiffs fail to adequately plead a negligence per se claim.

Even if Plaintiffs' negligence per se claim could meet one of the PLCAA's exceptions, it is inadequately pleaded and so must be dismissed.  To sufficiently plead a negligence per se claim, a plaintiff must not only allege the violation of a specific statute but also that courts have found a violation of the statute to be negligence per se.  The failure to allege the latter will result in dismissal.  For example:

> *Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law*.  In these situations, the standard of care is defined by the statute itself rather than by the reasonably prudent person standard that applies in general negligence actions.
>
> Here, the Allisons assert that the defendants are liable for negligence per se.  However, *the pleading does not factually allege the violation of a specific statute, much less state how courts have determined that statute to establish negligence per se. Therefore, the factual allegations are insufficient to survive a motion to dismiss.*

*Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *13–14 (E.D. Tex. Oct. 2, 2012) (citations omitted) (emphasis added); *see Burgess v. Bank of Am., N.A.*, No. 5:14-CV-00495-DAE, 2014 WL 5461803, at *12 (W.D. Tex. Oct. 27, 2014) (dismissing negligence per se claim, denying leave to amend, and stating "Plaintiff has failed to cite any authority that a mere violation of that statute constitutes negligence per se. . . .  Accordingly, Plaintiff has failed to state a cause of action for negligence per se . . . ."); *Bryant v. CIT Group/Consumer Fin.*, No. CV H-16-1840, 2018 WL 1740075, at *7 (S.D. Tex. Apr. 11, 2018) (dismissing negligence per se claim when

plaintiff cited no authority for proposition that violation of Texas Penal Code section constituted negligence per se se); *see also Menlo Inv. Group, LLC v. Fought*, No. 3:12-CV-4182-K BF, 2015 WL 547343, at *5 (N.D. Tex. Feb. 5, 2015) ("Plaintiffs, however, fail to cite any authority that a violation of Chapter 51 –or any specific provision thereof– constitutes negligence per se. Accordingly, Plaintiffs have failed to state a claim for negligence per se.").

Plaintiffs allege Daniel Defense violated Section 46.06(a)(2). Petition, ¶¶ 463-465 (negligence per se claim). But Plaintiffs do not allege that any Texas court has held a violation of this statute constitutes negligence per se. *Id.* Nor is Daniel Defense aware of any such authority.[11] Thus, as a matter of law, Plaintiffs cannot plead a claim for negligence per se based on a violation of Section 46.06(a)(2), and the Court must dismiss that claim. *Bryant*, 2018 WL 1740075, at *7; *Burgess*, 2014 WL 5461803, at *12; *Allison*, 2012 WL 4633177, at *13–14.

### 3. Plaintiffs lack an analogous common law duty necessary for their negligence per se claim.

Plaintiffs' negligence per se claim and alleged exception fail for yet another reason: negligence per se does not create a duty, but rather uses a penal statute to establish a standard of care. *See Perry*, 973 S.W.2d at 307; *Holcombe*, 388 F. Supp. 3d at 801-802. Thus, courts routinely reject claims for negligence per se when there is no corresponding common law duty. *Perry*, 973 S.W2d at 307; *Holcombe*, 388 F. Supp. 3d at 801.

In this instance, there is no corresponding common law duty to support Plaintiffs' negligence per se claim. "[T]here is generally no duty to protect another from the criminal acts of a third party

---

[11] Plaintiffs may cite *Way* in which the court of appeals considered the predecessor to Section 46.06(a)(2) in a case alleging negligence per se. 856 S.W.2d at 233. The court was not asked to determine if the statute provided a basis for negligence per se. Nor did the court make a formal determination that the statute provided such a basis. *Id.* at 237. Rather, the court affirmed the defendant's summary judgment on the negligence per se claim, concluding an advertising supplement in *Boys Life* magazine was not an offer to sell a firearm to a minor. *Id.*

or to come to the aid of another in distress." *Perry*, 973 S.W.2d at 306;[12] *see Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex. 1995) (same); *Madison v. Williamson*, 241 S.W.3d 145, 152 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (same).  Accordingly, in cases in which the plaintiff sues for harm committed by the criminal acts of a third person, courts have rejected claims for negligence per se.

In *Perry*, for instance, the plaintiffs sued friends of day care center providers for failing to report child abuse they supposedly witnessed.  973 S.W.2d at 302.  The issue before the Texas Supreme Court was whether plaintiffs could base a negligence per se claim on the violation of a Family Code provision making it a misdemeanor to knowingly fail to report abuse.  *Id.*  The court explained that it "will not apply the doctrine of negligence per se if the **criminal statute** does not provide an appropriate basis for civil liability."  *Id.* at 304 (emphasis added).  While the court found that the two threshold requirements were satisfied (class of persons and type of injury), it held the criminal statute was not a basis for a negligence per se claim.  *Id.* at 309.  Among the reasons for its conclusion was the fact that there was no corresponding common law duty to protect others from the criminal acts of third parties.  *Id.* at 306.

United States District Judge Xavier Rodriguez reached the same conclusion in *Holcombe* where the plaintiffs sued the government following the Sutherland Springs shooting.  388 F. Supp. 3d at 784-785.  Relevant here, the plaintiffs alleged negligence per se based on the government violating reporting requirements in the Brady Act.  *Id.* at 800.  But relying on *Perry*, Judge Rodriguez dismissed the negligence per se claim.  In reaching that conclusion, the court explained there are multiple requirements for determining whether a statute can serve as the basis for negligence per se, including: (1) whether the plaintiff belongs to the class of persons that the statute was intended to

---

[12] There is an exception where a person controls a premises and is aware of the risk of criminal harm to invitees.  *Id.*  That exception is inapplicable here.

protect, and (2) whether the plaintiff's injury is of a type that the statute was designed to prevent. *Id.* at 800-801. But there is also a third requirement.

> Crucially, however, the *Praesel* court imposes a third requirement: whether the alleged conduct would be considered substandard even in the absence of a statute. This element requires consideration of whether there is a corresponding common-law duty that is congruent with the statutory duty.

*Id.* at 801 (citations omitted). Concluding there was a lack of a corresponding common law duty to protect the plaintiffs from the criminal acts of a third party or to report information that disqualifies a potential firearm purchaser, Judge Rodriguez held the Brady Act could not serve as the basis for a negligence per se claim.

