# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ABEL CUELLAR LOPEZ, Individually, | § | |
| and as Wrongful Death Beneficiary of | § | |
| X.J.L., et al, | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 02:24-00079-AM |
| | § | |
| DANIEL DEFENSE, LLC; | § | |
| DANIEL DEFENSE HOLDINGS, LLC; | § | |
| M.C. DANIEL GROUP, INC.; | § | |
| FIREQUEST INTERNATIONAL, INC.; | § | |
| FLASH CO., INC.; | § | |
| PROJECT ECHO HOLDINGS, LLC d/b/a | § | |
| AMERICAN HOLOPTICS; | § | |
| KOUCAR MANAGEMENT, LLC; and | § | |
| OASIS OUTBACK, LLC | § | |
| *Defendants* | § | |

---

**DANIEL DEFENSE, LLC f/k/a DANIEL DEFENSE, INC.,
DANIEL DEFENSE HOLDINGS, LLC, AND M.C. DANIEL GROUP, INC.'S
REPLY BRIEF IN SUPPORT OF THEIR  RULE 12(B)(6) MOTION TO DISMISS**

TO CHIEF UNITED STATES DISTRICT JUDGE ALIA MOSES:

Now come Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings, LLC, and

M.C. Daniel Group, Inc. (collectively here, "Daniel Defense") and file this Reply Brief in Support of

their Rule 12(b)(6) Motion to Dismiss (Doc. 31).

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENTS AND AUTHORITIES ...................................................................2

I.    Section 46.06(a)(2) fails as a predicate statute here. ........................................2

    A.    Plaintiffs' response wholly ignores several arguments in Daniel Defense's motion, waiving any challenge to them. ....................................................2

        1.    Section 46.06(a)(2) is not an eligible predicate statute..............................2

        2.    Plaintiffs do not contest that their fact allegations negate the "offers" as a proximate cause of their harm. ...................................................................3

    B.    Section 46.06(a)(2)'s prohibition on offers does not apply when, as here, there is a legal firearm transfer........................................................................3

        1.    Plaintiffs' reliance on cases involving drug sales is misplaced. .................5

    C.    Plaintiffs fail to allege facts that Daniel Defense knew or intended to offer the Rifle for sale to the Shooter while he was underage. ...............................6

    D.    Plaintiffs fail to plead any facts that the "offers" proximately caused the shooting. ...................................................................................................8

II.   Plaintiffs do not plead the FTCA at all and, thus, cannot rely on it as the basis for a PLCAA exception........................................................................................9

III.  Plaintiffs have no viable claim for negligence per se and, thus, cannot rely on the PLCAA's negligence per se exception. ...........................................................10

    A.    Plaintiffs must –but fail to– plead any authority that a violation of Section 46.06(a)(2) constitutes negligence per se. ...........................................10

    B.    There is no analogous common law duty as required for a negligence per se claim. ...................................................................................................11

    C.    Plaintiffs' negligence per se exception based on Section 46.06(a)(2) fails for the same reasons as their predicate exception based on the same statute...................13

IV.   The First Amendment bars Plaintiffs' claims...................................................13

169170

A.   Plaintiffs' theory of liability is premised on the messages that Daniel Defense's speech allegedly promotes, unrelated to any commercial characteristic of the speech. ...................................................................................................13

B.   Negligence is never an appropriate standard for punishing speech.......................16

C.   Plaintiffs' claims are premised on impermissible viewpoint discrimination.........18

D.   Plaintiffs fail to demonstrate that Daniel Defense's speech is unprotected...........20

     1.   Incitement is the appropriate First Amendment standard, and Plaintiffs effectively concede they cannot meet it.....................................................22

     2.   The "speech integral to criminal conduct" exception does not apply because Plaintiffs assert a claim for negligence—not a direct violation of Texas Penal Code § 46.06. ......................................................................22

E.   Even if the speech is commercial, Plaintiffs cannot demonstrate it is unprotected under *Central Hudson*...........................................................................................25

     1.   Daniel Defense's speech does not concern unlawful or misleading activity. ...............................................................................................................25

     2.   Plaintiffs cannot satisfy the remaining commercial speech factors...........28

V.   The Court should deny Plaintiffs leave to amend their claims. .........................................29

CONCLUSION................................................................................................................................29

CERTIFICATE OF SERVICE .........................................................................................................30

169170

## INTRODUCTION

The rhetorical bluster[1] of Plaintiffs' response cannot hide the fact that Plaintiffs fail to plead a viable PLCAA exception and, thus, their claims must be dismissed.[2]  First, Section 46.06(a)(2) of the Texas Penal Code is not an eligible predicate statute.  *See* Section I(A), *infra*.  Further, the statute cannot serve as the basis for either a predicate or negligence per se exception under the PLCAA in this case.  Even assuming Daniel Defense made an "offer" to the Shooter as Plaintiffs contend, the statute does not apply to offers when the sale itself was legal.  Here, it is undisputed that Daniel Defense legally sold the Rifle via a proper and lawful federal transfer through a retailer holding a federal firearms license, or "FFL."  *See* Section I(B), *infra*.  Separately, Plaintiffs cannot rely on Section 46.06(a)(2) as a predicate statute because Plaintiffs do not—and cannot consistent with Rule 11—sufficiently plead facts of a knowing or intentional statutory violation or that the "offers" were a proximate cause of the shooting.  *See* Section I(C)-(D), *infra*.

Section 46.06(a)(2) cannot serve as the basis for a negligence per se exception for many of the same reasons.  *See* Section III(C), *infra*.  Additionally, Plaintiffs do not plead a viable claim for negligence per se.  *See* Section III(A)-(B), *infra*.

For the first time in their response, Plaintiffs contend Daniel Defense violated the Federal Trade Commission Act ("FTCA"), and that this is a separate basis for a predicate exception.  But Plaintiffs do not plead any violation of the FTCA in their petition and have waived the argument.  Even if Plaintiffs could plead a violation, the FTCA cannot serve as a predicate statute for all the

---

[1] Plaintiffs' pleadings and briefing overflow with unbridled vitriol. While such conduct would be unfortunate but understandable from the Shooter's victims, it is inappropriate from their counsel who serve as officers of the Court and are bound by rigorous ethical duties, including those of candor to this Court.  Setting aside their incendiary allegations and absurd mischaracterizations, the basic theory of their case cannot meet even Federal Rule of Civil Procedure 11(b)'s bland requirements. Such abusive and improper tactics should not be countenanced by this Court.

[2] Plaintiffs do not respond to Daniel Defense's argument that their claims against it for "aiding and abetting" fail as a matter of law.  Doc. 31, p. 42-44.  Thus, Plaintiffs effectively concede the argument.

reasons Daniel Defense has explained in other cases where that statutory violation was actually alleged.  *See* Section II, *infra*.

Finally, the First Amendment independently bars Plaintiffs' claims for five reasons.  *See* Section IV, *infra*.  First, the messages that are the core of Plaintiffs' claims against Daniel Defense have nothing to do with commerce or any commercial characteristic of speech and, thus, they are entitled to full First Amendment protection.  *See* Section IV(A), *infra*.  Second, negligence is never an appropriate standard for punishing speech.  *See* Section IV(B), *infra*.  Third, Plaintiffs' claims are premised on impermissible viewpoint discrimination.  *See* Section IV(C), *infra*.  Fourth, Plaintiffs fail to show that Daniel Defense's speech is unprotected.  *See* Section IV(D), *infra*.  Finally, even if the speech Plaintiffs complain of were commercial, Plaintiffs cannot show it is unprotected under *Central Hudson*.  *See* Section IV(E), *infra*.

For all these reasons, the Court should grant Daniel Defense's motion and dismiss each of Plaintiffs' claims against it.

## ARGUMENTS AND AUTHORITIES

**I.    Section 46.06(a)(2) fails as a predicate statute here.**

**A.    Plaintiffs' response wholly ignores several arguments in Daniel Defense's motion, waiving any challenge to them.**

Plaintiffs continue to rely on Section 46.06(a)(2) as the basis for a predicate exception.  Doc. 33, p. 10-13.  Their reliance on this statute fails for numerous reasons.  Among them is Plaintiffs' complete failure to address multiple arguments in Daniel Defense's motion, effectively conceding them.

