# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS,
## DEL RIO DIVISION

| | |
|---|---|
| **ABEL CUELLAR LOPEZ, INDIVIDUALLY AS WRONGFUL DEATH BENEFICIARY OF X.J.L., DECEASED MINOR; FELICHA NICOLE MARTINEZ, INDIVIDUALLY AS WRONGFUL DEATH BENEFICIARY AND AS REPRESENTATIVE OF THE ESTATE OF X.J.L., DECEASED MINOR; RYAN ANTHONY RAMIREZ, INDIVIDUALLY AS WRONGFUL DEATH BENEFICIARY AND AS REPRESENTATIVE OF THE ESTATE OF A.H.R., DECEASED MINOR; AND JESSICA DEANNE HERNANDEZ, INDIVIDUALLY AS WRONGFUL DEATH BENEFICIARY OF A.H.R., DECEASED MINOR,**<br>　　　　*Plaintiffs*,<br><br>v.<br><br>**DANIEL DEFENSE, LLC; DANIEL DEFENSE HOLDINGS, LLC; M.C. DANIEL GROUP, INC.; FIREQUEST INTERNATIONAL, INC.; FLASH CO., INC.; EOTECH, LLC; PROJECT ECHO HOLDINGS, LLC D/B/A AMERICAN HOLOPTICS; KOUCAR MANAGEMENT, LLC; and OASIS OUTBACK, LLC,**<br>　　　　*Defendants.* | Case 2:24-cv-00079-AM<br><br>COMPLAINT AGAINST OASIS FOR DAMAGES<br><br>1.　Negligence<br><br>2.　Gross Negligence/ Punitive/Exemplary Damages<br><br><br>Jury Trial Demanded pursuant to Fed. R. Civ. P. 38(b)<br><br>Removed from Case No. 2024-05-35545-CV in the 38th Judicial District Court of Uvalde County, Texas |

## OASIS OUTBACK, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

Congress foresaw that there would be efforts, including in the wake of tragedies like this one, to impose liability on firearms manufacturers, dealers, and sellers based on the criminal misuse of their products by third parties.  Congress precluded such lawsuits through the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 et seq.  The PLCAA does not just foreclose liability; it protects defendants like Oasis from the cost of defending these suits altogether.  *In re Academy, Ltd.*, 625 S.W.3d 19, 35–36 (Tex. 2021) ("*Academy*") (PLCAA barred claims against dealer related to mass shooting).

The PLCAA requires dismissal in this case.  Plaintiffs' lawsuit falls squarely within the definition of a qualified civil liability action, and none of the PLCAA's exceptions apply to permit any claim otherwise barred to proceed.  *See* 15 U.S.C. §§ 7903(5)(A)(i)–(vi).

### ARGUMENT AND AUTHORITIES

The PLCAA was enacted in 2005 with bipartisan support.  When Congress enacted the PLCAA, it made a number of findings supporting the PLCAA's necessity, including:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those

who criminally or unlawfully misuse firearm products or ammunition
products that function as designed and intended.

15 U.S.C. §§ 7901(a)(3), (a)(5).

The PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims." *Academy*, 625 S.W.3d at 19, 34 (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009)). The "certain type" is any claim meeting the definition of a "qualified civil liability action" for which the PLCAA does not recognize an exception. 15 U.S.C. § 7902(a). In this way, the PLCAA serves as a filter. *See Woods v. Steadman's Hardware, Inc.*, No. CV 12-33-H-CCL, 2013 WL 709110, at *10–11 (D. Mont. Feb. 26, 2013) (explaining that a plaintiff's claims must meet an exception listed in the PLCAA, "i.e., pass the PLCAA filter"). If a lawsuit meets the definition of a "qualified civil liability action," all causes of action must be immediately dismissed except for causes of action that are recognized within one of the PLCAA's six enumerated exceptions. Only claims that fit within one of the exceptions may proceed past the initial pleadings or motion stage. 15 U.S.C. § 7903(5)(A). Ultimately, assessing whether the PLCAA applies is a two-step process: (1) whether the claim is a "qualified civil liability action" and (2) if so, whether any of the exceptions of the PLCAA apply to permit an otherwise barred claim to proceed.

Plaintiffs reverse this analysis, briefing the threshold issue of immunity last. Rather than address the PLCAA and the filter Congress erected first, Plaintiffs brief a common-law negligence theory not found among the PLCAA's enumerated exceptions and reference it as the "*Peek*" rule, relying on a San Antonio Court of Appeals decision that pre-dates both the PLCAA and the Texas Supreme Court's

3

decision in *Academy*.  Dkt. 33 (citing *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845 (Tex. App.—San Antonio 1989, writ denied)).

