<div align="center">

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

</div>

---

| | |
|---|---|
| ABEL CUELLAR LOPEZ, et al., | Case No.: 2:24-cv-00079 |
|     Plaintiffs, | |
| vs. | |
| DANIEL DEFENSE, LLC, et al., | |
|     Defendants. | |

---

<div align="center">

**DEFENDANTS EOTECH, LLC'S AND PROJECT ECHO HOLDINGS, LLC'S**
**REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

</div>

Defendants EOTECH and Project Echo, by and through their attorneys, respectfully submit this reply in further support of their motion to dismiss Plaintiffs' claims against them.

<div align="center">

**ARGUMENT**

</div>

**I.    PLAINTIFFS' CLAIMS ARE BARRED BY THE PLCAA.**

Plaintiffs do not argue that any of the exceptions to the PLCAA apply, and have therefore conceded that it bars their claims if EOTECH is a manufacturer and the Sight is a component part.[1]

**A.    EOTECH Is a Manufacturer of the Sight under the PLCAA.**

Plaintiffs note that the PLCAA applies to "gun manufacturers and sellers." Opp'n at 6–7. To the extent that Plaintiffs are arguing that the PLCAA does not apply here because EOTECH and Project Echo are not manufacturers or sellers, they are incorrect.  The PLCAA defines a "manufacturer," with respect to a qualified product, as "a person who is engaged in the business of manufacturing the product in interstate or foreign commerce and who is licensed to engage in

---

[1] Defendants object to Plaintiffs' attempt to disregard the Opposition's page limit by incorporating points made in briefing on other motions that did not involve EOTECH. Opp'n at 5.

business as such a manufacturer under chapter 44 of title 18, United States Code." 15 U.S.C. § 7903(2). Plaintiffs allege that EOTECH "is engaged in the business of manufacturing the product in interstate or foreign commerce." Pet. ¶ 44 ("EOTech manufactured, marketed, sold, and shipped" the Sight). The provision referenced by Section 7903(2), defines a manufacturer as "any person engaged in the business of manufacturing firearms . . . for purposes of sale or distribution; and the term 'licensed manufacturer' means any such person licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(10). EOTECH holds a type 07 (manufacturer of firearms) FFL, which makes it a manufacturer for purposes of the PLCAA.[2]

### B.    The Sight is a Qualified Product under the PLCAA.

Plaintiffs argue that the PLCAA does not apply to their claims because the Sight is not a component part of a firearm and therefore not a qualified product. Opp'n at 6. Plaintiffs base that flawed argument on their contention that because a sight is not "integral" to a firearm, it is not a component part and instead is an "accessory." Opp'n at 10. The term "accessory" is not used in the PLCAA, which does not distinguish the parts of a firearm as "component parts" or "accessories." Plaintiffs' use of the term "accessories" is a transparent attempt to evade the immunity the PLCAA provides to manufacturers and sellers of component parts for firearms.

Plaintiffs' argument that if a firearm is capable of "fir[ing] . . . or discharg[ing]" without a part, such part is not a "component part" and, instead, is an "accessory," Opp'n 8, defies logic. Just because a product is capable of operating without a certain part installed in or on it does not mean that such part is not a component part of the product.[3] The only reason Plaintiffs argue that

---

[2] As Plaintiffs' sole basis for seeking to hold Project Echo liable is based on its position as EOTECH's parent, it is therefore entitled to the same immunity as EOTECH.

[3] While there are perhaps countless examples of this proposition, the following are just a few: A commercial passenger jet can operate without seats. A car can operate without a speedometer. A dryer can function without a lint trap. A freezer can operate without an ice maker. But absent a

the Sight is not a component part of the Subject Rifle is to attempt to avoid the immunity provided

by the PLCAA.  Going outside of the pleadings, Plaintiffs claim that the Subject Rifle was sold to

the Shooter without any sights. Opp'n at 11. The need for some type of sights to effectively aim

the Subject Rifle, coupled with the importance that Plaintiffs place on the Sight, confirms that it is

a component part of a firearm for purposes of the PLCAA.[4]

Plaintiffs attempt to distinguish the cases cited in the Motion for the proposition that the

Sight is a component part for purposes of the PLCAA,[5] but do not cite a single case holding to the

contrary and instead rely on inapplicable "not binding" cases concerning the Second Amendment.