> Here, there is no general Texas common-law duty that corresponds with the Brady Act's reporting requirements, as there is "generally no duty to protect another from the criminal acts of a third party or to come to the aid of another in distress." *See Perry*, 973 S.W.2d at 306 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)). ***This lack of common-law duty is fatal to Plaintiffs' negligence per se claims under Texas law and in the [Federal Tort Claims Act] context.*** The Court must be mindful of its role in a case like this.

*Id.* at 802 (emphasis added); *see id.* (stating "because Plaintiffs have pointed to no 'analogous circumstances' under which Texas law imposes the necessary duty to support the negligence per se claims . . . the Government's motion is granted as to the negligence per se claims").

Plaintiffs' negligence per se claim and PLCAA exception fail for the same reason. There is no common law duty to protect others from criminal acts of third parties like those the Assailant perpetrated. Nor is there any common law duty in connection with mere offers to sell a firearm.[13]

---

[13] Moreover, Texas courts consistently hold that intentional criminal acts are not a foreseeable result of improperly supplying products to others, including minors. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999) (reinstating summary judgment in favor of store and stating "the intentional sexual assault and brutal murder of two teenage girls who happen upon a gang initiation some distance and time [hours] and location from the illegal sale of alcohol is not the type of harm that would ordinarily result from such a sale"); *Boggs v. Bottomless Pit Cooking Team*, 25 S.W.3d 818, 825 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same and stating, "[t]he intentional murder by Bergeron which was some distance in time [hours] and location from the sale of alcohol 'is not the type of harm that would ordinarily result from such a sale" and would not have been foreseeable); *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784–85 (Tex. App.—Dallas 2000, pet. denied) (same and stating "Kmart could not foresee that this sale to a seventeen-year-old minor would result in negligent or intentional misuse of the ammunition").

26

168255

Plaintiffs, therefore, have no reasonable probability of establishing negligence per se based on an alleged violation of Section 46.06(a)(2).  *Id.*

**V.      Plaintiffs seek to punish and deter Daniel Defense's protected speech regarding Second Amendment-protected activity, in violation of the First Amendment.**

Plaintiffs creatively attempt to plead around the PLCAA by basing their negligence and aiding and abetting claims on Daniel Defense's protected speech.  That approach is both ineffective and self-defeating.  As discussed above, this inventive effort to hold Daniel Defense liable for "harm that is solely caused by another" is precisely the type of claim the PLCAA was designed to preclude.  *See* 15 U.S.C. § 7901(a)(5) & (6) (legislative findings).[14]

In addition to the PLCAA, the First Amendment independently bars Plaintiffs' novel claims, which seek to impose liability against Daniel Defense based on its speech.  Ultimately, their claims are "without foundation in hundreds of years of the common law and jurisprudence of the United States," and "would expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States."  15 U.S.C. § 7901(a)(7).

Although First Amendment claims arise most often in cases involving State action, it is well established that a plaintiff cannot invoke civil tort law to restrict speech that a State could not constitutionally forbid through legislation.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964) ("[w]hat a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil [tort] law").  Even in "a civil lawsuit between private parties," a court cannot apply a state rule of law which imposes "invalid restrictions on [] constitutional freedoms of speech and press.  It matters not that the law has been applied in a civil action and that it is common law

---

[14] As Congress recognized, firearm manufacturers and distributors "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products . . . ."  15 U.S.C. § 7901(a)(5).  "The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States."  *Id.*, § 7901(a)(6).

168255

only, though supplemented by statute." *Id.* at 265.

The First Amendment covers private civil suits because, among other reasons, "[t]he fear of damage awards under [state tort law] may be markedly more inhibiting than the fear of prosecution under a criminal statute." *New York Times Co.*, 376 U.S. at 277; *cf.* 15 U.S.C. § 7901(a)(6) & (7) (recognizing similar effect of such novel lawsuits). That is precisely what Plaintiffs seek to achieve here: to punish and chill pro-Second Amendment speech.

To do so, Plaintiffs allege that Daniel Defense's speech influenced or encouraged the Assailant to violence, causing their injuries. This speech-based theory of liability is fundamental to Plaintiffs' claims for negligence, negligence *per se*, aiding and abetting, and gross negligence (the "Speech Claims"). *See* Petition, ¶¶ 458–461 (negligence), ¶¶ 463–466 (negligence *per se*), ¶¶ 468–469 (aiding and abetting), ¶¶ 477–479 (gross negligence). It is also the basis for Plaintiffs' reliance on Section 46.06, which they purport to invoke as an exception to the PLCAA and as a basis for imposing a duty on Daniel Defense. *See, e.g.*, *id.*, ¶¶ 357–362, 459, 461, 463–466. Because Daniel Defense's speech is central to this theory of liability, Plaintiffs must demonstrate—as a threshold matter—that the speech is excepted from First Amendment protections. They cannot, for at least three independent reasons.

***First***, based on Plaintiffs' allegations, incitement is the appropriate First Amendment standard, and Plaintiffs do not and cannot meet it.

***Second***, Plaintiffs' use of Section 46.06 as a basis for liability, and the application of that statute to the facts alleged, would violate the First Amendment. As Texas courts have explained, that statute applies only to speech that incites or solicits an immediate unlawful transfer. Interpreting the statute broadly to reach advertising communications would unconstitutionally restrict Daniel Defense's protected commercial speech.

28

**Third**, Plaintiffs' allegations, taken together, reveal their Speech Claims are a mere vehicle to punish and deter Daniel Defense's speech based on its pro-Second Amendment viewpoint, which the First Amendment flatly forbids.

Daniel Defense addresses those issues in turn.  But fundamentally, where the First Amendment is concerned, *a mere negligence standard is never appropriate*.  *See Counterman v. Colorado*, 600 U.S. 66, 78, 79, & n.5 (2023) (explaining that the First Amendment never permits an objective standard, like negligence); *Mckesson v. Doe*, 601 U.S. __, 144 S. Ct. 913, 913–14 (2024) (Sotomayor, J., statement respecting denial of certiorari) (explaining expectation that lower court would observe *Counterman*'s emphasis that "an objective standard like negligence would violate the First Amendment" in case involving theory of negligence liability against protest leader for a third-party's violence).  Thus, under any standard, the First Amendment bars Plaintiffs' Speech Claims, requiring dismissal with prejudice.