**1.    Section 46.06(a)(2) is not an eligible predicate statute.**

Daniel Defense has explained why Section 46.06(a)(2) does not qualify as a predicate statute under the PLCAA's plain language.  *See* Doc. 31, p. 20-21 (Section IV(B)(3) – "Under the PLCAA, Section 46.06(a)(2) cannot serve as a predicate statute.").  Plaintiffs do not dispute this argument in

their response (Doc. 33, p. 10-13) and, therefore, have waived any challenge to it. *Neukranz v. Conestoga Settlement, LLC*, No. 3:19-CV-1681-L, 2023 WL 2555551, at *6, n. 6 (N.D. Tex. Mar. 16, 2023).[3]

### 2.    Plaintiffs do not contest that their fact allegations negate the "offers" as a proximate cause of their harm.

Daniel Defense separately argues that even if Section 46.06(a)(2) is eligible as a predicate statute, it does not preserve Plaintiffs' claims because their fact allegations affirmatively negate the "offers" as a proximate cause of their harm. *See* Doc. 31, p. 15-20 (Section IV(B)(2) – "Plaintiffs' allegations affirmatively negate the 'offer' as a proximate cause of their harm."). Once again, Plaintiffs do not dispute this argument in any way in their response (Doc. 33, p. 10-13), thus waiving any counterargument. *Neukranz*, 2023 WL 2555551, at *6, n. 6.

The arguments Plaintiffs do present in their response, as shown below, fare no better.

### B.    Section 46.06(a)(2)'s prohibition on offers does not apply when, as here, there is a legal firearm transfer.

Plaintiffs maintain Daniel Defense violated Section 46.06(a)(2) by making two offers to the Shooter while he was 17: (1) the information displayed in the virtual shopping cart when the Shooter selected the Rifle, and (2) the April 29 automated email. Doc. 33, p. 11.[4]  Neither of these are offers. Rather, they merely provide product information without the terms and conditions Daniel Defense requires for all sales, including providing valid proof of age at the point of transfer. Doc. 31, p. 11, n. 9. If that is sufficient as Plaintiffs assert, then every Texas sporting goods store violates Section 46.06(2) every time a family with children walks through the firearms section. That absurd theory

---

[3] For additional discussion regarding why Section 46.06(a)(2) is not an eligible predicate exception see Daniel Defense's Reply in Support of its Motion to Dismiss, Section I(A), in *Rubio v. Daniel Defense, LLC et al*.

[4] In their pleading, Plaintiffs only allege one "offer" in violation of Section 46.06(a)(2) –the April 29 email. Petition, ¶¶ 20, 357, 358, 360. Regardless, Plaintiffs' attempted reliance on the "cart offer" fails for the same reasons as their reliance on the April 29 email.

169170

should be rejected.  But even assuming, *arguendo*, these actions were an "offer," Plaintiffs' reliance on this statute still fails.

Section 46.06 criminalizes conduct in connection with the ***transfer*** of firearms, but here it is undisputed the sale of the Rifle was legal because the Shooter purchased it after turning 18.  Doc. 31, p. 10-12, 39; Petition, ¶¶ 388-389.  This limitation is clear in both the statute's title and text.  The statute is entitled "Unlawful Transfer of Certain Weapons."  TEX. PENAL CODE § 46.06.  Plaintiffs contend that under the Penal Code, the title of a section does not limit or expand the meaning of the statute.  *See* Doc. 33, p. 12, n. 5 (citing TEX. GOV'T CODE § 311.024 and TEX. PENAL CODE § 1.05(b)).  While the Texas Supreme Court acknowledges Section 311.024, it has repeatedly noted that a statute's title still gives courts "some indication of the Legislature's intent . . . ."  *In re United Services Auto. Ass'n*, 307 S.W.3d 299, 307–08 (Tex. 2010); *see Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 494 (Tex. 2017) (same).

The Legislature's intent to limit Section 46.06(a)(2) to the actual ***transfer to a minor*** is clear from the addition of Section 46.06(c) that creates an affirmative defense if the transfer was to a minor whose parent (or guardian) gave permission for the transfer.[5]  *See Way v. Boy Scouts of America*, 856 S.W.2d 230, 237 (Tex. App.—Dallas 1993, writ denied) (stating Section 46.06(a)(2) "is a prohibition on the actual transfer of firearms to minors").  If the transfer is not illegal, then neither is the offer that led to the transfer.  Plaintiffs, however, challenge the plain construction of Section 46.06(a)(2), arguing it would render superfluous the "explicit prohibition on offering to sell."  Doc. 33, p. 12, n. 4.  Not so.  It is Plaintiffs' proposed interpretation that would render statutory language superfluous and lead to an absurd result.

---

[5] *See* TEX. PEN. CODE § 46.06(c) ("It is an affirmative defense to prosecution under Subsection (a)(2) that the transfer was to a minor whose parent or the person having legal custody of the minor had given written permission for the sale or, if the transfer was other than a sale, the parent or person having legal custody had given effective consent.").

169170

A sale of a firearm requires an offer. But such transfers are not illegal under Section 46.06(a)(2) if the parent or guardian provides the requisite permission. TEX. PENAL CODE § 46.06(c). Plaintiffs' construction attempts to divorce the offer from the transfer and would criminalize "offers" even where they result in legal transfers. Doc. 33, p. 12, n. 4. Under Plaintiffs' interpretation, while a seller is not criminally liable for transferring a gun to a minor whose parent provided the requisite permission, the seller is still liable for making the offer to the minor that resulted in a legal transfer. This construction fails for two reasons. First, the affirmative defense in Section 46.06(c) becomes superfluous if the seller can still be prosecuted for an offer that resulted in a legal sale. *United States Envtl. Prot. Agency*, 91 F.4th 280, 298 (5th Cir. 2024) (stating statutes should not be construed in manner to render parts superfluous); *Levinson Alcoser Associates, L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 494 (Tex. 2017) (same). Second, courts must not construe statutes in a manner that leads to absurd results. *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 506, n. 34 (5th Cir. 2022); *Colorado Cnty. v. Staff*, 510 S.W.3d 435, 448 (Tex. 2017). If a transfer is legal because the parent provided the necessary consent, it would be absurd if the seller could still be prosecuted for the offer that led to the legal sale.

Section 46.06(a)(2) does not criminalize offers in connection with a legal transfer of a restricted weapon. Here, the sale and transfer of the Rifle was legal, and Plaintiffs do not (and cannot) allege otherwise. Petition, ¶¶ 388-389. Thus, there can be no violation of Section 46.06(a)(2), even if Daniel Defense did "offer" the Rifle to the Shooter while he was 17.

       **1.**      **Plaintiffs' reliance on cases involving drug sales is misplaced.**

Plaintiffs cite cases involving the sale of narcotics to assert that "offers," for purposes of the Penal Code, should not be construed under the rules of contract law. Doc. 33, p. 10-11. From these cases, Plaintiffs argue that an offer to sell firearms can violate Section 46.06(a)(2) without an actual transfer. *Id.*, p. 10-11, p. 12, p. 4. This argument fails for three reasons.

5

First, this case does involve a transfer –a legal transfer through a properly licensed FFL in the buyer's home state. Second, the cases Plaintiffs cite specifically rely on the term "deliver" as defined in the Texas Health & Safety Code. But this section also states that this definition is limited to Chapter 481 of the Health and Safety Code. TEX. HEALTH & SAFETY CODE § 481.002. There is no indication this definition applies to Section 46.06 of the Penal Code. *Id.* And none of Plaintiffs' cited cases apply this construction to firearms matters. Doc. 33, p. 10-11. Third, cases involving illegal drugs are qualitatively different from firearms cases because firearms (subject to certain restrictions) can be legally sold whereas narcotics may not. In fact, both firearms and communications about firearms are constitutionally protected. Because there can be no legal sale of cocaine, heroin, etc., offers to sell without any transfer may be criminalized. But when a firearm is legally sold, as it was here, then the offer in connection with that sale is not illegal.

As a matter of law, Plaintiffs cannot rely on Section 46.06(a)(2) as the basis for a predicate exception. But even if they could, Plaintiffs fail to adequately allege a violation as shown below.

> **C.    Plaintiffs fail to allege facts that Daniel Defense knew or intended to offer the Rifle for sale to the Shooter while he was underage.**

Section 46.06 prohibits ***intentionally or knowingly*** offering to "sell" or "give" a firearm to a minor. TEX. PENAL CODE § 46.06(a)(2). Plaintiffs plead in conclusory fashion, and upon information and belief, that Daniel Defense "categorized the Shooter as under the age of eighteen when [it] illegally offered to sell him the [Rifle.]" Petition, ¶ 363. In response, Plaintiffs merely cite to other conclusory allegations about Daniel Defense's business practices that supposedly support their allegation that it "offered" the Rifle with knowledge or intent that the Shooter was underage. Doc. 33, p. 11, 12. But stacking multiple conclusory allegations on top of each other does not adequately plead a violation of Section 46.06(a)(2). *See Duffee v. Pattillo*, No. 9:11CV174, 2012 WL 3564222, at *4 (E.D. Tex. June 14, 2012), report and recommendation adopted, 2012 WL 3581164 (E.D. Tex. Aug. 16, 2012) (stating multiple conclusory allegations were insufficient to defeat a motion to

6

169170

dismiss); *see Washpon v. Progressive Corp.*, No. 1:23-CV-1239-RP, 2024 WL 874721, at *2 (W.D. Tex. Jan. 26, 2024) (same). Plaintiffs ultimately fail to allege any facts from which it can be reasonably inferred that, at the time of the "offers," Daniel Defense knew the Shooter was under eighteen.