Settled law holds the PLCAA forecloses common-law negligence claims.  *Infra* at Section IV.  And, to the extent *Peek* recognized negligent entrustment as a subset of negligence, *Academy* confirms that theory is not viable in Texas, preventing Plaintiffs from relying on the PLCAA's negligent entrustment exception.  *Infra* at Section IV.

This Reply reorders the arguments to match the PLCAA, first addressing why Plaintiffs have pleaded a qualified civil liability action and then addressing why Plaintiffs' claims cannot meet the negligent entrustment exception—the *only exception* at issue in this case.

## I.    The PLCAA applies because this is a "qualified civil liability action."

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" is "a civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."  15 U.S.C. § 7903(5)(A).

The PLCAA defines a "seller" as including a federally licensed firearms dealer, and a person engaged in the business of selling firearms or ammunition.  15 U.S.C.

§§ 7903(6)(B)[1] & (C)[2].  The PLCAA defines a "qualified product" as "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

Plaintiffs pleaded a "qualified civil liability action."  This is a civil action for damages resulting from the Shooter's criminal use of a qualified product.  The Plaintiffs seek civil damages from Oasis for the Shooter's crimes, and the Shooter committed his crimes using "a qualified product"—which is defined to include

---

[1]    Defining a "seller" as "a dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18."  15 U.S.C. § 7903(6)(C).  18 U.S.C. § 921(a)(11), in turn, defines a "dealer" as follows: "(11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker."  For purposes of a "dealer," the term "engaged in the business" "has the meaning given to that term in Section 921(a)(21) of title 18."  15 U.S.C. § 7903(1).  18 U.S.C. §§ 921(a)(21)(C) and (D), in turn, define the term "engaged in the business" relative to a dealer as defined by 18 U.S.C. § 921(a)(11)(A) as a "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms," and, relative to a dealer as defined in section 921(a)(11)(B), "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms."

[2]    Defining "seller" to include "a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of Title 18) in interstate or foreign commerce at the wholesale or retail level."

firearms, ammunition or a component part of a firearm or ammunition.  15 U.S.C. § 7903(4) (emphasis added); *see also* Dkt. 23 at pgs. 6–8 and Dkt. 31 at pgs. 9–12.[3]

Further, Oasis is a "seller" of a qualified product.  *See* 15 U.S.C. § 7903(6)(C) (defining "seller"); 15 U.S.C. § 7903(1) (defining "engaged in business"); *see also* 18 U.S.C. §§ 921(a)(11) & (21).  Oasis holds a federal firearms license ("FFL") to deal in firearms.[4]  Plaintiffs allege Oasis sold a Smith & Wesson AR-15 to the Shooter, along with ammunition, and that Oasis transferred a Daniel Defense rifle to the Shooter. Dkt. 1-5 at ¶¶ 392, 397–98, 521–22.  They plead facts supporting Oasis's status as a "dealer" "engaged in business" as a "dealer in firearms" and Oasis's status as a "seller" under the PLCAA.  *Id.* ¶¶ 45, 392, 397–98, 521–22 (alleging Oasis is a gun store and transferred qualified products); 15 U.S.C. §§ 7903(6)(b) & (c); 18 U.S.C. §§ 921(a)(21)(C) & (D).

Accordingly, the PLCAA applies to this case and bars any claim not falling within one of its exceptions.

## II.    The PLCAA applies regardless of whether Oasis received money in connection with the transfer of the DDM4v7 or the sight.

The PLCAA erects a complete bar for qualified civil liability actions.  Its text does not support a product-by-product application of immunity and Plaintiffs point to

---

[3]    Oasis incorporates Dkt. 23 at pgs. 6–8 and Dkt. 31 at pgs. 9–12 by reference as though set forth fully herein.  Throughout this brief, Oasis cites to ECF-stamped documents by their ECF-stamped page number, rather than the page number at the bottom of the document.

[4]    Oasis's license can be verified through the ATF's list of all FFL holders (https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete) (last visited Jan. 2, 2025), of which this Court can take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

4908-8050-9708.4

no authority supporting such an interpretation. Nevertheless, Plaintiffs ask the Court to do exactly that. Plaintiffs agree the PLCAA applies—at least with respect to Oasis's sale and transfer of a Smith & Wesson AR-15 and ammunition to the Shooter—requiring Plaintiffs to meet an exception to the PLCAA. *See, e.g.*, Dkt. 1-5 at ¶¶ 529–30 (arguing claims meet exception to PLCAA); Dkt. 33 at pgs. 20–22, 31.