Opp'n at 8. Plaintiffs claim that Defendants' straight-forward explanation of what is considered to

be a component part of a firearm for purposes of the PLCAA would include  "a colorful vinyl wrap

added to a firearm," and that such could not be what Congress intended.  Opp'n at 9.  Plaintiffs are

attempting to make an absurd argument.[6] Nevertheless, if a plaintiff were to attempt to avoid the

immunity provided to qualified manufacturers and sellers by the PLCAA by seeking to hold them

liable on the basis that they made or sold such a part installed on a firearm that was criminally

misused, it should be considered a component part for purposes of the PLCAA's immunity. That

---

tactical reason to do so, no one would credibly consider arguing that these are not component parts of the products in which they are installed.

[4] Even if the Sight replaced a different sight on the Subject Rifle, it is still a component part. As an analogy, if a car's headlight bulbs are replaced, the new bulbs are just as much component parts of the car as the ones that were replaced.

[5] Plaintiffs' reliance on a case cited within *Prescott*, Opp'n at 7–8, is irrelevant because the referenced case was decided before the enactment of the PLCAA, did not even concern the interpretation of the Gun Control Act, and rather addressed the narrow issue of whether the value of certain sights was subject to the federal excise tax imposed by 26 U.S.C. § 4181. *See* P*rescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1190 (D. Nev. 2018) (citing *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566 (Fed. Cir. 1987)).

[6] Plaintiffs continue to rely on inapplicable case law for statutory interpretation.  *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 42 (2024) ("Fair Credit Reporting Act"); *Williams v. Taylor*, 529 U.S. 362, 367 (2000) ("constitutional right to the effective assistance of counsel"); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997) ("Civil Rights Act").

is exactly what Plaintiffs are attempting to do here.  Unlike a "colorful vinyl wrap," Opp'n at 9, sights are an essential part of a rifle needed for purposes of aiming, and the only reason why EOTECH is being sued is because the Sight was installed on, and part of, the Subject Rifle at the time it was criminally misused by the Shooter to cause the damages for which they seek relief.

Plaintiffs also claim that "a 'qualified product' must be "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of title 18)." Opp'n at 9. That assertion misses the point. How the PLCAA defines what is independently considered to be a "firearm" itself is irrelevant because the PLCAA specifically states that a "component part of a firearm" is also a "qualified product" for purposes of its immunity, even if those component parts are not themselves defined as "firearms." 15 U.S.C. § 7903(4). The fact that Congress included the term "component part" within the definition of "qualified product" makes clear that it intended to ensure that the PLCAA broadly covers the very types of items at issue in this case, otherwise it would have limited the definition of a qualified product to items that are themselves defined as "firearms." That the PLCAA only incorporates the definitions of a firearm in 18 U.S.C. §§ 921(a)(3)(A) & (B) ("any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and the "frame or receiver of any such weapon"), and did not also include the separate definitions of a muffler/silencer as a firearm in Section 921(a)(3)(C) is irrelevant. There is no argument that the Sight was not part of/installed on the Subject Rifle, which is a "weapon" defined as a "firearm" by 18 U.S.C. § 921(a)(3)(A), and was not part of/installed on a muffler/silencer. Mufflers/silencers are strictly regulated pursuant to the National Firearms Act (in addition to the Gun Control Act), and there were no lawsuits related to those products that led Congress to see a need for the PLCAA to apply to them based on the findings and purposes section. 15 U.S.C. § 7901.