### A.    Incitement is the appropriate First Amendment standard for evaluating Plaintiffs' Speech Claims, and they do not and cannot meet it.

Although creatively packaged as negligence, Plaintiffs' Speech Claims actually sound in incitement.  Notably, and as discussed above, Plaintiffs fail to plead any facts that Daniel Defense's "offer" caused the Assailant's attack.  To the contrary, their allegations expressly negate causation. *See* Section IV(B)(1)-(2), *supra*.  Notwithstanding that pleading deficiency, Plaintiffs' negligent-speech theories fail under the First Amendment because, as a matter of law, the speech at issue does not rise to the level of incitement.  It is therefore fully protected by the First Amendment.

### 1.    Plaintiffs' Speech Claims are based upon a theory of incitement.

The foundation for Plaintiffs' Speech Claims is that Daniel Defense's speech "encouraged" or "groomed" the Assailant to commit the criminal acts of violence that caused Plaintiffs' injuries. *See*, *e.g.*, Petition, ¶¶ 13, 232-233, 418, 459-460 (alleging that Daniel Defense's marketing directly "influenced," "encouraged," or "groomed" the Assailant to criminally misuse his Rifle, or to similar

effect).[15]  Although Plaintiffs do not use the term "incite," they cannot hide behind labels to disguise the true nature of their claims.  *See Iqbal*, 556 U.S. at 678 (courts should disregard mere labels and conclusions); *NAACP v. Button*, 371 U.S. 415, 429 (1963) (labels are not dispositive of First Amendment protections).  And regardless of the particular label Plaintiffs assert—whether they call the speech "commercial" or "advertising" or "misleading"—this Court has an independent obligation to identify and assess the First Amendment interest at stake.  *Bigelow v. Virginia*, 421 U.S. 809, 826 (1975).

Here, the nature of Plaintiffs' claims is plainly incitement.  "Incitement" properly "refer[s] to encouragement of conduct that might harm the public such as the violation of law or the use of force."  *Herceg v. Hustler Mag., Inc.*, 814 F.2d 1017, 1022 (5th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988).  Thus, by alleging that Daniel Defense's speech "encouraged," "influenced," or "groomed" the Assailant to commit the criminal acts that caused their injuries, Plaintiffs raise a quintessential incitement theory—regardless of how the claims are labeled.

That conclusion is further confirmed by other allegations purporting to connect Daniel Defense's speech with the Assailant's criminal violence.  Consider the following example:  "By the end of 2021, the Shooter had begun to formulate the idea of committing a mass shooting with a Daniel Defense DDM4v7.  This was not happenstance . . . It developed over the course of months, as the Shooter was exposed to Daniel Defense's marketing."  Petition, ¶ 272.  Plaintiffs further allege that from November 2021 "carrying forward to the day of the shooting, the Shooter was exposed to Daniel Defense marketing."  *Id.*, ¶ 275; *see id.*, ¶¶ 279-288, 456.

---

[15]  In addition to these direct allegations, Plaintiffs also allege that Daniel Defense's advertising ***impliedly*** encouraged or influenced the Assailant to violence.  For example, Plaintiffs allege it is "foreseeable" that disaffected teens, "like the Uvalde Shooter," would interpret Daniel Defense's advertising as "validation and moral encouragement for carrying out a fantasy of revenge, power and notoriety" and would "take Daniel Defense's offer to sell them the specific weapon for carrying out that fantasy ***as the critical key and encouragement*** to making that fantasy come true."  Petition, ¶ 122 (emphasis added).  Plaintiffs also proffer a litany of examples of Daniel Defense's advertising, *see id.*, ¶¶ 127-221, which they allege the Assailant was exposed to and influenced by, *see id.*, ¶ 272.  There can be no question that Plaintiffs' Speech Claims are in fact based on incitement.

In other words, according to Plaintiffs, the Assailant's exposure to Daniel Defense's speech is what caused—i.e., incited—the Assailant to commit the shooting. Incitement, therefore, is the correct First Amendment standard.

### 2.   Plaintiffs have not, and cannot, meet the standard for incitement.

Because the First Amendment presumptively protects Daniel Defense's speech, Plaintiffs must plausibly demonstrate that it rises to the level of incitement. *See United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (the First Amendment presumptively protects the content of speech, except a few "well-defined and narrowly limited classes of speech," including incitement). That is a demanding standard they cannot meet.

### a.   The legal standard for incitement is exacting.

The Fifth Circuit "has emphasized that encouragement of conduct that might harm the public such as the violation of law or the use of force is protected by the First Amendment unless it is directed to inciting or producing ***imminent*** lawless action and is ***likely*** to incite or produce such action." *Bailey v. Iles*, 87 F.4th 275, 284 (5th Cir. 2023) (quotation marks omitted) (bold added). "The crucial element to lowering the [F]irst [A]mendment shield is the imminence of the threatened evil." *Id.* Additionally, incitement demands a showing of specific intent, "equivalent to purpose or knowledge." *Counterman*, 600 U.S. at 81.[16]

Under this stringent standard, "[m]ere advocacy" is not enough, *N. A. A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982) ("[M]ere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment"), nor is the "tendency to lead to violence," *Hess v. Indiana*, 414 U.S. 105, 109 (1973) (speech cannot be prohibited simply because it increases the chance an unlawful act will be committed "at some indefinite future time"); *Bailey*, 87

---

[16] The intent requirement, the Supreme Court explained, was born out of "the Court's failure, in an earlier era, to protect mere advocacy of force or lawbreaking from legal sanction." *Counterman*, 600 U.S. at 81 (citing cases). "A strong intent requirement was, and remains, one way to guarantee history [i]s not repeated." *Id.*

168255

F.4th at 284–85. Rather, "the First Amendment precludes punishment [for incitement], whether civil or criminal, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Counterman*, 600 U.S. at 76; *Herceg*, 814 F.2d at 1023. That is because "if speech may be suppressed whenever it *might inspire* someone to act unlawfully, then there is no limit to the State's censorial power." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 580 (2001) (Thomas, J., concurring); *see also Herceg*, 814 F.2d at 1024 ("[i]f the shield of the first amendment can be eliminated by proving after publication that an article discussing a dangerous idea negligently helped bring about a real injury simply because the idea can be identified as 'bad,' all free speech becomes threatened.").