Recognizing their inability to plead actual facts supporting that Daniel Defense knew the Shooter was underage at the time of the "offers," Plaintiffs now alternatively argue Daniel Defense was "deliberately ignorant" and this is "the legal equivalent of knowledge." *See* Doc. 33, p. 12-13 (quoting *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 240 (5th Cir. 2010)). Plaintiffs' reliance on *Chaney* is misplaced because that case considered a federal penal statute not a state statute. *Chaney*, 595 F.3d at 239–240.[6] Section 46.06(a)(2) prohibits certain conduct committed "knowingly." As Plaintiffs acknowledge, the Texas Penal Code provides that a person acts "knowingly . . . with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PEN. CODE § 6.03(b); *see also* Doc. 33, p. 12.[7] In the context of Section 46.06(a)(2), the "result" is the "selling" or "giving" a firearm to a minor. TEX. PEN. CODE § 46.06(a)(2). Contrary to Plaintiffs' argument, "deliberate ignorance" is not included within the Texas Penal Code's controlling definition of "knowingly." Accordingly, Plaintiffs cannot rely on Daniel Defense's supposed "deliberate ignorance" to adequately plead a knowing violation of Section 46.06(a)(2).

---

[6] Even if the standard discussed in *Chaney* applied, Plaintiffs cannot satisfy it. This is demonstrated by the portion of *Chaney* that Plaintiffs omit, where the Fifth Circuit stated that "deliberate ignorance" requires "***conscious*** action in light of ***known*** facts amounting to a 'charade of ignorance'"—"[n]either awareness of ***some*** probability of illegal conduct nor a showing the defendant should have known is enough, and so 't]he circumstances which will support [a] deliberate indifference instruction are rare.'" 595 F.3d at 240 (citation omitted) (bold added). "Knowledge," even in the form of "deliberate ignorance," must be proven and submitted to the jury as an element of the offense or claim. But here, "knowledge" is not an element of any claim that Plaintiffs assert. Finally, the Fifth Circuit has expressly rejected Plaintiffs' "collective knowledge" theory, i.e., the knowledge of "Daniel Defense" as a corporate entity. Where "an essentially subjective state of mind is an element of a cause of action," the Fifth Circuit has "declined to allow this element to be met by a corporation's collective knowledge, instead requiring that the state of mind 'actually exist' in at least one individual and not be imputed on the basis of general principles of agency." *Chaney*, 595 F.3d at 241 (citation omitted).
[7] Plaintiffs quote Section 6.03 but incorrectly cite to Section 46.06(a)(2). Doc. 33, p. 12.

169170

**D.      Plaintiffs fail to plead any facts that the "offers" proximately caused the shooting.**

The predicate exception only applies if the alleged statutory violation "was a proximate cause of the harm for which relief is sought . . . ."  15 U.S.C. § 7903(5)(a)(iii).  Thus, Plaintiffs must plead and prove that the "offers" themselves proximately caused their harm (the shooting).  Yet, Plaintiffs offer only the conclusory allegation that the supposed Section 46.06(a)(2) violation caused their harm (Petition, ¶ 461).  But this is insufficient to avoid dismissal.  Doc. 31, p. 14-15; *see Prescott v. UTMB Galveston Tex.*, 73 F.4th 315, 318 (5th Cir. 2023) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Rynearson v. United States*, No. DR-12-CV-24-AM/CW, 2013 WL 11309342, at *12 (W.D. Tex. Sept. 30, 2013), *aff'd*, 601 Fed. Appx. 302 (5th Cir. 2015) (same).

Proximate cause requires both cause in fact –that the defendant's act or omission was a substantial factor in causing the injury and, without which, the injury would not have occurred– and foreseeability of the injury.  *Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex. 2023); *Fugett v. DCP Midstream, L.P.*, No. 2:14-CV-00111-J, 2015 WL 510965, at *4 (N.D. Tex. Feb. 6, 2015).  But Plaintiffs do not allege any such facts in connection with the "offers."  Petition, ¶ 461.  Plaintiffs' response is no better.  They generally refer to Daniel Defense's marketing efforts ***prior*** to the alleged "offers."  Doc. 33, p. 10.  But totally absent are any alleged facts that the "offers" themselves were a substantial factor in causing the shooting, or allegations that the shooting would not have occurred without the "offers."  Nor do Plaintiffs allege any facts that the shooting was a foreseeable result of the "offers."[8]  Plaintiffs simply provide no fact allegations that the "offers" were a proximate cause of the shooting (their harm) and, thus, dismissal is warranted.[9]

---

[8] Moreover, Plaintiffs' entire theory of liability as to Daniel Defense is that the ***content*** of its marketing encouraged dangerous and illegal misuse of firearms against civilian.  Plaintiffs do not allege any such content within the "offers."  And there is no language in either the displayed virtual shopping cart or the *6 April 29 email that suggests such conduct.

[9] *See Reneker v. Offill*, No. CIV.A.3:08-CV-1394-D, 2009 WL 3365616, at *6–7 (N.D. Tex. Oct. 20, 2009) (dismissing malpractice claim and stating "the amended complaint does not contain sufficient factual allegations to support the requisite element that Godwin Pappas' actions were a "substantial factor" in the AmeriFirst Clients' damages"); *Landry*

Simply stated, Plaintiffs cannot rely on alleged violations of Section 46.06(a)(2) as the basis for a predicate exception.

## II.    Plaintiffs do not plead the FTCA at all and, thus, cannot rely on it as the basis for a PLCAA exception.

Plaintiffs maintain they have alleged a violation of the Federal Trade Commission Act ("FTCA") as a PLCAA predicate exception.  Doc. 33, p. 13.  They have not.  With respect to Daniel Defense, Plaintiffs' only reference to the PLCAA is in their claims against it for negligence and negligence per se.  Petition, ¶¶ 461-466 (First and Second Causes of Action).  In their negligence claim, Plaintiffs only allege a violation of Section 46.06(a)(2) as the basis of a PLCAA predicate exception.  *See* Petition, ¶ 461 ("This is an action in which Daniel Defense knowingly violated Texas Penal Code 46.06(a)(2), which is a statute applicable to the sale and marketing of the DDM4v7, and that was a proximate cause of the harm for which relief is sought.  Accordingly, the Plaintiffs' entire action is exempt from any immunity conferred by the [PLCAA].").[10]

Beyond expressly invoking only Section 46.06(a)(2) as a predicate and negligence per se exception, Plaintiffs' petition is devoid of any references to the FTCA.  That statute prohibits "unfair or deceptive acts or practices in or affecting commerce . . . ."  15 U.S.C. § 45(a)(1).  No meaningful reference to this statute appears in Plaintiffs' operative pleading.[11]

Daniel Defense is not required to assert 12(b)(6) challenges to theories Plaintiffs have not pleaded.  *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) ("The court is not

---

*v. Tex. Dep't of Criminal Justice*, No. CV H-17-370, 2017 WL 6209607, at *7 (S.D. Tex. Dec. 8, 2017*), aff'd sub nom.*, 852 Fed. Appx. 123 (5th Cir. 2021) (dismissing malpractice claim because plaintiff failed to allege facts that doctors' actions were a substantial factor in decedent's suicide); *DM Arbor Court, Ltd. v. City of Houston*, No. CV H-18-1884, 2021 WL 4926015, at *35 (S.D. Tex. Oct. 21, 2021) (dismissing claim because plaintiff failed to plead facts alleging tortious acts were a substantial factor of plaintiff's injury).

[10] Similarly, in their negligence per se claim against Daniel Defense, Plaintiffs only allege the violation of Section 46.06(a)(2) as the basis for a negligence per se exception.  Petition, ¶¶ 462-466.

[11] A simple word search shows the following terms do not appear in Plaintiffs' petition:  "Federal Trade Commission," "Federal Trade Commission Act," "FTC," "FTC Act," "FTCA," "15 U.S.C. § 45," "Section 45," "unfair," "unfair acts," "unfair practices," "deceptive," "deceptive acts," or "deceptive practices."