Plaintiffs assert, however, that their claims fall outside the PLCAA with respect to two products: the DDM4v7 and EOTech sight. They argue Oasis is not a "seller" for purposes of *those products* within the meaning of the PLCAA and that the EOTech sight is not a "qualified product" within the meaning of 15 U.S.C. § 7903(4). Dkt. 33 at pgs. 20–31. Of course, the major premise of Plaintiffs' claim is flawed because there is no product-by-product analysis involved in the PLCAA. But, even its other premises do not withstand scrutiny.

### A.    The PLCAA does not have a "sale" requirement.

Without any support from the PLCAA's definitions, structure, or purpose, Plaintiffs argue the PLCAA contains a "sale" requirement. *See* Dkt. 33 at pgs. 20–22. They contend Oasis did not receive payment from the Shooter for the DDM4v7 and EOTech sight; and, therefore, Oasis did not "sell" those products to the Shooter and the PLCAA does not apply (presumably, with respect to any claim that is causally linked only to those products). *See id.* That argument fails.

The PLCAA bars a certain type of claim against a certain kind of defendant. The Congressional findings supporting the PLCAA's enactment make that clear. 15 U.S.C. §§ 7901(a)(3), (a)(5). The PLCAA's definitions do, too. 15 U.S.C. § 7903(5)(A); §§ 7903(6)(b) & (c). Stated simply, the PLCAA bars actions against sellers of

7

"qualified products" for damages resulting from the criminal misuse of "qualified products." *See* 15 U.S.C. § 7903.

The PLCAA defines "qualified civil liability action" as follows:

> ***[A] civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product,*** . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of ***a qualified product*** by the person or a third party . . . .

15 U.S.C. § 7903(5)(A) (emphasis added).

The PLCAA defines a "seller" to include "a dealer . . . who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18" (i.e., the Gun Control Act of 1968 ("GCA")), and "a person engaged in the business of selling ammunition . . . at the wholesale or retail level." 15 U.S.C. §§ 7903(6)(b) & (c). Section 921(a)(11), in turn, defines "dealer" in part as "any person engaged in the business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11). A "qualified product," in turn, includes firearms, ammunition, *or* "component part[s] of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." *Id.* § 7903(4).

Oasis is a federal firearms licensee and dealer, which is enough to support the application of the PLCAA to the claims in this case. *See* Dkt. 1-5 at ¶¶ 45, 392, 397–98, 521–22; *see supra* at note 4. But even if that were not enough, it is undisputed that Oasis sold one rifle (the Smith & Wesson AR-15) and some of the ammunition at

8

issue in this case.[5]   *See* Dkt. 1-5 at ¶¶ 397–98, 522–23; Dkt. 5 at pgs. 4–5. Accordingly, Plaintiffs plead a "qualified civil liability action," *supra* at Section I, making the issue of whether Oasis *also* sold the DDM4v7 or the EOTech sight irrelevant.   *Hendrick v. Academy I, LP*, No. WD 86911, __ S.W.3d __, 2024 WL 4594958, at *1 (Mo. Ct. App. Oct. 29, 2024); *see also* Dkt. 32 at pgs. 4–10.[6]

The PLCAA does not contain a "sale" requirement.   *Hendrick v. Academy I, LP* is instructive.   2024 WL 4594958 at *1.   There, an individual at Academy's gun counter told an employee he was interested in seeing a handgun.   *Id.* at *1.   The Academy employee retrieved the handgun and "handed control of it to the individual to look over, handle and inspect."   *Id.*   The employee did not run a background check on the individual before providing the gun to him.   *Id.*   After handling the gun, the individual said he wished to proceed with the sale and placed a box of ammunition on the gun counter.   *Id.*   The employee left the gun on the counter within the would-be purchaser's reach along with the ammunition while the employee proceeded to run a background check, which came back "denied."   *Id.*   The individual then opened his coat, jumped over the counter, pulled out a knife, grabbed the gun and ammunition, and fled the store.   *Id.* at *2.   He ran to his vehicle, drove to a car dealership, and shot Jody Hendrick, causing severe injuries.   *Id.*   Hendrick sued Academy, claiming that Academy was negligent in, among other things, making the gun accessible to his

---

[5]     Plaintiffs did not plead the Shooter used only the DDM4v7 in committing his crimes. *Contra* Dkt. 33 at pg. 22.

[6]     Oasis incorporates Dkt. 32 at pgs. 4–10 by reference as though set forth fully herein.