Congress referenced 18 U.S.C. §§ 921(a)(3)(A) & (B) to not include a muffler/silencer and destructive device in the definition of a "firearm" considered to be a qualified product. It could have also limited the specific parts of a "weapon" that it intended to be considered "qualified products" for purposes of the immunity provided by the PLCAA. It did not do so, evidencing its intention to avoid attempts to negate the broad immunity provided by the PLCAA by focusing on certain parts of a firearm. The Sight is a qualified product for purposes of the PLCAA, and because Plaintiffs do not argue that any exception to the PLCAA applies, their claims are barred.[7]

## II.    PLAINTIFFS CANNOT ESTABLISH BREACH OF DUTY.

Plaintiffs' claims should also be dismissed because they have failed to allege that EOTECH breached any duty to them. Plaintiffs argue that EOTECH marketed the Sight "as an elite accessory for a deadly weapon and glamorized violence" with knowledge that the Sight had been and would be used to commit crimes, including mass shootings. Opp'n at 2–5. There is no support for such claims based on the facts alleged in the Petition. *See Bell Atlantic Corp v. Twombley*, 550 U.S. 544, 555 (2007) (complaint must contain "more than labels and conclusions"); *Savage v. Hill Cnty. Pawn*, No. 6:18-CV-00043-ADA, 2018 WL 7377622, at *2 (W.D. Tex. Oct. 10, 2018) ("averments . . . are either conclusory or unsupported speculation"). Although EOTECH sights are used by the military, including special operations units, Plaintiffs do not contest that EOTECH lawfully sold the Sight, which is a legal product, and can be used by civilian consumers for numerous legal purposes, including self-defense, hunting, and target shooting. Nothing in any advertisement by EOTECH referenced in the Petition so much as hints that the Sight be used to commit murder or other crimes.

---

[7] While Plaintiffs disclaim the importance of the PLCAA's findings and purposes, Opp'n at 12, the PLCAA's substantive provisions are what require dismissal.

Other than Plaintiffs' patently false narrative of EOTECH's advertising, nothing in their Opposition establishes that EOTECH breached any duty owed to them. The cases on which Plaintiffs rely underscore why EOTECH did not breach any duty. In *Peek v. Oshman's Sporting Goods, Inc.*, the court explained that a firearm seller only has a duty not to complete a firearm sale when "such a sale could for[e]seeably result in irresponsible use of the firearm by the purchaser with accompanying for[e]seeable injury to a third party" because the purchaser is "a *manifestly* irrational or mentally imbalanced person." 768 S.W.2d 841, 847 (Tex. App. 1989) (emphasis in original). Similarly, in *Tisdale v. Pagourtzis*, the plaintiffs alleged that the defendant "negligently sold ammunition to the shooter without confirming or investigating whether he was old enough to purchase it." No. 3:20-CV-140, 2020 WL 7170491, at *1 (S.D. Tex. Dec. 7, 2020).  Based on the allegations in the Petition, EOTECH sold the Sight, which is itself harmless, to the Shooter through the Internet and had no reason to believe that he was mentally defective, barred by any law from purchasing it, or otherwise likely to criminally misuse it. Based on the cases upon which Plaintiffs rely, EOTECH owed no duty to them not to sell the Sight to the Shooter.[8]

Texas law is clear that "there is no duty to protect others from the criminal acts of third parties," *Park v. Exxon Mobil Corp.*, 429 S.W.3d 142, 145 (Tex. App. 2014), including in the context of seller of a firearms product that is later used in a criminal act, where the seller did not know, and should not have known, that the sale was likely to result in the criminal act, *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 131 (Tex. App. 1997). Plaintiffs have no law to support their argument that EOTECH's legal sale of a lawful product to someone who did not give it any reason to believe he might criminally misuse it could possibly constitute a breach of any duty.

---

[8] Another case on which Plaintiffs rely is wholly irrelevant. *See United Rentals N. Am., Inc. v. Evans*, 668 S.W.3d 627, 632 (Tex. 2023) (rental company transporting equipment).

Thus, this Court should dismiss Plaintiffs' claims for failure to allege breach of duty.

## III.    PLAINTIFFS CANNOT ESTABLISH CAUSATION.

This Court should additionally dismiss Plaintiffs' claims against EOTECH based on lack of causation because they have failed to allege facts to support foreseeability or causation in fact, and because the criminal shooting was an intervening, superseding cause that broke any causal link possibility attributable to EOTECH.[9] As explained in the Motion, EOTECH's lawful sale of the Sight is not—and cannot—be sufficient to find that EOTECH knew, or should have known, that the Shooter would commit the criminal shooting. Plaintiffs cite to no case undermining the on-point precedent cited in the Motion. Plaintiffs' arguments are so expansive they would allow automobile manufacturers to be liable for someone intentionally crashing into pedestrians because their cars are shown in criminal acts in videogames, such as Grand Theft Auto.