To be unmistakably clear, "**negligence, therefore, cannot form the basis of liability under the incitement doctrine** any more than it can under libel doctrine." *Bailey*, 87 F.4th at 284–85 (quoting *Herceg*, 814 F.2d at 1024); *see also Mckesson*, 44 S. Ct. at 913–14 (Sotomayor, J., statement respecting denial of certiorari). This is true regardless of whether the speech is purely commercial. *Lorillard Tobacco*, 533 U.S. at 580 (Thomas, J., concurring) (emphasis added) (because "[t]he State's power to punish speech that solicits or incites crime has nothing to do with the commercial character of the speech," there "is no reason to apply anything other than our usual rule for evaluating solicitation and incitement simply because the speech in question happens to be commercial").

### b.   The allegations here do not rise to incitement.

The speech alleged in the Petition comes nowhere close to meeting that standard—with respect to the "offers" or any other alleged statements by Daniel Defense. According to Plaintiffs, Daniel Defense was negligent because its "marketing" speech—laid out in over 100 paragraphs of the Complaint—"encourag[ed] the illegal and dangerous misuse of its AR-15-style rifles," Petition, ¶ 459(a), and "suggest[ed] or impl[ied] that civilians, including the Shooter, can use Daniel Defense weapons for offensive combat-like missions, to assert dominance, and/or exact revenge . . . ." *Id*., ¶

32

459(b); *see also id.*, ¶¶ 463-466, 469(a)-(b), 477-478.  Thus, Plaintiffs allege, Daniel Defense's speech "inspired the Shooter to carry out the shooting and validated and preyed on his desire for dominance, notoriety, and revenge," causing Plaintiffs' injuries.  *Id.*, ¶¶ 460 & 469.  But those allegations and others like them—spanning speech over the course of at least four years—fall well short of demonstrating incitement.[17]  None of the alleged speech can reasonably be characterized as "directed to inciting or producing ***imminent lawless action***" on its face, let alone intended "to produce or incite such action."  *Brandenburg*, 395 U.S. at 447 (emphasis added).  Quite the opposite.

*First*, the speech plainly is not "directed to any person or group of persons;" therefore, "it cannot be said that [Daniel Defense] was advocating, in the normal sense, any action."  *Hess*, 414 U.S. at 108–09.

*Second*, Daniel Defense emphatically rejects Plaintiffs' absurd characterizations of its speech.  Even if Plaintiffs' attack on Daniel Defense's speech could be characterized as somehow implicitly advocating violence, which it does not, the law is clear that speech which merely ***suggests*** or ***implies*** a conclusion, as Plaintiffs allege, is not "directed to incite" any "lawless action" as a matter of law.  *See Claiborne*, 458 U.S. at 927–28; *Noto v. U.S.*, 367 U.S. 290, 297–98 (1961) ("the mere abstract teaching of . . . theory, including the teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action"); *Nwanguma v. Trump*, 903 F.3d 604, 611 (6th Cir. 2018) (reversing district court's

---

[17]  Plaintiffs' allegations regarding the purported "offers to sell" and the sale of the Rifle to the Assailant do not change this conclusion.  As discussed, neither the offers to sell nor the sale can be the proximate cause of Plaintiffs' harm.  *See* Section IV(B)(1)-(2), *supra*.  Additionally, because the purported "offers to sell" are speech, the relevant legal question is whether that speech incited "imminent lawless action."  In the context of Section 46.06, that "lawless action" must necessarily be an ***illegal transfer***. *See Way*, 856 S.W.2d at 237.  Thus, even more fundamental than the issue of proximate cause is the admitted fact that the Assailant ***purchased the Rifle legally after he turned 18—weeks after he received the "offers to sell."***  Petition, ¶¶ 380, 389.  There simply is no unlawful conduct connected to the purported "offers to sell," let alone ***imminent*** unlawful conduct, as evinced by the fact the Assailant waited weeks to purchase the Rifle ***legally***.  Nor do Plaintiffs allege that the legal sale and purchase of the Rifle caused their injuries.  These incongruous allegations underscore that Plaintiffs' only theory of liability is grounded in incitement—that Daniel Defense's speech "inspired and encouraged the Shooter to carry out the shooting," causing Plaintiffs' injuries.  *Id.*, ¶ 460.

conclusion that, crediting the complaint's allegations as true, the speech "*implicitly* encouraged the use of violence or lawless action," because implied statements do not meet the standard for incitement) (emphasis added).

     **Third**, Plaintiffs allege that the Assailant's unlawful act was a "foreseeable" consequence of Daniel Defense's marketing because "teens most drawn to the violent fantasy Daniel Defense sells are those who—like the Uvalde Shooter—are most disturbed, most vulnerable, and most likely to make that fantasy into reality." Petition, ¶ 122; *see also id.*, ¶¶ 124, 234, 279, 282, 294-295, 459-460. Those allegations cannot meet *Brandenburg*'s requirement to show the speech at issue was "likely" to cause the Assailant's unlawful and heinous behavior. *See James v. Meow Media, Inc.*, 300 F.3d 683, 699 (6th Cir. 2002) (allegations that violent video games foreseeably caused third party's unlawful acts did not meet test for incitement).

     **Fourth**, Plaintiffs also cannot show that the Assailant's criminal violence was *imminent*. To the contrary, Plaintiffs admit a "months-long" process of personality development, purportedly influenced by Daniel Defense's marketing, which culminated in the shooting that caused their injuries. For example, they allege "[t]he massacre was the foreseeable outcome of Daniel Defense's *months-long effort* [to] groom the Shooter before he turned eighteen and sell him a fantasy of destruction." Petition, ¶ 234 (emphasis added). The Complaint is replete with similar allegations. *See, e.g., id.*, ¶¶ 271-285, 351-358, 363-366, 459. And Plaintiffs' allegations span years, not months: 2018,[18] 2019,[19] 2020,[20] 2021,[21] 2022.[22] Simply stated, Plaintiffs' theory of causation is that the alleged persistent exposure to Daniel Defense's marketing over the course of years gradually influenced the Assailant to the point of violence. That theory is the opposite of imminence. *James*,

---

[18] Petition, ¶ 141.
[19] *Id.*, ¶¶ 197-199, 204.
[20] *Id.*, ¶ 268.
[21] *Id.*, ¶¶ 280-281
[22] *Id.*, ¶ 346, 351.