169170

required to 'conjure up **unpled allegations** or construe elaborately arcane scripts to' save a complaint.") (emphasis added); *Wilbert v. Quarterman*, 647 F. Supp. 2d 760, 768–69 (S.D. Tex. 2009) (same); *see also Williams v. Jackson*, No. 1:05-CV-485, 2006 WL 8440816, at *15 (E.D. Tex. Sept. 6, 2006) ("Although the Rule 12(b)(6) standard is one under which the Court is to construe Plaintiff's allegations in every favorable light, the Court cannot do Mr. Williams' pleading for him. Having to guess at what exactly he is alleging falls far short of an acceptable pleading, even under the Rule 12(b)(6) standard."). Plaintiffs never pleaded a violation of FTCA as the basis for a PLCAA exception and cannot rely on a phantom allegation to avoid dismissal.[12]

## III.    Plaintiffs have no viable claim for negligence per se and, thus, cannot rely on the PLCAA's negligence per se exception.

Plaintiffs maintain Daniel Defense's alleged violation of Section 46.06(a)(2) also supports a negligence per se claim and exception. Doc. 33, p. 13-15. Once again, Plaintiffs ignore an argument in Daniel Defense's motion explaining why, as a matter of federal law, Section 46.06(a)(2) cannot serve as the basis for a negligence per se claim (or exception). Further, Plaintiffs' state law argument is unavailing.

### A.    Plaintiffs must –but fail to– plead any authority that a violation of Section 46.06(a)(2) constitutes negligence per se.

Texas federal courts are clear. A party asserting negligence per se must allege that courts have determined that a violation of the statute at issue establishes negligence per se, otherwise the claim will be dismissed. *E.g.*, *Allison v. J.P. Morgan Chase Bank, N.A.*, No. 1:11-CV-342, 2012 WL 4633177, at *13–14 (E.D. Tex. Oct. 2, 2012); *Burgess v. Bank of Am., N.A.*, No. 5:14-CV-00495-

---

[12] Further, if Plaintiffs had actually pleaded the FTCA as a predicate exception, that exception would not preserve their claims for all the reasons Daniel Defense has explained in its motions to dismiss in other cases where the plaintiffs did plead the FTCA as a predicate exception. *See Torres*, No. 2:22-cv-00059-AM, Doc. 140, p. 10-30 (Motion); Doc. 143, p. 3-13 (Reply); *see also Zamora*, No. 2:23-cv-00017-AM, Doc. 167, p. 10-28 (Motion); Doc. 169, p. 3-14 (Reply). Referencing these cases, Plaintiffs state they have no objection to Daniel Defense filing a supplement to its motion to dismiss to address their FTCA theory. Doc. 33, p. 13. But because Plaintiffs never pleaded the FTCA as a predicate exception, the supplement is unnecessary.

169170

DAE, 2014 WL 5461803, at *12 (W.D. Tex. Oct. 27, 2014); *Bryant v. CIT Group/Consumer Fin.*, No. CV H-16-1840, 2018 WL 1740075, at *7 (S.D. Tex. Apr. 11, 2018).[13]  Because negligence per se is a matter of state law, a federal court plaintiff must allege that courts have determined the statute can support a claim for negligence per se.  *Id.*  Plaintiffs, however, ignore this authority in their response (Doc. 33, p. 13-15), thus waving any counterargument.  *Neukranz*, 2023 WL 2555551, at *6, n. 6.  Regardless, because Plaintiffs do not (and cannot) allege any Texas court has held that a violation of Section 46.06(a)(2) gives rise to a negligence per se claim, Plaintiffs' negligence per se claim fails as does their putative PLCAA exception.  *Burgess*, 2014 WL 5461803, at *12.

**B.    There is no analogous common law duty as required for a negligence per se claim.**

Even assuming federal courts may recognize new grounds for negligence per se, Plaintiffs' claim and PLCAA exception still fail because there is no analogous common law duty.  *See* Doc. 31, p. 24-27 (explaining no analogous common law duty exists because there is no general duty to protect others from criminal acts of third parties).  Plaintiffs cite cases purporting to recognize a general duty of care as to firearms suppliers.  Doc. 33, p. 14-16.  Several cases Plaintiffs cite involve claims arising from accidental shootings not intentional criminal attacks on others and, thus, are inapposite.[14]  Plaintiffs cite other cases involving individuals who deliberately used firearms and ammunition to hurt others, but in those cases the courts were not asked to decide the existence of a duty.[15]  Plaintiffs

---

[13] This authority is consistent with the Fifth Circuit's admonition that federal district courts are not in the business of expanding state tort law.  *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018) ("When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts."); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 Fed. Appx. 239, 250 (5th Cir. 2020) (stating "we cannot recognize a claim that the Texas Supreme Court has not yet recognized").

[14] *See Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 131 (Tex. App.—Corpus Christi 1997, pet. denied) (entering take-nothing judgment in favor of ammunition seller); *Hulsebach v. Ramsey*, 435 S.W.2d 161, 164 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ) (affirming summary judgment for defendants); *McLain v. Hodge*, 474 S.W.2d 772, 777 (Tex. Civ. App.—Waco 1971, writ ref'd n.r.e.) (reversing take-nothing judgment in claim against dealer for failing to inspect firearm that malfunctioned and injured its owner).

[15] *See e.g.*, *Tisdale v. Pagourtzis*, 2020 WL 7170491, at *7 (S.D. Tex. Dec. 7, 2020) (remanding case for lack of federal-question jurisdiction); *Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547, 550 (Tex. App. – Fort Worth 1990, writ denied) (affirming summary judgment in favor or seller of ammunition used in four murders); *Love v. Zales Corp.*, 689 S.W.2d 282, 285 (Tex. App. – Eastland 1985, writ ref'd n.r.e.) (affirming summary judgment of negligence claim, based on statute of limitations, for defendant who sold shotgun that purchaser used to commit murder).

169170

also cite to *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841 (Tex. App.—San Antonio 1989, writ denied). Doc. 33, p. 14-15.  There, the court of appeals stated it would impose a duty on firearms sellers "with regard to the sale of a firearm to a *manifestly* irrational or mentally imbalanced person . . . ."  *Peek*, 768 S.W.2d at 847 (emphasis in original).  But the court affirmed summary judgment for the seller, concluding evidence that the purchaser appeared nervous was not evidence he "was *manifestly* insane, irrational, mentally incompetent or mentally impaired."  *Id.*  Here, there is no allegation the Shooter was ***manifestly*** insane, irrational, mentally incompetent or mentally impaired when he legally purchased the Rifle.  And even if he were, Daniel Defense could not have determined that fact via an online order.

Plaintiffs' cases are unavailing.  Plaintiffs seek to establish negligence per se by relying on a statute they claim prohibits ***offers*** regardless of whether the actual transfer is legal.  Thus, Plaintiffs need to identify an analogous common law duty not with respect to furnishing firearms but, rather, in ***offering*** to furnish a firearm.  None of Plaintiffs' cases suggest such a duty to exercise reasonable care with respect to offers, and especially with respect to online orders devoid of any personal interaction.

There is no duty to prevent the criminal acts of the third parties.  Doc. 31, p. 24-27.  And Texas courts repeatedly hold that intentional criminal conduct following the sale of a firearm is not foreseeable.  *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784 (Tex. App.—Dallas 2000, pet. denied); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1990, writ denied).[16]  Plaintiffs lack an analogous common law duty to support their claim for negligence per se.  Accordingly, the PLCAA's negligence per exception is inapplicable.

---

[16] Plaintiffs cite *Chapman* arguing that "[g]iven the frequency of mass shootings involving AR-15 style rifles," Daniel Defense could foresee that selling the Rifle would result in a mass shooting.  Doc. 33, p. 18.  *Chapman* does not support this argument.  *Chapman* did not involve a mass shooting, and the court concluded that the subsequent criminal conduct in that case was not foreseeable.  792 S.W.2d at 788.

**C.    Plaintiffs' negligence per se exception based on Section 46.06(a)(2) fails for the same reasons as their predicate exception based on the same statute.**

Lastly, because there is no viable violation of Section 46.06(a)(2) to support a predicate exception, there is similarly no violation to support a negligence per se exception. Section 46.06(a)(2) is inapplicable when there is a legal firearm transfer as in this case. *See* Section I(B), *supra*. Plaintiffs fail to allege Daniel Defense knowingly or intentionally offered to sell the Rifle when the Shooter was 17. *See* Section I(C), *supra*. And Plaintiffs do not sufficiently plead the "offers" were a proximate cause of their injuries. Rather, Plaintiffs' allegations expressly negate the "offers" as a proximate cause. *See* Section I(A), *supra*. Simply put, Plaintiffs fail to allege a cognizable negligence per se exception based on Section 46.06(a)(2).