4908-8050-9708.4

assailant and failing to secure the area while its employee conducted a background check.  *Id.*  Academy moved to dismiss, arguing the PLCAA conferred immunity against Hendrick's claims.  *Id.*  In response, Hendrick argued the PLCAA did not apply because Hendrick did not allege a "sale" of a firearm—rather, the shooter stole the firearm from Academy.  *Id.* at *3.  The trial court dismissed Hendrick's claims and the court of appeals affirmed.

The court of appeals flatly rejected Hendrick's argument that the PLCAA requires an action "be against the seller for the sale of a qualified product."  *Id.* at *3.  The court explained:

> The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. Nothing in the PLCAA's definition of a qualified civil liability action refers to immunity applying only when a qualified product is sold. Hendrick provides no authority or support for his assertion, and his emphasized phrase "sale of a qualified product" is not found in the definition of "qualified civil liability action."  "In construing a statute, courts cannot add statutory language where it does not exist; rather, courts must interpret the statutory language as written by the legislature."  Under the plain language of the PLCAA, immunity is provided to manufacturers and sellers of qualified products regardless of whether a sale was made.

*Id.*; accord *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380 (Alaska 2013).

Because "immunity is provided to manufacturers and sellers of qualified products regardless of whether a sale was made," it is immaterial whether Oasis received remuneration for the sale of the DDM4v7 or EOTech sight.  *Hendrick*, 2024 WL 4594958, at *3.

## B.    The PLCAA's definition of "seller" defeats a sale requirement.

The PLCAA's plain language and settled law also defeat Plaintiffs' argument.

10

The PLCAA's definition of a "seller" incorporates the GCA's definitions of "dealer" and "engaged in the business."  15 U.S.C. § 7903(1); 15 U.S.C. §§ 7903(6)(b) & (c).  According to the GCA:

> (11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker.  The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

18 U.S.C. § 921(a)(11).

The GCA defines "engaged in business," "as applied to a dealer in firearms," to mean "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms . . . ."  18 U.S.C. § 921(a)(21)(C). Additionally, as applied to a dealer, "engaged in the business" means, in relevant part, "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit . . . ." 18 U.S.C. § 921(a)(21)(D).

Courts have long understood that these definitions do not contain a profit-making requirement.  *United States v. Shirling*, 572 F.2d 532, 534 (5th Cir. 1978). According to the Fifth Circuit, the term is more flexible.  "Anyone is engaged in the business of dealing in firearms if they have guns on hand or are ready and able to procure them, in either case for the purpose of selling some or all of them to such persons as they might from time to time conclude to accept as customers."  *Shirling*,

572 F.2d at 534 (adopting and quoting *United States v. Jackson*, 352 F. Supp. 672, 674 (S.D. Ohio 1972), aff'd without opinion, 480 F.2d 927 (6th Cir. 1973)).

The definition of a "dealer," as used in the PLCAA and GCA, is concerned with the type of business conducted by the defendant—not whether the defendant received money for the sale of a specific product (as opposed to transferring it under federal laws permitting such a transfer). Although Plaintiffs claim otherwise, "[t]here appears to be little doubt that 'dealer' [as used in the GCA] means anyone who is engaged in any business of selling firearms, and that 'business' is that which occupies time, attention and labor for the purpose of livelihood or profit." *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971). A person is a "dealer" under the GCA (and, therefore, entitled to immunity under the PLCAA for qualified actions) if they have the relevant products on hand. *See United States v. Carter*, 801 F.2d 78, 81 (2d Cir. 1986) (persons were "dealers" where they had guns on hand or were ready and able to procure them to sell periodically). Oasis satisfies the test.

### C. Reading a "sale" requirement into PLCAA would lead to absurd results.

Finally, accepting Plaintiffs' argument would lead to absurd results. Start with Plaintiffs' suggestion that Oasis could be liable for *transferring* one AR-15 (the DDM4v7) but did not act negligently in *selling* another (the Smith & Wesson). *See* Dkt. 33 at pgs. 20–22. But there are other, obvious problems with imposing a sale requirement on the PLCAA.

The PLCAA undisputedly covers persons licensed as dealers. 15 U.S.C. §§ 7903(6)(b) & (c). A federal firearms license is required for anyone "engage[d] in

12

the business of importing, manufacturing, or dealing in firearms." That business involves more than sales. Dealers routinely "transfer" and "dispose of" firearms. A licensee or dealer must keep accurate and detailed "records of importation, production, shipment, receipt, sale, or *other disposition* of firearms. . . ." 18 U.S.C. § 923(g)(1)(A) (emphasis added).