Plaintiffs' attempt to distance their claims from the *Lowy* decision highlights its significance. As explained in the Motion, in addition to finding the plaintiffs' claims barred by the PLCAA, the court rejected the notion that firearm-related business activities (such as marketing) caused a criminal shooting. *See Lowy v. Daniel Def., LLC*, No. 1:23-CV-1338, 2024 WL 3521508, at \*5 (E.D. Va. July 24, 2024). As in *Lowy*, here, the Sight was merely tangential to the Shooter's criminal actions in committing the shooting and EOTECH's actions come nowhere close to being a substantial factor in causing the shooting. Plaintiffs cannot rely on their misrepresentations

---

[9] Plaintiffs argue that if the Sight "was 'merely tangential' to the mass shooting" or "Subject Firearm" such that there is not causation, it could not be a component part under the PLCAA. Opp'n at 14–15. Plaintiffs' argument conflates two different issues.   Something can be a component part of another thing, yet still be tangential to the harm caused. Here, the Shooter's criminal actions caused the shooting, not the Sight, which was merely tangential. By analogy, a seatbelt is no less a component part of a car simply because it is tangential to a drunk driver hitting a pedestrian. Further, the causation argument applies even if Plaintiffs' claims are not barred by the PLCAA and, thus, still warrants dismissal.

regarding EOTECH's marketing to claim that EOTECH was promoting criminal use.

Plaintiffs' claims also fail for lack of causation because the Shooter's actions in committing the shooting constitute "a new and independent, or superseding, cause." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016).[10] And as discussed in the Motion, under Texas law, "[u]sually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 714 (5th Cir. 2002). Texas courts have specifically addressed this issue and made clear that a criminal shooting breaks the causal chain unless the supplier of the firearm or firearm product knew, or had reason to believe, that the recipient would commit a criminal shooting. Plaintiffs fail to distinguish this critical proposition, because they have alleged no facts, only mere conclusory assertions, to establish that EOTECH knew, or even had any reason to believe, when selling the Sight to the Shooter, that he would engage in a criminal shooting using the Subject Rifle on which it was installed. The Shooter's criminal shooting is the textbook definition of a superseding, intervening cause. This Court should therefore dismiss Plaintiffs' claims against EOTECH for lack of causation.

## IV. PLAINTIFFS CONCEDE THAT NO AIDING AND ABETTING CLAIM UNDER TEXAS LAW HAS BEEN RECOGNIZED.

Despite an introductory paragraph of cases that did not ultimately decide the issue and incorrectly claiming that "whether Texas recognizes the cause of action remains an open

---

[10] The cases that Plaintiffs cite do not help their argument. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 752 (Tex. 1999) (plaintiffs failed to establish causation as matter of law for claims against food store and its owner that sold alcohol to underage girl for harm caused by subsequent assault and murder of girl by third party); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 787 (Tex. App. 1990) (firearms dealer was not proximate cause of a murder where "criminal conduct was a superseding cause that relieved . . . liability" even if the dealer breached a duty), *writ denied* (Nov. 21, 1990); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 308 (Tex. 1987) ("whether a person injured by an intoxicated driver may recover from the alcoholic beverage licensee who allegedly sold intoxicants to that intoxicated driver in violation of the Texas Alcoholic Beverage Code").

question,"[11] Plaintiffs admit that the Texas Supreme Court "did not adopt the cause of action" "for aiding and abetting." Opp'n at 17. The Texas Supreme Court has never recognized an aiding and abetting cause of action, *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017), and the Fifth Circuit Court of Appeals has held that such claim does not exist under Texas law, *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018). Therefore, regardless of whether this case remains in this Court or is remanded, Plaintiffs' aiding and abetting claims should be dismissed.