300 F.3d at 698 (the plaintiffs' alleged a "glacial process of personality development" that was "far from the temporal imminence that [courts] have required to satisfy the *Brandenburg* test"). Far from demonstrating incitement, Plaintiffs' allegations preclude that conclusion.

Their reliance on the so-called "offers to sell" fares no better.[23] These "offers" merely described the product—they plainly did not direct or encourage anything, let alone the unlawful shooting. *See* Petition, ¶ 356. What is more, Plaintiffs effectively admit the shooting was not "imminent" at the time Daniel Defense allegedly made the so-called "offers to sell." The Assailant purchased the Rifle **legally**, **weeks after** the alleged "offers to sell" were made. *See id.*, ¶¶ 356 & 388-389. Then, "despite having more firepower than he could possibly need" to carry out the Shooting, the Assailant "waited" almost another full week for the Rifle to be delivered to a licensed FFL. *See id.*, ¶¶ 405–415. He then waited a few more days before he committed the heinous shooting at Robb Elementary School. *See id.*, ¶¶ 433–439. Accordingly, Daniel Defense's speech is far too attenuated from the Assailant's lawless act to have plausibly incited it. *See, e.g.*, *Hess*, 414 U.S. at 108–09; *Nwanguma*, 903 F.3d at 611; *Waller v. Osbourne*, 763 F. Supp. 1144, 1150–52 (M.D. Ga. 1991), *aff'd*, 958 F.2d 1084 (11th Cir. 1992) (dismissing, *inter alia*, negligence and wrongful death claims, holding that the defendant's lyrics did not rise to culpable incitement); *Davidson v. Time Warner, Inc.*, No. CIV. A. V-94-006, 1997 WL 405907, at *15–*16, *20–*22 (S.D. Tex. Mar. 31, 1997) (similar).

Because Daniel Defense's speech, including the alleged "offers," does not constitute incitement as a matter of law, the State could not punish it and Plaintiffs likewise cannot recover damages based upon it.

---

[23] Plaintiffs' theory of liability necessarily requires them to draw a connection between Daniel Defense's speech and the Assailant's "lawless action" (*i.e.*, the shooting). Yet, because the Assailant purchased the Rifle legally, it is entirely irrelevant that Daniel Defense's speech allegedly influenced the Assailant to purchase the Rifle. *See* note 16, *supra*. The Assailant's only alleged "lawless action" is the shooting itself, and that unlawful act alone caused Plaintiffs' injuries.

**B.    Plaintiffs' Speech claims also fail commercial speech scrutiny.**

Plaintiffs' attempt to use Section 46.06 as a predicate for liability—specifically, the alleged "offers to sell"—also fails commercial speech scrutiny under *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980).[24]   Under that standard, a court first inquires "whether the expression [being restricted] is protected by the First Amendment," which means that "it at least must concern lawful activity and not be misleading."  *Id.* at 566.   Second, the law's proponent must show that the "asserted governmental interest is substantial."  *Id.*   Then, "[i]f both inquiries yield positive answers," a court "must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."  *Id.*

At the first step, Plaintiffs fail to allege any facts plausibly demonstrating that any "offer to sell" was untrue, misleading, or deceptive.   Nor could any reasonable person interpret Daniel Defense's advertising as proposing imminent illegal actions.   The alleged "offer to sell" contained nothing more than a description of the product and invitation to ask questions.   Thus, as discussed, interpreting Section 46.06(a)(2) in the manner Plaintiffs allege would effectively impose a blanket restriction on firearm-product advertising.   That is, under Plaintiffs' interpretation, Section 46.06(a)(2) would reach well beyond "speech soliciting minors to purchase or use firearms unlawfully," *Jr. Sports Mags.*, 80 F.4th at 1116, to "make virtually any firearm advertisement in Texas illegal," *Way*, 856 S.W.2d at 237.   "A speech restriction of that scope is not constitutionally sound under any standard of review."   *Jr. Sports Mags.*, 80 F.4th at 1116.

---

[24] Labels, like the ones Plaintiffs attach here, are not dispositive of First Amendment protection—labeling speech an "advertisement" or "commercial" does not make it so.  *See Button*, 371 U.S. at 429; *S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1143 (9th Cir. 1998). Importantly, *Central Hudson* applies only to regulations of *purely commercial* speech— that which does no more than propose a commercial transaction.  *See Lorillard Tobacco*, 533 U.S. at 554; *S.O.C.*, 152 F.3d at 1143.  But strict scrutiny applies where, as here, mixed commercial and noncommercial speech is restricted.  *See, e.g.*, *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988) (commercial speech that is inextricably intertwined with noncommercial speech is subject to strict scrutiny).

The Ninth Circuit's decision in *Junior Sports Magazines* is instructive. That case involved a challenge to a California statute prohibiting "firearm industry members" from making any "advertising or marketing communication"[25] that offers or promotes "any firearm-related product" in a manner that "is designed, intended, or reasonably appears to be attractive to minors." *Jr. Sports Mags.*, 80 F.4th at 1114. Applying *Central Hudson*, the court first determined the statute "regulates speech that is not misleading and that concerns lawful activity." *Id.* at 1116. In particular, the court emphasized the law did "not apply only to speech soliciting minors to purchase or use firearms unlawfully," but also encompassed speech about lawful activity. *Id.* at 1116–17.