**IV.    The First Amendment bars Plaintiffs' claims.**

Plaintiffs fundamentally misunderstand the First Amendment standards that apply to their remaining claims. Specifically, Plaintiffs abandon their claims against Daniel Defense except for negligence, negligence per se, and gross negligence (collectively, the "Negligent Speech Claims"). The Negligent Speech Claims are founded on the theory that Daniel Defense's speech influenced or encouraged the Shooter to violence. As a threshold matter, Plaintiffs must—but cannot—plausibly demonstrate that the speech is unprotected. Plaintiffs' attempt to overcome the First Amendment's high bar fails for at least five reasons as shown below.

**A.    Plaintiffs' theory of liability is premised on the messages that Daniel Defense's speech allegedly promotes, unrelated to any commercial characteristic of the speech.**

The central premise of Plaintiffs' attempt to evade the First Amendment is that Daniel Defense's speech is commercial, which they claim lowers the threshold for deeming the speech unprotected. *See* Doc. 33, p. 4, 31-32, 35-43. The supposedly reduced First Amendment standard that Plaintiffs posit is incorrect. *See* Section IV(E), *infra*. But more fundamental to their argument, Plaintiffs' theory of liability rests on "messages" that have nothing to do with commerce or

13

commercial harms, as explained below.  Thus, contrary to Plaintiffs' assertion, there is no basis to apply the commercial speech standard rather than the exacting scrutiny that the First Amendment usually demands.

The commercial speech doctrine is rooted in the idea that "the State's power to regulate commercial transactions justifies its concomitant power to regulate commercial speech that is 'linked inextricably' to those transactions." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499 (1996). Consequently, when a restriction targets commercial messages "for reasons unrelated to the preservation of the fair bargaining progress," there is no "reason to depart from the rigorous review that the First Amendment generally demands." *Id.* at 501.  The "proposal of a commercial transaction" is "***the test*** for identifying commercial speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 423 (1993) (quoting *Board of Trustees of State University of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989)) (bold added).  Thus, commercial speech scrutiny is not appropriate for a restriction that reaches beyond speech that merely "proposes a commercial transaction." *44 Liquormart*, 517 U.S. at 499; *see also Discovery Network*, 507 U.S. at 419–21; *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795–96 (1988).  Instead, when a restriction on speech strikes at "the substance of the information communicated" as opposed to "the commercial aspect of [it]" ("offerors communicating offers to offerees"), *Linmark Associates, Inc. v. Willingboro Tp.*, 431 U.S. 85, 96 (1977), the First Amendment demands the most exacting scrutiny *see 44 Liquormart*, 517 U.S. at 499, 501–02.

Plaintiffs' argument for commercial speech scrutiny crumbles under these basic principles. The Negligent Speech Claims reach well beyond speech that "does no more than propose a commercial transaction." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (cleaned up).  They do not concern a commercial representation, such as price or quantity, nor any "commercial harms." *See Bolger*, 463 U.S. at 66–67; *44 Liquormart*,

517 U.S. at 501. The only "commercial transaction" that involved a Daniel Defense product was the Shooter's **legal** purchase of the Rifle. *See* Petition, ¶¶ 388-389. But because the PLCAA and the Second Amendment would squarely foreclose any claim arising from the **lawful** purchase of the Rifle, Plaintiffs assert a brazenly broad negligence theory based on the "messages" they erroneously infer from Daniel Defense's so-called "advertisements." To be clear, Daniel Defense flatly rejects Plaintiffs' vitriolic interpretations. After more than 450 paragraphs of disconnected allegations about Defendants' speech, Plaintiffs sum up their theory of liability: Daniel Defense's marketing "encourag[es] the illegal and dangerous misuse of its AR-15-style rifles" by "imply[ing] that civilians, including the Shooter, can use Daniel Defense weapons for offensive combat-like missions, to assert dominance, and/or to exact revenge," which "inspired and encouraged the Shooter to carry out the shooting and preyed on his desire for dominance, notoriety, and revenge." Petition, ¶¶ 459(a)-(b) & 460. Even the allegations about the commercial transactions are couched in the terms of alleged **noncommercial** messages: according to Plaintiffs, the Shooter bought the Rifle and accessories only because Daniel Defense's so-called advertising allegedly "validat[ed]" and "encourag[ed]" the noncommercial message of a "fantasy of revenge, power, and notoriety." Petition, ¶¶ 122 & 418.[17]

Accordingly, the Negligent Speech Claims are plainly based on noncommercial messages that Daniel Defense allegedly promotes, not messages that "propose a commercial transaction." *Cf. 44 Liquormart*, 517 U.S. at 501; *Discovery Network*, 507 U.S. at 421–24. Simply labeling Daniel Defense's speech "advertising" or "marketing," as Plaintiffs do, is not enough to deem the speech "commercial" for First Amendment purposes. *See Hines v. Pardue*, 117 F.4th 769, 777 (5th Cir. 2024) ("labels cannot be dispositive of [the] degree of First Amendment Protection;" courts have an independent duty to consider a restriction "in a very practical sense," not based on "the parties'

---

[17] *See also, e.g.*, Doc. 33, p. 2, 5-7 (citing Petition); *id.*, p. 18, 42; Petition, ¶¶ 12, 115-119, 127, 135, 311, 469, 472, 475.

169170

labels").  Nor can Plaintiffs rely on the conclusory assertion that Daniel Defense spoke with an economic motivation. *Discovery Network*, 507 U.S. at 422–23.[18]

Because Plaintiffs' theory of liability has nothing to do with commerce or any "commercial" statement, the commercial speech distinction is and must be analytically irrelevant.  Like any other content-based restriction of speech, the Negligent Speech Claims must be analyzed under the most exacting First Amendment scrutiny and are presumptively unconstitutional.  *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

## B.    Negligence is never an appropriate standard for punishing speech.

The First Amendment prohibits the suppression of ideas expressed by speech, including violence, even if the speech is directed at children.  *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 794–95, 799 (2011).  Thus, speech that allegedly encourages lawless action and thereby causes a plaintiff's injury must fall within a category of unprotected speech before liability can attach.  *See Counterman v. Colorado*, 600 U.S. 66, 85 (2023) (Sotomayor, J., concurring) (in content-based suits, the threshold issue is "to determine whether the speech in question falls within" a "traditionally unprotected category");[19] *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916–17 (1982); *see also United States v. Stevens*, 559 U.S. 460, 468–69 (2010) (traditionally unprotected categories include incitement, solicitation, aiding and abetting, and so-called "speech integral to criminal conduct").

Because prohibitions based on the content of speech "have the potential to chill, or deter, speech outside their boundaries," the First Amendment requires "strategic protection" in the form of subjective intent requirements for all "the most prominent categories of constitutionally unprotected speech."  *Counterman*, 600 U.S. at 75.  Accordingly, negligence is ***never*** an appropriate standard for

---

[18] Moreover, even if the speech at issue "propose[d] commercial transactions" (it does not), that "does not in and of itself dictate the constitutional analysis that should apply to decisions to suppress them."  *44 Liquormart*, 517 U.S. at 501.

[19] Although *Counterman* was a criminal case, the Supreme Court has explained that there is no principled distinction between civil and criminal penalties for the purposes of the First Amendment analysis. *See Counterman*, 600 U.S. at 76; *id.* at 102 (Sotomayor, J., concurring).

169170

punishing speech based on its content. *See id.* at 77–79 & n.5; *Mckesson v. Doe*, 601 U.S. __, 144 S. Ct. 913, 913–14 (2024) (Sotomayor, J., statement respecting denial of certiorari) (explaining expectation that lower court would observe *Counterman's* emphasis that "an objective standard like negligence would violate the First Amendment"); *Ford v. Mckesson*, No. CV 16-00742-BAJ-RLB, 2024 WL 3367216, at *6 (M.D. La. July 10, 2024), *appeal docketed* No. 24-30494 (5th Cir. Aug. 7, 2024) (applying *Counterman* on remand and holding that the First Amendment barred negligence liability against protest leader for injuries caused by members of the protest).

The First Amendment therefore bars Plaintiffs' Negligent Speech Claims under any standard, i.e., whether judged as incitement or "speech integral to criminal conduct."[20]  Plaintiffs' theory of liability triggers the same constitutional concerns that the Supreme Court spoke of in *Counterman*— the negligence standard is inherently uncertain and thus leaves speakers "unsure about the side of a line on which his speech falls," which inevitably leads to "self-censorship" of protected speech. *Counterman*, 600 U.S. at 75.  "A person acts negligently if he is not but should be aware of a substantial risk," *id.*—here, that the Shooter (or other consumers) would allegedly understand Daniel Defense's speech as "encouraging" the "violent, assaultive, and illegal use of its weapons," Doc. 33, p. 31.  "That makes liability depend not on what the speaker thinks, but instead on what a reasonable person would think about whether [its] statements are [inciting or solicitous] in nature." *Counterman*, 600 U.S. at 79 n.5.  The First Amendment does not allow speech to be punished based on such an ambiguous standard—it requires intent.