For example, to legally buy and have a gun shipped from an Internet seller in another state, the transfer must be made through a federal firearms licensee in the buyer's state. *See* 18 U.S.C. §§ 922(a)(1)–(3), (b)(3). The seller will deliver the firearm to a federal firearms licensee for transfer to the buyer. *See* 18 U.S.C. § 922. The buyer (who usually will pay the seller directly) still must go to his home-state federal firearms licensee and fill out a Form 4473 (which requires the buyer to represent that he is not a criminal, domestic abuser, etc.). *See id.* Then, the home state federal firearms licensee (here, Oasis) must call the National Instant Check System ("NICS") and read off the buyer's information from Form 4473, including a partial social security number. 18 U.S.C. § 922(t). NICS determines whether the buyer is disqualified from owning the gun. *See id.* If the buyer is approved by NICS, the federal firearms licensee is given an approval number to write on the Form 4473. With this approval, the buyer may take delivery of the firearm. 18 U.S.C. §§ 921–931. In return for this transfer, the home-state federal firearms licensee (here, Oasis) charges a small fee.

Federal law regulates this activity. Dealers are required to run background checks, 18 U.S.C. § 922(t), and complete transaction record forms, 18 U.S.C. § 922(m);

13

27 C.F.R. § 478.124. Federal law precludes transfers if the transferor knows or has cause to believe the transferee is disqualified from possessing a firearm. 18 U.S.C. § 922(d). Each of these laws apply to "transfers" or "disposals" of firearms in addition to sales. 18 U.S.C. § 922(t) (requiring that licensed dealers conduct background checks before transferring firearms); 27 C.F.R. § 478.124 (requiring a firearm transaction record, Form 4473, before a licensed dealer disposes of a firearm); 18 U.S.C. § 922(d) (barring sales and disposals of firearms when there is reasonable cause to believe the transferee cannot legally receive the firearm).

A well-pled violation of a state or federal statute is one of the PLCAA's exceptions. 15 U.S.C. § 7903(5)(a)(iii). Adding a sale requirement to the PLCAA would eliminate the predicate exception where the claim is based on a dealer's violations of these laws. The Court should resist such an absurd result.

Nothing in the PLCAA's definition of a prohibited qualified civil liability action refers to immunity applying only when a qualified product is sold. Oasis is engaged in the lawful commerce of the distribution or sale of firearms. Oasis has an FFL and is a licensed dealer. The plain language of the PLCAA protects parties that are generally engaged in such commerce to be protected from litigation, not specifically in the course of an actual distribution or sale. Offering firearms and ammunition for sale constitutes "commerce," and there can be no reasonable dispute that Oasis satisfies the PLCAA's relevant definitions. Oasis was acting as a licensed dealer when it executed the transfers at issue in this case. Because Plaintiffs pleaded a "qualified civil liability action" and Oasis meets the PLCAA's definition of a "seller,"

the PLCAA applies to Plaintiffs' claims irrespective of whether Oasis sold the DDM4v7 or the EOTech sight.[7]

### III. Texas does not recognize a claim for negligent entrustment, making that exception inapplicable.

Plaintiffs do not point to any exception to the PLCAA that would permit their claims for common law negligence and negligent entrustment, Dkt. 1-5 at ¶¶ 520–30, or gross negligence, Dkt. 1-5 at ¶¶ 531–34, to proceed.  Accordingly, those claims must be immediately dismissed.

Plaintiffs attempt to fit their claims under the exception in the PLCAA that allows certain claims for negligent entrustment to proceed.  *See* Dkt. 1-5 at ¶ 526–29; Dkt. 33 at pgs. 11, 16–19; 15 U.S.C. § 7903(5)(A)(ii).  Their argument is a non-starter. *Academy*, 625 S.W.3d at 30 (Texas does not recognize claim for negligent entrustment; therefore, PLCAA bars claim).

The PLCAA defines "negligent entrustment" as:

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B).  However, the PLCAA also provides "no provision of this [statute] shall be construed to create a public or private cause of action."  *Id.*

---

[7] Plaintiffs argue the PLCAA does not apply to their claims regarding the EOTech sight because it is not a "qualified product" under the statute.  *See* Dkt. 33 at pgs. 23–31.  Yet Plaintiffs never address that the PLCAA applies to all of Plaintiffs' claims regardless of whether the EOTech sight is a "qualified product."  *See* Dkt. 5 at pgs. 9–10.  Moreover, the EOTech sight meets the definition of "qualified product."  Oasis fully briefed this issue in its Motion.  *See* Dkt. 5 at pgs. 10–15.  Nothing in Plaintiffs' Response necessitates further argument on the issue, so Oasis incorporates and refers the Court to pgs. 10–15 of its Motion.