## V.     PLAINTIFFS HAVE NO BASIS FOR SEEKING PUNITIVE DAMAGES.

Plaintiffs fail to make any argument as to why they have sufficiently alleged a basis for punitive damages beyond adding the words "and justify their punitive damages" to the heading of their argument regarding their negligence claims. Opp'n at 12. Plaintiffs have no basis for punitive damages and have not pointed to a single advertisement by EOTECH encouraging anyone to commit a crime using its products. Despite Plaintiffs' attempt to characterize the Sight as a product that has no purpose except for criminal use, the Sight is a lawful product, legally sold to the Shooter, which can be used for numerous legal purposes by civilians. The Shooter's decision to criminally misuse the Sight does not make its sale by EOTECH conduct "involv[ing] an extreme degree of risk," as required to support a claim for punitive damages.[12]

## VI.    PLAINTIFFS HAVE NO BASIS FOR CLAIMS AGAINST PROJECT ECHO.

In response to the argument that their claims against Project Echo should be dismissed for lack of a basis to pierce the corporate veil, Plaintiffs argue that rather than asserting claims against

---

[11] Plaintiffs' further reliance on cases from outside both Texas and the Fifth Circuit have nothing to do with whether aiding and abetting is a valid cause of action under Texas law. Opp'n at 18.
[12] *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 16–17 (Tex. 1994), *superseded by statute on other grounds as stated in U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

Project Echo based on piercing the corporate veil, they do so "individually as [a] participant[] in the negligent marketing and sale of the battle sight to the Shooter." Opp'n at 19. But that argument does not comport with the allegations in the Petition, which seeks to hold Project Echo liable solely because it is EOTECH's parent. Pet. ¶¶ 42, 44.[13] Plaintiffs raise no independent allegations against Project Echo relative to the sale of the Sight. As Plaintiffs have now disclaimed asserting a claim against Project Echo based on piercing the corporate veil, there is no factual or legal basis for their claims against Project Echo. Thus, this Court should dismiss Plaintiffs' claims against Project Echo.

## **CONCLUSION**

For the above reasons, EOTECH and Project Echo respectfully request that this Court grant the Motion, dismiss all claims against them with prejudice,[14] and grant such other relief as it deems just and proper.

Dated: January 17, 2025

<div style="margin-left:30%">

Respectfully submitted,

By:     */s/ Scott C. Allan*
        Christopher Renzulli (State Bar No. 2658433)
        Scott C. Allan (State Bar No.3910940)
        **RENZULLI LAW FIRM, LLP**
        One North Broadway, Suite 1005
        White Plains, NY 10601
        Telephone: (914) 285-0700
        Facsimile: (914) 285-1213

</div>

---

[13] Although outside the scope of what the Court may consider on a motion to dismiss, the news article cited by Plaintiffs only underscores that this is Plaintiffs' true theory. Opp'n at 1 n.1.

[14] Plaintiffs ask that if any portion of the Complaint is to be dismissed, the Court grant them leave to amend. Opp'n at 20. Plaintiffs chose to oppose the Motion on the merits instead of seeking leave to file an amended complaint. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). There are no amendments that could avoid the required dismissal of their claims against EOTECH and Project Echo, and Plaintiffs do not even attempt to identify how they would attempt to do so. Accordingly, this Court should deny leave to amend.

Email: crenzulli@renzullilaw.com
sallan@renzullilaw.com

-and-

Daniel Buechler (State Bar No. 24047756)
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Plaza of the Americas
700 North Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone: (214) 871-8262
Facsimile: (214) 871-8209
E-Mail: dbuechler@thompsoncoe.com

-and-

Zandra Foley (State Bar No. 24032085)
**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
4400 Post Oak Parkway, Suite 1000
Houston, TX 77027
Telephone: (713) 403-8200
Facsimile: (713) 403-8299
E-Mail: zfoley@thompsoncoe.com

Attorneys for Defendants EOTECH, LLC and Project Echo
Holdings LLC d/b/a American Holoptics

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon

all counsel of record through the CM/ECF system on this 17th day of January 2025.

*/s/ Scott C. Allan*
Scott C. Allan