Turning to *Central Hudson's* second step, the court concluded the statute did not directly and materially advance California's interest in "preventing unlawful possession of firearms by minors," or preventing gun violence. *Id.* at 1117. To that end, the court rejected California's argument that "common sense" was enough to justify the restraint on speech. *Id.* at 1117–18. "Given that minors can use guns in California," the court reasoned, "'common sense' suggests the contrary: minors who unlawfully use guns for violence likely are not doing so because of, say, an advertisement about hunting rifles . . . ." *Id.* at 1119. And even if the "advertising restriction significantly slashe[d] gun violence and unlawful use of firearms among minors," according to the court, "the law impose[d] an excessive burden on protected speech." *Id.*

Plaintiffs' speech theories—particularly their overbroad interpretation of Section 46.06—fail for the same reasons. Speech restrictions like Section 46.06(a)(2) are ***facially*** constitutional only because they narrowly restrict "speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010); *see also United States v. Hansen*, 599 U.S. 762, 771–73 (2023) (Congress' use of the terms "encourage" and "induce" were terms of art referring only to criminal solicitation and

---

[25] The statute at issue defined an "advertising or marketing" as making, "in exchange for monetary compensation, . . . a communication, about a product, the primary purpose of which is to encourage recipients of the communication to engage in a commercial transaction." CAL. BUS. & PROF. CODE § 22949.80(c)(6).

facilitation; therefore, statute was not facially overbroad in violation of the First Amendment).  But a facially valid law may nonetheless be "unconstitutional as applied" to specific conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

Properly interpreted, Section 46.06(a)(2) prohibits only "speech integral to" the crime of unlawfully transferring a firearm to a minor, i.e., that which proposes an immediate unlawful transfer with the intent to bring about that unlawful act.  *See Way*, 856 S.W.2d at 237 ("The statute is a prohibition of the ***actual transfer*** of firearms to minors and parental permission is an affirmative defense." (emphasis added)); *see also Hansen*, 599 U.S. at 782–84 (applying this principle to arrive at narrow construction of criminal statute); *Lorillard*, 533 U.S. at 552 (because the State had "prohibited the sale and distribution of tobacco products to minors, the State may prohibit common inchoate offenses that attach to criminal conduct, such as solicitation, conspiracy, and attempt").

The statute is drawn narrowly to avoid infringing on the countervailing Second Amendment right of minors to bear arms and maintain proficiency in their use, subject to limited and well-established historical concerns such as requiring adult approval and supervision, and the First Amendment right to receive truthful commercial information.  *See, e.g.*, *Way*, 856 S.W.2d at 236–37 (rejecting argument that publisher had a duty with respect to firearm advertisements, in part because "the encouragement of safe and responsible use of firearms by minors and other supervised activities is of significant social utility" and due to the "recognized pervasive and important role of advertising in society"); *Jr. Sports Mags.*, 80 F.4th at 1119 (rejecting California's appeal to common sense to justify its advertising restriction "for the simple reason that firearm use by minors is not per se unlawful").

Plaintiffs' Speech Claims trample that delicate balance, resulting in an unconstitutional restriction of Daniel Defense's protected commercial speech.

38

C.      **Plaintiffs' Speech Claims are content- and viewpoint-based.**

Setting aside the nature of Daniel Defense's speech, Plaintiffs' claims fail for yet another independent reason:  They target the ***ideas*** that Daniel Defense's speech promotes, and specifically its pro-Second Amendment viewpoint.   This is presumptively unconstitutional, irrespective of whether the speech at issue is purely commercial.  *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional."); *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 139 (3d Cir. 2020) (strict scrutiny may properly apply "to a restriction on commercial speech that is viewpoint-based"); *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 707–08 (6th Cir. 2020) (similar); *Dana's R.R. Supply v. Att'y Gen., Fla.*, 807 F.3d 1235, 1248 (11th Cir. 2015) (similar).

The First Amendment generally forbids laws that target "specific subject matter," known as content-based discrimination.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).  "This category includes a subtype of laws that go further, aimed at the suppression of 'particular views . . . on a subject,'" *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring), which "is a more blatant and egregious form of content discrimination," *Reed*, 576 U.S. at 168–69 (cleaned up).  "[T]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed."  *Id.* at 248.  A law that discriminates based on viewpoint is presumptively unconstitutional, even if it restricts only commercial speech.  *Matal*, 582 U.S. at 251 (Kennedy, J., concurring).

As discussed, Plaintiffs cannot invoke tort law to impose liability for speech that the State cannot constitutionally regulate.  *See* Section V, *supra*.  Thus, Plaintiffs' strained attempt to create a link between Daniel Defense's communications and the Assailant's heinous criminal actions reveals their claim rests on impermissible viewpoint discrimination.

Specifically, Plaintiffs' negligent-speech and abetting theories of liability are expressly premised on the pro-Second Amendment viewpoint and related messages that Daniel Defense advocates. But while Plaintiffs represent that their basis for damages is the manner in which Daniel Defense promoted its products, these allegations clearly demonstrate that the true basis for liability is Daniel Defense's promotion of the ***idea*** that firearms—regardless of their style—are desirable and useful for self-defense and other lawful purposes, including to the military and law enforcement. This has nothing to do with commerce or the supposedly commercial aspect of Daniel Defense's speech. *See*, *e.g.*, *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299–30 (2019); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992). Instead, Plaintiffs seek to restrict Daniel Defense's speech ***solely because*** it promotes a pro-Second Amendment viewpoint: "[T]he individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), whether it be for the purpose of lawful self-defense or defense of the state, *id.* at 584, 600–01.

Whatever Plaintiffs may think of the ideas that Daniel Defense allegedly promotes, these messages and activities are inextricably intertwined with the lawful exercise of Second Amendment-protected rights. Because the Second Amendment guarantees the right to acquire, possess, and use firearms, promotions utilizing images of firearms are inherently symbolic of a pro-Second Amendment viewpoint. Thus, all the images in Plaintiffs' Complaint are fully protected speech. *See, e.g.*, *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943); *Texas v. Johnson*, 491 U.S. 397, 404 (1989). And because adopting Plaintiffs' theory would "effectively remove[] one viewpoint from the public conversation over the proper role of firearms in our society, while leaving the opposite viewpoint free to participate." *Jr. Sports Mags.*, 80 F.4th at 1123 (Van Dyke, J., concurring), such viewpoint discrimination is flatly unconstitutional.