As Plaintiffs acknowledge, once the Court concludes that Daniel Defense's speech is protected, it makes little sense to engage in any form of means-end scrutiny (strict or intermediate).

---

[20] Plaintiffs erroneously assert that "[t]o fall under the speech integral to criminal conduct category, the speech must only be in violation of any valid criminal statute."  Doc. 33, p. 33 (citing, but not quoting, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (2008)).  But for the reasons explained in *Counterman* and *Stevens*, that is plainly wrong.  *See* Note 22, *infra*, and accompanying text (discussing *Stevens'* holding that even "depictions" of illegal activity warrant First Amendment protection).  For a detailed analysis of the "speech integral to criminal conduct" jurisprudence, see Eugene Volokh, The "*Speech Integral to Criminal Conduct*" *Exception*, 101 CORNELL L. REV. 981 (2016).

169170

*See* Doc. 33, p. 42 ("the remaining three factors of *Central Hudson* . . . mesh poorly with the issue before the Court"); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 696–97 (6th Cir. 2002) (analyzing the First Amendment issues that would arise if tort liability was imposed against video game distributor based on allegations that its violent video games foreseeably caused a third-party's criminal acts, and observing that tiered scrutiny is not appropriate in such cases because "crucial to the safeguard" of any form of tiered scrutiny "is that [the Court] has a clear limitation, articulated in the [statute], to evaluate").[21]  The Court's analysis should begin and end here.  Plaintiffs can ***never*** demonstrate that Daniel Defense's speech is subject to punishment because the Negligent Speech Claims lack the subjective intent that the First Amendment ***requires*** to bring the speech within any traditionally unprotected category.

### C.    Plaintiffs' claims are premised on impermissible viewpoint discrimination.

For the reasons discussed above, there can be no dispute that Plaintiffs' Negligent Speech Claims are based on the noncommercial content of Daniel Defense's speech.  *See* Doc. 33, p. 5–7. This is underscored in Plaintiffs' attempt to create a link between the message of Daniel Defense's speech—specifically, the patriotic, pro-Second Amendment, and pro-military viewpoints and related messages that Daniel Defense advocates and supports—and the Shooter's heinous criminal acts.  *See, e.g.*, Petition, ¶¶ 127–28, 132–33, 165–67 (allegations about pro-military and pro-law enforcement messages and images); *id.*, ¶¶ 108, 110–112, 358 (allegations about Daniel Defense's support of Second Amendment-protected rights).

Because Plaintiffs seek to impose liability based on the noncommercial messages that Daniel Defense's speech promotes—particularly its pro-Second Amendment viewpoint—their Speech

---

[21] Even in *Braun v. Soldier of Fortune Mag., Inc.*, 968 F.2d 1110 (11th Cir. 1992), one of the only cases holding that a negligence standard could be applied consistent with the First Amendment (which is doubtful, if not abrogated, in view of recent Supreme Court precedent like *Counterman*), the court did not apply traditional means-end scrutiny, despite holding that the speech in question was commercial. *See id.* at 1116–20; *see also id.* at 1122 (Eschbach, J., dissenting) (expressing concerns about the "difficult and specific" First Amendment issues the case presented, for which there was "little guidance").

Claims are presumptively unconstitutional.  *See Reed*, 576 U.S. at 163; *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional.").  Here, to the extent the speech is commercial at all, it is inherently intertwined with noncommercial speech concerning products and conduct protected by the Second Amendment.  Plaintiffs' only response is that "[c]laiming that an advertisement for Daniel Defense guns is a 'message' about the Second Amendment is like saying an advertisement for Tito's Vodka is a message about the Twenty-First."  Doc. 33, p. 38.  But that unreasoned assertion falls flat. Unlike the Second Amendment, the Twenty-First Amendment does not confer an individual right. *Compare, e.g.*, *D.C. v. Heller*, 554 U.S. 570, 595 (2008) (the Second Amendment confers an individual right), *and Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) ("The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."), *with* U.S. CONST., AMEND. XXI, *and Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 274– 75 (1984) (the primary purpose of the Twenty-First Amendment "was to restore to the States . . . absolute control in effect over interstate commerce affecting intoxicating liquors" (cleaned up)).

The more apt analogy is a restriction on advertising of other legal, constitutionally protected products, like the contraceptive products the Supreme Court addressed in *Carey v. Population Servs. Int'l*, 431 U.S. 678 (1977).  As the Court explained there, truthful information about entirely lawful, constitutionally-protected products and activity cannot be suppressed irrespective of whether the speech is commercial.  *Id.* at 700–01.  To this end, the Court rejected the argument that contraceptive advertisements could be restricted because they might legitimate "illicit sexual behavior," explaining that theory did not meet the incitement standard: "none of the advertisements in this record can even remotely be characterized as 'directed to inciting or producing imminent lawless action and . . . likely to incite or produce such action.'"  *Id.* at 701 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447

(1969)).  Instead, it held that such advertisements "merely state the availability of products and services that are not only entirely legal, *cf. Pittsburgh Press Co.*, [413 U.S. at] 376, but constitutionally protected." *Id.*

Like the contraceptive advertisements in *Carey*, the firearm-related speech here concerns products and conduct that are not just legal, but also constitutionally protected.  *See Junior Sports Mags. v. Bonta*, 80 F.4th 1109, 1116–19 (9th Cir. 2023).  That is, Daniel Defense's speech promoting firearms is inextricably linked with the promotion of the lawful exercise of Second Amendment rights.  For instance, an advertisement that "promotes" a Daniel Defense product using the image of a firearm or depicting other firearm-related conduct is inherently symbolic of a pro-Second Amendment viewpoint.  Plaintiffs' assertion that *they intuit* unstated messages of violence from Daniel Defense's speech, or the conclusory claim that an image depicts supposedly unlawful conduct,[22] is not enough to transform the First Amendment interest at stake.

The First Amendment simply does not allow Plaintiffs' effort to punish Daniel Defense's speech based on its express and inherent pro-Second Amendment content and viewpoint, especially where that speech addresses products that are themselves constitutionally protected.

### D.    Plaintiffs fail to demonstrate that Daniel Defense's speech is unprotected.

As a threshold matter, "[a]ll speech" is "presumptively protected by the First Amendment; the burden rests on the [plaintiff] to establish that the particular expressions . . . are outside its reach." *Bursey v. United States*, 466 F.2d 1059, 1082 (9th Cir. 1972) (compiling U.S. Supreme Court cases).

---

[22] The Supreme Court addressed this issue in *Stevens*. Specifically, the government argued that "depictions of 'illegal acts of animal cruelty' that are 'made, sold, or possessed *for commercial gain*' necessarily 'lack expressive value,' and therefore should 'be regulated as unprotected speech.'" *Stevens*, 559 U.S. at 469 (emphasis added).  But as the Court explained, the government's power to criminalize or prohibit certain conduct does not mean it has the power to punish "depictions" of that conduct.  *See id.* at 469–70 & 474–76.  Likewise, assuming *arguendo* that conduct depicted in an advertisement is illegal, *cf.* Doc. 33, p. 39-40 (listing alleged examples), the *depiction* itself is protected speech unless it falls into a traditionally unprotected category, such as incitement or solicitation, in which case Plaintiffs still would be required to plead and later prove that Daniel Defense had the requisite *mens rea* before the speech could be deemed unprotected.

"We presumptively protect all speech . . . in order that clearly protected speech may flower in the shelter of the First Amendment." *281 Care Comm. v. Arneson*, 638 F.3d 621, 636 (8th Cir. 2011). Accordingly, Plaintiffs must plausibly demonstrate that the speech they seek to punish is unprotected. *See Counterman*, 600 U.S. at 85 (Sotomayor, J., concurring); *Cf.* Doc. 33, p. 39 (wrongly claiming that Daniel Defense bears the burden to demonstrate its speech is protected).

This is underscored by the first step of the commercial speech test—requiring that the speech "concerns lawful activity"—invoking the standards for unprotected speech. *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 580 (2001) (Thomas, J., concurring) (because "[t]he State's power to punish speech that solicits or incites crime has nothing to do with the commercial character of the speech," there "is no reason to apply anything other than our usual rule for evaluating solicitation and incitement simply because the speech in question happens to be commercial");[23] *James*, 300 F.3d at 695–99.