§ 7903(5)(C); *see also* Dkt. 31 at pgs. 9–12.[8] "Accordingly, courts apply state law on negligent entrustment claims in evaluating whether the exception applies." *Academy*, 625 S.W.3d at 30 (citing *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019) as noting "[b]ecause the PLCAA does not 'create a public or private cause of action or remedy,' courts look to state law" in determining whether the negligent entrustment exception applies); citing *Phillips v. LuckyGunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) ("[a]lthough the PLCAA identifies negligent entrustment as an exception to immunity, it does not create the cause of action. Accordingly, the claim arises under state law.")).

There is no federal common law, and the PLCAA creates no cause of action; therefore, such a cause of action must arise under state law.  *See* 15 U.S.C. § 7903(5)(C) ("no provision of this chapter shall be construed to create a public or private cause of action or remedy"); *LuckyGunner*, 84 F. Supp. 3d at 1225 (stating that any claim that falls within the exception must arise under state law).

Texas does not recognize a claim for negligent entrustment.  The Texas Supreme Court's opinion in *Academy* (another case stemming from a mass shooting) is clear:

> [W]e agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel.  In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims.  Absent an applicable exception, the plaintiffs' suits are qualified civil liability actions that "may not be brought." 15 U.S.C. § 7902(a).

---

[8]    Oasis incorporates Dkt. 31 at pgs. 9–12 by reference as though set forth fully herein.

*Academy*, 625 S.W.3d at 31–32 (cleaned up).  As a result, the negligent entrustment exception cannot apply to Plaintiffs' claims.  *See also* Dkt. 32 at pgs. 4–19.  The claims are, instead, barred under the PLCAA.

## IV.    The PLCAA does not contain a negligence exception, making Texas's common law on negligence claims irrelevant.

Relying on *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845 (Tex. App.—San Antonio 1989, writ denied), Plaintiffs ask the Court to ignore *Academy* and incorrectly argue that their claims may proceed because Texas courts have recognized a duty of care toward third parties who might be injured by the sale of firearms and ammunition.

The Court is not free to ignore the Texas Supreme Court's holding in *Academy* in favor of finding a common-law duty on the part of a gun seller based on a 1989 case from the San Antonio Court of Appeals.  *See, e.g., Matter of Ritz*, 832 F.3d 560, 567 n.5 (5th Cir. 2016) ("In resolving issues of state law, 'we are bound to apply the law as interpreted by the state's highest court.'") (quoting *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000)); *Am. Intern. Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Barfield*, 212 F.3d at 271–72); *In re Endeavor Highrise, L.P.*, 432 B.R. 583, 661 (S.D. Tex. 2010) ("When applying state law, a federal court is bound by decisions of the given state's highest court.") (citing *Cochran v. B.J. Servs. Co.*, 302 F.3d 499, 501–02 (5th Cir. 2002)).

In any event, *Peek* offers no help.  First, the *Peek* court held that a seller had no reason to anticipate a buyer's intent to commit a crime despite allegations that the

17

purchaser was nervous, uptight, and in a hurry. *Peek*, 768 S.W.2d at 847. Similar allegations are at issue in this case, meaning *Peek* undermines Plaintiffs' theory.

Second, and more importantly, *Peek* was decided in 1989—before Congress enacted the PLCAA. Indeed, *Peek* and the line of cases Plaintiffs cite relying on it are the types of cases that led Congress to provide statutory immunity for harm "caused by the misuse of firearms by third parties" and prohibit ordinary negligence claims. 15 U.S.C. § 7901(a)(3). Through the PLCAA, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto*, 565 F.3d at 1135. The Ninth Circuit explained as much in *Ileto*. And, it further stated that the "judicial evolution" endemic to common law—and the possibility that it would be used to "expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States"—"was precisely the target of the PLCAA." *Id.* (quoting 15 U.S.C. § 7901(a)(7)) (quotation marks omitted).

As a result of the enactment of the PLCAA, Plaintiffs cannot maintain any common law negligence claims—no matter how styled and no matter whether *Peek* recognized any duty on the part of a firearms dealer (which Oasis disputes). The PLCAA preempts all general negligence actions and common-law claims resulting from the criminal or unlawful use of a qualified product. *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321–22 (Mo. 2016) ("PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm, including those involving 'concurrent causation'"); *Estate of Kim ex rel.*

18

*Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013); *see also Ileto*, 565 F.3d at 1135–36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability").

The Missouri Supreme Court considered whether the PLCAA prohibits general negligence claims and rejected similar assertions in *Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) (en banc). The Alaska Supreme Court considered similar arguments in *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380 (Alaska 2013). Both found the plaintiffs' general negligence claims were qualified civil liability actions subject to immediate dismissal under the PLCAA. *Delana*, 486 S.W.3d at 321; *Coxe*, 295 P.3d at 386, 388.