Equally important, the First Amendment prohibits the suppression of "***ideas*** expressed by speech—whether it be violence, or gore, or racism"—even "speech directed at children." *Brown v.*

*Ent. Merchants Ass'n*, 564 U.S. 786, 794–95, 799 (2011) (emphasis added). Therefore, Plaintiffs'

allegations that Daniel Defense's speech is intended to appeal to youths and young adults do not

insulate their claim from strict First Amendment scrutiny. *See, e.g.*, Petition, ¶¶ 119–44, 186–224;

*cf. Brown*, 564 U.S. at 791–93, 798–801 (rejecting argument that violent video games cause minors

to behave more aggressively, holding that correlative relationship fell short of the "direct causal link"

between the problem and the curtailment of protected speech that the First Amendment requires).

At bottom, Plaintiffs seek to impose liability and restrict Daniel Defense's speech because it

allegedly promotes violent ideas and behavior relative to firearms. But that theory is based on the

same flimsy justifications that the Court rejected in *Brown. Compare Brown*, 564 U.S. at 798–801,

*with* Petition, ¶¶ 102-126, 169-207.  Plaintiffs' Speech Claims ultimately rest on a constitutionally

impermissible premise:  Daniel Defense can be held liable for the pro-Second Amendment viewpoint

of its speech.  This, the First Amendment flatly forbids.  The deterrer effect of subjecting Daniel

Defense to liability for this speech would ultimately lead to self-censorship and dampen the vigor and

limit the variety of public debate regarding the Second Amendment.  *See New York Times*, 376 U.S.

at 265.  It would also impermissibly chill the exercise of Second Amendment rights.

In sum, Daniel Defense's speech does not constitute "incitement," and any theory of liability

short of that is barred by the First Amendment.  *See Carey v. Population Servs. Int'l*, 431 U.S. 678,

701 (1977) (state could not restrict advertising speech based on the "legitimation" of illicit behavior,

because such speech did not rise to incitement—the advertisements merely stated the availability of

products that were ***entirely legal and constitutionally protected***); *Herceg*, 814 F.2d at 1023–24.

Consequently, Plaintiffs cannot rely on the alleged violation of Section 46.06(a)(2) as the basis for

any PLCAA exception, nor can Daniel Defense's pro-Second Amendment speech be penalized

consistent with the First Amendment.

## VI.     Plaintiffs' remaining claims against Daniel Defense fail under Texas law.

Plaintiffs' negligence and negligence per se claims are barred by the PLCAA.  Plaintiffs'

remaining claims against Daniel Defense –aiding and abetting other defendants and for gross

negligence– are similarly barred.  Additionally, these claims fail under Texas law and, consequently,

the Court should dismiss them.

### A.     Plaintiffs' claims against Daniel Defense for "aiding and abetting" the tortious conduct of other defendants fail as a matter of law because Texas does not recognize such a cause of action.

Plaintiffs allege claims against Daniel Defense for "aiding and abetting the wrongful conduct"

of Defendant EOTech (Third Cause of Action) and of Defendant Firequest (Fourth Cause of Action).

*See* Plaintiffs' Petition, ¶¶ 467-475.  These claims are barred by the PLCAA as well.  But even absent

statutory immunity, these claims fail as a matter of law because the Texas Supreme Court has yet to

recognize such a claim, and the Fifth Circuit explicitly holds no such cause of action exists.

The Texas Supreme Court has repeatedly stated it has not decided whether Texas recognizes

a cause of action for aiding and abetting the conduct of another defendant.

> ***We begin by noting that this Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting.***  However, the parties do not raise or brief the question of whether such a cause of action exists in Texas, so we will assume, without deciding, that it does.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citation

omitted) (emphasis added); *see Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913,

930, n. 28 (Tex. 2010) (stating that because of its disposition, it will not consider whether Texas

recognizes a cause of action for aiding and abetting); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*

*Co.*, 51 S.W.3d 573, 583, n. 7 (Tex. 2001) (same).  Consequently, multiple state courts of appeals

have held there is no recognized claim for aiding and abetting.  *See Hampton v. Equity Tr. Co.*, 607

S.W.3d 1, 5 (Tex. App.—Austin 2020, pet. denied) ("In the absence of recognition by the Supreme

Court of Texas or the Legislature, we conclude that a common-law cause of action for aiding and

abetting does not exist in Texas.");[26] *John Roberts Austin I, LP v. Netaji*, No. 03-21-00540-CV, 2023 WL 3010941, at *2–3 (Tex. App.—Austin Apr. 20, 2023, pet. denied) (refusing to reconsider decision in *Hampton* because appellants failed to identify Texas Supreme Court authority recognizing a claim for aiding and abetting);[27] *AmWins Specialty Auto, Inc. v. Cabral*, 582 S.W.3d 602, 607 (Tex. App.—Eastland 2019, no pet.) (stating "an independent civil cause of action for aiding and abetting does not exist in Texas").

Given the Texas Supreme Court's reluctance to recognize an aiding and abetting claim, the Fifth Circuit holds Texas does not recognize such a cause of action, and district courts exceed their authority by recognizing the claim. Citing to *First United Pentecostal Church*, the Fifth Circuit explained that while the parties disputed whether Texas historically recognized such a claim, the "debate is beside the point." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018).

> When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts. Here, despite ample warning, the district court exceeded its circumscribed institutional role and "expand[ed] [Texas] law beyond its presently existing boundar[y]."

*Id.* The Fifth Circuit concluded the defendant was "entitled to JMOL on plaintiffs' aiding-and-abetting claim ***because no such claim exists in Texas***." *Id.* (emphasis added).

---

[26] Notably, the plaintiff in *Hampton* filed a petition for review in which it presented as its first issue, whether Texas recognizes a cause of action for aiding and abetting. *See* Petition for Review at 9, *Hampton* (No. 20-0668). The petition is available at: https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=a4692014-e861-4069-b9f3-61d1a8434cf4&coa=cossup&DT=BRIEFS&MediaID=c30e6782-a082-46fc-a83b-1d7b95049375. Despite being presented with the opportunity to recognize such a claim, the Texas Supreme Court denied the petition.

[27] As in *Hampton*, the plaintiff in this case also filed a petition for review and presented, as its sole issue, whether Texas recognizes a claim for aiding and abetting. *See* Petition for Review at xi, *John Roberts Austin I, LP* (No. 23-0403). The petition is available at: https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=3b4f4245-344f-4342-b2bf-c45b130dd557&coa=cossup&DT=BRIEFS&MediaID=cbcbd5f0-9c93-4305-81d3-e0814f56a8ac. Once again, the Texas Supreme Court denied the petition.