Plaintiffs fail to respond substantively to Daniel Defense's argument that incitement is the appropriate First Amendment standard. To the contrary, they effectively admit that they cannot demonstrate incitement. So, Plaintiffs attempt to reframe the analysis under the "speech integral to criminal conduct" exception to the First Amendment. But that too fails.

---

[23] This concept also appears in the Supreme Court's cases concerning the appropriate standard for unprotected speech when there is a commercial interest involved. *See, e.g.*, *United States v. Williams*, 553 U.S. 285, 298 n.2 (2008). Although these cases do not specifically resolve this issue, they lend further support to Justice Thomas's reasoning in *Lorillard*. For instance, in *Williams*, the Court rejected the Eleventh Circuit's conclusion that the exclusion of First Amendment protection for "[o]ffers to engage in illegal transactions" extended "only to *commercial* offers to provide or receive contraband[.]" 553 U.S. at 297–98. This, the Court explained, "mistakes the rationale for the categorical exclusion," which is "not based on the less privileged First Amendment status of commercial speech, [citation], but on the principle that offers to give or receive what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection" in the first instance. *Id.* at 298. Justice Thomas observed the same principle in his *Lorillard* concurrence: when the justification for regulating commercial speech is that it concerns ***unlawful*** activity, the Court must decide whether the speech falls within a historically unprotected category, applying the usual rules for evaluating that type of speech (i.e., incitement).

169170

    **1.**    **Incitement is the appropriate First Amendment standard, and Plaintiffs effectively concede they cannot meet it.**

Plaintiffs cannot escape the conclusion that their Negligent Speech Claims implicate the First Amendment standard for incitement. Their theory is that Daniel Defense's speech influenced and encouraged the Shooter to violence, which is quintessential incitement. But as Plaintiffs effectively admit, and for the reasons stated in Daniel Defense's Motion,[24] Daniel Defense's speech does not constitute unprotected incitement. Doc. 33, p. 33, n.14. Plaintiffs' failure to engage with the incitement analysis is tantamount to a concession that Daniel Defense's speech does not constitute incitement.

    **2.**    **The "speech integral to criminal conduct" exception does not apply because Plaintiffs assert a claim for negligence—not a direct violation of Texas Penal Code § 46.06.**

Because Plaintiffs cannot plausibly show that Daniel Defense's speech constitutes unprotected incitement, *see* Doc. 33, p. 33, n.14, they attempt to pass the First Amendment threshold by relying on the purported violation of Texas Penal Code § 46.06, arguing that the allegedly offending "offers" to sell constitute unprotected "speech integral to criminal conduct," *id.*, p. 35–37. But their effort to reframe the analysis fails for at least two independent reasons.

*First*, Plaintiffs are not asserting, nor would they have standing to assert, a violation of Section 46.06, which is a penal statute without a private right of action. Instead, to bring the otherwise common Negligent Speech Claims within the PLCAA's predicate exception, Plaintiffs plead the violation of Section 46.06 as ***one among other*** alleged "breaches" of the common-law duty to "refrain from engaging in any activity creating reasonably foreseeable risks of injury to others." *See* Petition, ¶¶ 459–60. As discussed, however, the alleged violation of Section 46.06 is far too attenuated from Plaintiffs' injuries to have proximately caused them (not to mention the thorny constitutional and

---

[24] Because Plaintiffs do not address Daniel Defense's argument that the incitement standard applies, Daniel Defense does not belabor its arguments here.

169170

statutory issues that would arise if Plaintiffs' theory of liability depended on the Shooter's *legal* purchase of a constitutionally protected firearm). That is also why Plaintiffs' negligence claim does not rest solely on the alleged violation of Section 46.06. Their theory encompasses far more speech than just the alleged "offer to sell"—it depends on the idea that Daniel Defense's broader "marketing scheme" gradually "influenced" or "groomed" the Shooter to the point of violence. *See, e.g.*, Doc. 33, p. 31-32 & 39-42. Even if the alleged Section 46.06 violation could properly be considered alone, rather than as one among other considerations that define the scope of the common law duty, Plaintiffs' theory of cumulative negligent conduct would collapse.

In any event, in the context of Plaintiffs' Negligent Speech Claims, the violation of Section 46.06 is a mere factual allegation, not an element that must be proven. *See Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998) (listing elements of negligence and explaining that statutes are relevant only to the existence of a duty, which is a question of law). In other words, the negligence standard does not require Plaintiffs to prove that Daniel Defense violated Section 46.06 with the subjective intent that the First Amendment demands. *See Counterman*, 600 U.S. at 75–77.

**Second**, even assuming, *arguendo*, that the alleged violation of Section 46.06 is relevant to the First Amendment analysis, Plaintiffs' allegations do not meet the standard for "speech integral to criminal conduct." To invoke this exception, Plaintiffs essentially argue that the alleged action of offering to sell a firearm to a minor is "conduct," and just because it was carried out through words does not mean it is protected by the First Amendment. Not so.

Although it is true that speech that is "an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment, *Stevens*, 559 U.S. at 471; *United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022), this exception applies only if the alleged "offers" are part and parcel of the underlying crime—here, the knowing unlawful transfer of a firearm to a minor *see United States v. Williams*, 553 U.S. 285, 297 (2008); *Way*, 856 S.W.2d at 237 (stating Section

23

46.06(a) is a "prohibition of the actual transfer of firearms to minors and parental permission is an affirmative defense"); *United States v. Hansen*, 599 U.S. 762, 771 (2023) (although solicitation may take place through words or conduct, it requires "an intent to bring about a particular unlawful act"). Indeed, Section 46.06's "knowingly" standard requires knowledge that the particular unlawful result "is practically certain to follow." *See Counterman*, 600 U.S. at 79; TEX. PENAL CODE § 46.06(a)(2).

Plaintiffs cannot possibly satisfy this standard because they allege that the Shooter purchased the Rifle *legally* after he turned 18. Petition, ¶¶ 388-389. This admission controls the outcome here. In view of the laws that require a background check and age verification at the point of transfer to the Shooter, *see* 18 U.S.C. § 922(t)(1)(A), (D), it cannot be said that an unlawful sale "is practically certain to follow" an advertisement of a firearm (or automated email "offer") to a minor. If anything, the opposite is true—these requirements exist to ensure that no unlawful transfers occur. To interpret Section 46.06(a)(2) as including within its sweep Daniel Defense's generic price quotations and automated follow-up email, with no connection to subsequent unlawful conduct, would not only be inconsistent with the "speech integral to criminal conduct" exception, but also would raise serious overbreadth concerns. *See generally Hansen*, 599 U.S. at 770–79; *Williams*, 553 U.S. at 292–303.[25]

In sum, Plaintiffs' attempt to reframe the analysis under the "speech integral to criminal conduct" exception fails.

---

[25] Plaintiffs also blatantly mischaracterize Daniel Defense's argument as an attack on the constitutionality of Section 46.06. *See* Doc. 33, p. 33-34. But for the reasons discussed above, Daniel Defense does not assert a First Amendment challenge to the criminal statute because Plaintiffs are not asserting a direct claim for violating that statute. Instead, Daniel Defense challenges the constitutionality of Plaintiffs' negligence claim and the premise that Section 46.06 creates a civil duty extending to third-parties injured by an intervening criminal act. Because Daniel Defense does not challenge the constitutionality of Section 46.06, there is nothing to certify under Rule 5.1 of the Federal Rules of Civil Procedure. *See United States v. Zadeh*, 820 F.3d 746, 752–55 (5th Cir. 2016).

169170

E.    **Even if the speech is commercial, Plaintiffs cannot demonstrate it is unprotected under *Central Hudson*.**

1.    **Daniel Defense's speech does not concern unlawful or misleading activity.**

Assuming, *arguendo*, that commercial speech scrutiny applies, Plaintiffs' argument is nonsensical.  Plaintiffs rely on the principle that "commercial speech that proposes an illegal transaction or that promotes or encourages an unlawful activity does not enjoy the protection of the first amendment."  *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 311 n.56 (Conn. 2019) (citing, among other cases, *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496 (1982); *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 388–389 (1973)).  But they misunderstand that rule.