The plain language of the PLCAA reveals an intent by Congress to bar any qualified civil liability action not falling within a statutory exception. *Coxe*, 295 P.3d at 388. While Plaintiffs' negligence claim seeks damages for Oasis's alleged negligence, it is also premised on damages resulting from the criminal or unlawful misuse of qualified products by the Shooter. Such claim is a general negligence claim barred by the PLCAA. Plaintiffs do not argue against this settled line of authorities. Accordingly, the PLCAA provides Oasis immunity from Plaintiffs' common-law and general tort theories, and Plaintiffs' claims must be dismissed to the extent they are considered generic, negligence claims.

Finally, a brief word on the "*Peek*" authority cited by Plaintiffs. Five cases, including *Peek*, were decided before Congress enacted the PLCAA and before the

Texas Supreme Court issued its opinion in *Academy*, which is binding Texas precedent. *Infra* at pg. 21. None of these five cases support the existence of a post-PLCAA common law duty. *See Hulsebosch v. Ramsey*, 435 S.W.2d 161 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ) (Affirming summary judgment in favor of dealer who sold gun and ammunition to sixteen-year-old, explaining "in an action by the injured third party against the sellers of a rifle, when a parent had permitted the sale of the rifle to the sixteen-year old minor as a Christmas gift to his father, no liability for damages can arise on the part of the sellers in the absence of a statute creating such liability. Texas has no such statute."); *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 130 (Tex. App.—Corpus Christi 1997, no writ) (Reversing judgment of trial court because there was no evidence seller breached any duty by selling ammunition to minor); *Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547 (Tex. App.—Fort Worth 1990, writ denied) (Declining to recognize a duty of care in the sale of ammunition and discussing obligations related to sale of firearms under Gun Control Act, not common law, in dicta); *Love v. Zales Corp.*, 689 S.W.2d 282 (Tex. App.—Eastland 1985, writ ref'd n.r.e.) (Affirming summary judgment in favor of gun dealer based on statute of limitations. The court's opinion does not recognize the existence of any duty or standard of care in connection with the sale of a firearm).

Only three of the cases post-date the PLCAA. And, of those three cases, only one post-dates *Academy*. Again, none suggest Plaintiffs' common-law negligence

claims can proceed past the immunity conferred to Oasis under the PLCAA. The

three cases that post-date the PLCAA are summarized below:

| | |
|---|---|
| *Rodriguez v. Acad., Ltd.*, 694 S.W.3d 780, 787 (Tex. App.—Houston [14th Dist.] 2024), review denied (Sept. 27, 2024) | Affirmed summary judgment in favor of Academy in connection with sale of handgun to a person who used the firearm to commit suicide. Academy moved for summary judgment, raising the PLCAA and statutory affirmative defense, Tex. Civ. Prac. & Rem. Code § 93.001(a)(2). The affirmative defense required Academy to show it did not know or have reason to know the purchaser was disqualified under 18 U.S.C. § 922(d)(3), (5). The Court of Appeals held Academy established its affirmative defense as a matter of law. The Court did not consider the PLCAA as an independent ground on which to affirm the trial court's order granting summary judgment to Academy. 694 S.W.3d at 788 ("Accordingly, section 93.001's affirmative defense bars Rodriguez's claims. We overrule Rodriguez's fourth issue, and we do not reach his first two issues challenging summary judgment on the basis of PLCAA."). |
| *Tisdale v. Pagourtzis*, No. 3:20-CV-140, 2020 WL 7170491 (S.D. Tex. Dec. 7, 2020) | Order remanding a case from federal court to state court. The remand order addressed whether federal law was necessary in resolving Plaintiffs' claims for purposes of federal question jurisdiction. The district court did not consider the application of the PLCAA to Plaintiffs' claims, whether their pleadings established any exception to PLCAA immunity, or whether an ordinary negligence claim was otherwise well-pled. |
| *Reyna v. Acad., Ltd.*, No. 01-15-00988-CV, 2017 WL 3483217 (Tex. App.—Houston [1st Dist.] Aug. 15, 2017, no pet.) | Affirmed summary judgment in favor of Academy in connection with sale of gun used in crime. However, Academy did not move for summary judgment or raise the PLCAA as a defense to the case. As a result, Plaintiff does not suggest negligence is a viable exception to the PLCAA. |

Of course, every intermediate court of appeals in Texas is bound by the

decisions of the Texas Supreme Court. *See Owen v. Jim Allee Imports, Inc.*, 380

S.W.3d 276, 284 (Tex. App.—Dallas 2012, no pet.) ("The hierarchy of the courts of