In light of *DePuy*, district courts consistently dismiss claims for aiding and abetting.  *See Burback v. Oblon*, No. 4:20-CV-946-SDJ, 2021 WL 4477607, at *10 (E.D. Tex. Sept. 30, 2021*), aff'd sub nom.*, 2023 WL 4532803 (5th Cir. July 13, 2023) (dismissing aiding and abetting claim  because "it is not a recognized cause of action under Texas law"); *Nix v. Major League Baseball, Office of the Comm'r of Baseball*, No. CV H-21-4180, 2022 WL 2118986, at *19 (S.D. Tex. June 13, 2022*), aff'd and remanded sub nom.*, 62 F.4th 920 (5th Cir. 2023) (dismissing aiding and abetting claim); *Smith v. Buffalo Wild Wings*, No. 3:20-CV-2875-D, 2021 WL 4265849, at *3 (N.D. Tex. Sept. 20, 2021) (dismissing aiding and abetting claim under Rule 12(c) because no such claim exists in Texas); *see also Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239, 249–50 (5th Cir. 2020) (affirming dismissal of aiding and abetting claim based on *DePuy*).

The Fifth Circuit is clear.  Texas does not recognize a cause of action for aiding and abetting, and Texas federal courts are prohibited from recognizing such a claim until the Texas Supreme Court does.  Accordingly, the Court should dismiss Plaintiffs' third and fourth causes of action for aiding and abetting.

## B.    Because Plaintiffs' negligence claims are subject to dismissal, so is their claim for gross negligence.

"A finding of ordinary negligence is a prerequisite to a finding of gross negligence."  *Arana v. Figueroa*, 559 S.W.3d 623, 634 (Tex. App.—Dallas 2018, no pet.); *see Rayner v. Claxton*, 659 S.W.3d 223, 258 (Tex. App.—El Paso 2022, no pet.) (same); *Perez v. U.S. Xpress, Inc.*, No. 6:21-CV-00432-ADA, 2023 WL 3681714, at *3 (W.D. Tex. Mar. 10, 2023), *aff'd*, No. 23-50146, 2023 WL 6393899 (5th Cir. Oct. 2, 2023) (same).  As a result, when a district court disposes of a claim for ordinary negligence, whether by summary judgment or dismissal, it will also dispose of the claim for gross negligence.  *See id.* (summary judgment); *see also Castro v. Wal-Mart Real Estate Bus. Tr.*, 645 F. Supp. 3d 638, 652 (W.D. Tex. 2022) (summary judgment); *Curb Planet, Inc. v. Wells Fargo Bank*, No. 4:20-CV-2233, 2022 WL 4486412, at *4 (S.D. Tex. Sept. 2, 2022), *report and*

*recommendation adopted sub nom.,* 2022 WL 4490178 (S.D. Tex. Sept. 27, 2022) (dismissal);

*Houston v. Bank of Am.*, No. A-13-CV-299 LY, 2013 WL 12393902, at *6 (W.D. Tex. July 16, 2013)

(dismissal).

Plaintiffs' claims for negligence and negligence per se are subject to dismissal for all the

reasons set forth here. Accordingly, the Court should also dismiss Plaintiffs' gross negligence claim.

*Id.*

## VII. The Court should deny Plaintiffs leave to amend their claims because any amendment would be futile.

In response to a Rule 12(b)(6) motion, a district court has the discretion to grant the claimant

leave to amend their complaint. But the court also has discretion to deny leave if the amendment

would be futile. *Bowling v. Dahlheimer*, No. 20-40642, 2022 WL 670150, at *2 (5th Cir. Mar. 7,

2022); *Callais Capital Mgmt., L.L.C. v. Wilhite*, No. 21-30222, 2022 WL 445160, at *1 (5th Cir. Feb.

14, 2022). An amendment is futile if it would fail to state a claim on which relief could be granted.

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–873 (5th Cir. 2000); *see American Civil Rights*

*Union v. Martinez-Rivera*, 166 F. Supp.3d 779, 807 (W.D. Tex. 2015) (citing *Stripling* and denying

leave to amend).

Here, any further amendment by Plaintiffs would be futile because they cannot establish a

viable exception to the PLCAA's immunity from suit. None of the other exceptions are applicable

here. 15 U.S.C. § 7903(5)(A)(i)-(ii), (iv)-(vi). Plaintiffs in previously filed suits against Daniel

Defense, *Torres* and *Zamora*, have asserted different theories for PLCAA exceptions. Plaintiffs in

this case could have pleaded these theories as additional grounds for PLCAA exceptions but chose

not to do so. And those alleged exceptions fail as Daniel Defense has previously explained. *See*

*Torres*, Case No. 2:22-cv-00059-AM, Doc. 140 (Rule 12(b)(6) motion); Doc. 143 (reply brief);

*Zamora*, Cause No. 2:23-cv-00017-AM, Doc. 167 (Rule 12(b)(6) motion); Doc. 169 (reply brief).

Nor can Plaintiffs' claims withstand Constitutional scrutiny or even application of Texas law.

Accordingly, the Court should dismiss Plaintiffs' claims against Daniel Defense with prejudice and deny them leave to amend those claims.

## CONCLUSION

WHEREFORE, Defendants Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings, LLC, and M.C. Daniel Group, Inc. respectfully request the Court dismiss all of Plaintiffs' claims against them with prejudice and deny Plaintiffs leave to amend those claims. Defendants further request any additional relief to which they are entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail: dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

***COUNSEL FOR DEFENDANTS,
DANIEL DEFENSE, LLC F/K/A
DANIEL DEFENSE, INC.,
DANIEL DEFENSE HOLDINGS, LLC,
AND M.C. DANIEL GROUP, INC.***

168255

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of August 2024, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Chad Matthews
MATTHEWS & FORESTER
3027 Marina Bay Drive, Suite 320
League City, TX 77573

A.M. "Andy" Landry III
J.J. Hardig, Jr.
GRAY REED
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056

Thomas W. Fee
Victor A. Rivera
FEE, SMITH & SHARP, L.L.P.
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

*/s/ David M. Prichard*
David M. Prichard

168255