For starters, the *Soto* court's paraphrasing misstates the Supreme Court's precedent in a way that leads to error here.  The standard is not whether speech arguably "promotes or encourages unlawful activity," as *Soto* suggests.[26]  Instead, the Supreme Court in *Central Hudson* described the first step of the commercial speech test as follows: "At the outset, we must determine whether the expression is ***protected by*** the First Amendment. For commercial speech to come within that provision, it at least must ***concern lawful activity*** and not be misleading."  *Cent. Hudson*, 447 U.S. at 563–64 (emphasis added).  Stated differently, the threshold inquiry asks whether the expression falls within a category of speech that the First Amendment has not historically protected, like incitement or solicitation.  This is because the basis for distinguishing among categories of speech that receive

---

[26] Respectfully, the Connecticut Supreme Court took the phrase "promotes or encourages illegal activity" out of context. Although the United States Supreme Court in *Hoffman Estates* did state that the law at issue was "directed at commercial activity promoting or encouraging illegal drug use," in the next sentence it explained its reasoning, stating: "[i]f that activity is deemed 'speech,' then it is speech ***proposing an illegal transaction***, which a government may regulate or ban entirely."  455 U.S. at 496 (emphasis added).  As discussed below, the illegality of the commercial transaction is what makes speech incidental to it unprotected, i.e., as solicitation or incitement, not merely whether the speech can be said to "promote" or "encourage" unlawful activity.  *See also id.* (explaining that the law regulated the sale of items displayed in proximity to "literature encouraging illegal use of cannabis or illegal drugs," but did not regulate the sale of the literature itself, underscoring that a law restricting the latter would be analyzed as a restriction on noncommercial speech).

169170

reduced constitutional protection, or none at all, is "because of their constitutionally prescribable content." *Lorillard Tobacco*, 533 U.S. at 576 (Thomas, J., concurring) (citation omitted).

For commercial speech, the "constitutionally prescribable content" is "limited to the peculiarly commercial harms that commercial speech can threaten—i.e., the risk of deceptive or misleading advertising." *Id.* Thus, because "[a] direct solicitation of unlawful activity" may be proscribed irrespective of whether it is commercial, a court must apply a specific intent standard (such as solicitation or incitement). *See id.* at 579; *see also* Note 23, *supra*, and accompanying text. That was the rationale in *Pittsburgh Press Co.*—which served as the basis for *Central Hudson's* statement that the government may ban commercial speech "related to illegal activity." *Cent. Hudson*, 447 U.S. at 563–64. The Court in *Pittsburgh Press Co.* explained that the restriction on speech was valid because the underlying commercial activity was itself illegal. Stated differently, the restriction was valid not because the speech was "commercial," but rather because it fell within an unprotected category (solicitation). *Pittsburgh Press Co.*, 413 U.S. at 388–89 ("We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes."); *see also Hoffman Ests.*, 455 U.S. at 496 (regulation did not violate First Amendment because it was directed at speech "proposing an illegal transaction"). The illegality of the underlying commercial transaction is the reason that ***commercial*** speech incidental to the transaction is unprotected. That is, the illegality of the commercial transaction is the standard for deciding whether commercial speech is "related to" unlawful activity.

Adopting Plaintiffs' incomplete understanding of *Central Hudson's* exclusion of speech "related to illegal activity" would render the First Amendment's protection of commercial speech meaningless. Consider for example the image showing "a rifle scope aimed at the passenger side of the windshield of a parked car in an urban, civilian environment," which Plaintiffs assert is unprotected because it "relate[s] to and promote[s] illegal activity." Doc. 33, p. 39-40 (citing

Petition).  Although Daniel Defense unequivocally rejects Plaintiffs' assertions about this image, which even Plaintiffs acknowledge was intended to depict *law enforcement* activity, *see ibid.*, it is useful to demonstrate the absurdity of Plaintiffs' argument.

According to Plaintiffs, this speech is unprotected simply based on their unfounded, subjective interpretation that it "relates to illegal activity."  In other words, because they say so.  That boundless standard would lead to absurd results.  Commercial speech would be deemed unprotected any time a creative plaintiff claims to infer unlawful activity from an image or statement, even when the underlying commercial activity is entirely legal.  That cannot be correct.  Instead, as *Pittsburgh Press Co.* teaches, commercial speech can be deemed "related to illegal activity," and therefore unprotected, only when the underlying commercial transaction is itself illegal.  *Pittsburgh Press Co.*, 413 U.S. at 388–89; *Hoffman Ests.*, 455 U.S. at 495–96; *see also Counterman*, 600 U.S. at 87 (Sotomayor, J., concurring) ("First Amendment vigilance is especially important when speech is disturbing, frightening, or painful, because the undesirability of such speech will place a heavy thumb in favor of silencing it.").

The images that Plaintiffs cite are not related to a commercial activity at all, let alone illegal commercial activity.  *Cf. Pittsburgh Press Co.*, 413 U.S. at 388–89.  Even assuming, *arguendo*, that the activity depicted was in fact illegal (it is not), those depictions are protected by the First Amendment unless they fall into another category of traditionally unprotected speech.  *See Stevens*, 559 U.S. at 469–70 & 474–76; *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 249, 251–52 (2002) (computer-generated, i.e., animated, images of child pornography were protected because the images themselves were not the product of the underlying crime, i.e., child abuse).

Plaintiffs cannot cross the demanding threshold of demonstrating Daniel Defense's speech is unprotected when the products that Daniel Defense sells are not only fully legal, but also constitutionally protected.  Daniel Defense's speech is protected even if it was purely commercial.

### 2.        Plaintiffs cannot satisfy the remaining commercial speech factors.

Plaintiffs' cursory treatment of the remaining *Central Hudson* factors demonstrates their inability to connect Daniel Defense's speech to the appropriate First Amendment standard.  Doc. 33, p. 42-43.  Daniel Defense agrees that the "factors of *Central Hudson* . . . mesh poorly with the issue before the Court." *Id.*, p. 42.  But this monstrosity is of Plaintiffs' creation—they assert a theory of liability so anathematic to the First Amendment that it renders traditional analysis inapplicable.  Plaintiffs' Negligent Speech Claims do not implicate the tiers of scrutiny applicable to the lawfulness of a government regulation.   To the contrary, Plaintiffs devise a duty based on an untenable manipulation of tort and constitutional law.  Although Plaintiffs attempt to rely on *Soto*, that court did not address any First Amendment challenge to a claim for negligence.  *See* Doc. 33, p. 40 (citing *Soto*, 202 A.3d at 311 n.56).  Rather, the court relegated its cursory discussion of the First Amendment to sparse lines in a footnote, *Soto*, 202 A.3d at 311 n.56, and in any case, it analyzed the issue in the context of Connecticut's Unfair Trade Practices Act, *id.* at 310–11.  Plaintiffs cannot conflate their claims for negligence with a creature of statute in a different state.

***

Under any standard, Plaintiffs' Negligent Speech Claims should be dismissed with prejudice.  Negligence can never satisfy the First Amendment, precluding Plaintiffs' claims.  Independently, Plaintiffs' claims are premised on constitutionally impermissible content- and viewpoint-discrimination, and so fail.  Further, Plaintiffs fail to plausibly plead that Daniel Defense's speech, even if commercial, is unprotected.  They cannot plead that the speech is integral to any criminal conduct or that it otherwise incited a crime as no harm occurred imminently after the speech.  Respectfully, for all these independent reasons, the Court should find that the First Amendment protects Daniel Defense's speech and dismiss Plaintiffs' Negligent Speech Claims without leave to amend.

169170

**V.      The Court should deny Plaintiffs leave to amend their claims.**

Plaintiffs alternatively request leave to amend their petition.  Doc. 33, p. 43.  The Court should deny the request because any further amendment would be futile.  Doc. 31, p. 45-46.  In none of the cases filed against Daniel Defense have the plaintiffs alleged any claims that qualify under a viable PLCAA exception or survive Rule 12(b)(6) scrutiny.   Independent of the PLCAA's immunity, Plaintiffs' claims are all improperly premised on Daniel Defense's speech, and so are wholly foreclosed by the First Amendment. Further pleading amendments will not change this fact.

## CONCLUSION

WHEREFORE, Defendants Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings, LLC, and M.C. Daniel Group, Inc. respectfully request the Court dismiss all of Plaintiffs' claims against them with prejudice and deny Plaintiffs leave to amend those claims.   Defendants further request any additional relief to which they are entitled.

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

PRICHARD YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

***COUNSEL FOR DEFENDANTS,***
***DANIEL DEFENSE, LLC F/K/A***
***DANIEL DEFENSE, INC.,***
***DANIEL DEFENSE HOLDINGS, LLC,***
***AND M.C. DANIEL GROUP, INC.***

169170

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January 2025, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Chad Matthews
MATTHEWS & FORESTER
3027 Marina Bay Drive, Suite 320
League City, TX 77573

A.M. "Andy" Landry III
J.J. Hardig, Jr.
GRAY REED
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056

Thomas W. Fee
Victor A. Rivera
FEE, SMITH & SHARP, L.L.P.
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

Daniel P. Buechler
Zandra E. Foley
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, TX 75201

Christopher Renzulli
Scott C. Allan
RENZULLI LAW FIRM, LLP
One North Broadway, Suite 1005
White Plains, NY 10601

*/s/ David M. Prichard*
David M. Prichard

169170