Texas is established constitutionally.") (citing Texas Constitution, which states that

Supreme Court's appellate jurisdiction shall be final and extend to all cases except in criminal matters).  That reason alone is sufficient for *Academy* to override the *Peek* line of cases, which are all cases from intermediate appellate courts.  But also, the Texas Supreme Court need not expressly overrule a case for that case to no longer be applicable law.  *See, e.g.*, *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 86 n.27 (Tex. 2004) (recognizing that one Texas Supreme Court case "appears to overrule" another).  This District Court has recognized this principle in the federal context, noting that a supreme court decision can overrule prior precedent either expressly or implicitly.  *U.S. v. Rice*, 719 F. Supp. 3d 618, 630 (W.D. Tex. 2024).  Implicit overrulings occur when an intervening supreme court decision fundamentally changes the focus of the relevant analysis followed in the intermediate appellate court's previous decisions, or when an intervening supreme court decision "disavows the mode of analysis on which [the] precedent *relied*."  *See Rice*, 719 F. Supp. 3d at 630 (alteration and emphasis in original) (quoting *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018); citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003) (recent supreme court decision overruled the analysis used in a prior Fifth Circuit decision)).  Here, *Academy* clearly overrules the *Peek* line of cases.  This Court cannot ignore *Academy*.  Thus, this Court should recognize that Texas does not provide a negligence exception to the PLCAA[9].

---

[9]    The Court need not reach the issue of whether Plaintiffs stated viable claims under common law because the PLCAA applies and bars all claims raised in this case. Nevertheless, with respect to common law theories, Oasis relies on its prior briefing and incorporates by reference Dkt. 23 (EOTech's Motion to Dismiss), Dkt. 31 (Daniel Defense's Motion to Dismiss), and Dkt. 32 (Daniel Defense's Response to Motion to Remand) and their arguments concerning why Plaintiffs have failed to state a claim under Texas law for

## V.    Plaintiffs should not be entitled to re-plead and cannot circumvent the PLCAA.

Plaintiffs should not be granted leave to amend.  While Plaintiffs had an opportunity to re-plead in response to Oasis's Motion to Dismiss, they failed to do so. *See* L.R.CV-15 ("Notwithstanding the time limits provided in Rule CV-7, a party may respond to a first motion under Federal Rule of Civil Procedure 12(b) by filing an amended pleading as a matter of course not later than 21 days after the filing of the motion.").  Just as problematic, the amendment Plaintiffs allude to would be futile. *See* Dkt. 33 at pg. 44.  Courts may "deny leave to amend . . . if the defects are incurable or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 Fed. Appx. 194, 200 (5th Cir. 2015).  The Court should deny Plaintiffs an opportunity to amend because they have failed to set forth any allegation that avoids the grounds for dismissal.  The defects in Plaintiffs' complaint are incurable, and Plaintiffs have already alleged their best case.  Plaintiffs' best case is barred by the PLCAA, and thus, amendment would be futile.  This Court should dismiss Plaintiffs' claims against Oasis with prejudice.

## CONCLUSION

For these reasons, Oasis asks the Court to grant Oasis's Motion to Dismiss Plaintiffs' Original Petition (Dkt. 5) and order the immediate dismissal with prejudice of Plaintiffs' claims against Oasis.

---

(1) claims for common law negligence/negligent entrustment, Dkt. 1-5 at ¶¶ 520–30, or (2) gross negligence, Dkt. 1-5 at ¶¶ 531–34.

23

Respectfully submitted,

**GRAY REED**

*/s/ A.M. "Andy" Landry, III*
A.M. "Andy" Landry III
State Bar No. 11868750
J.J. Hardig, Jr.
State Bar No. 24010090
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000 (Telephone)
(713) 986-7100 (Fax)
Email: alandry@grayreed.com
Email: jhardig@grayreed.com

-and-

**JEFFERSON CANO**

*/s/ Lamont A. Jefferson*
Lamont A. Jefferson
State Bar No. 10607800
Emma Cano
State Bar No. 24036321
122 E. Pecan St., Suite 1650
San Antonio, Texas 78205
(210) 988-1808 (Telephone)
(210) 988-1808 (Fax)
Email: ljefferson@jeffersoncano.com
Email: ecano@jeffersoncano.com

**ATTORNEYS FOR DEFENDANT
OASIS OUTBACK, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 17th day of January, 2025.

/s/ A.M. "Andy" Landry, III
A.M. "Andy" Landry, III

4908-8050-9708.4