# EXHIBIT A

**FILED**

4/1/2025 1:17 PM

Erin Cartwright Weinstein
**Clerk of the Court
Lake County, Illinois**

STATE OF ILLINOIS )
) SS
COUNTY OF LAKE )

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| KEELY ~~KELLY~~ ROBERTS, individually and as parent and next friend of C.R. and L.R., and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| SMITH & WESSON BRANDS, INC., et al., | ) ) |
| Defendants. | ) ) |
| And | ) ) |
| CYBEAR INTERACTIVE, LLC, et al., | ) ) ) |
| Respondents in Discovery | ) |

Case No. 22 LA 00000487

Consolidated with Case Nos.
22 LA 00000488, 22 LA 00000489,
22 LA 00000490, 22 LA 00000491,
22 LA 00000492, 22 LA 00000493,
22 LA 00000494, 22 LA 00000495,
22 LA 00000496, 22 LA 00000497,
22 LA 00000532, 22 LA 00000201,
22 LA 00000203, 22 LA 00000206,
22 LA 00000466, 22 LA 00000471,
22 LA 00000474, 22 LA 00000475,
22 LA 00000476, 22 LA 00000477,
22 LA 00000478, 22 LA 00000479,
22 LA 00000480, 22 LA 00000481

## ORDER ON BUDSGUNSHOP.COM, LLC AND RED DOT ARMS, INC.'S MOTIONS TO DISMISS THE ROBERTS AND RELATED COMPLAINTS

This matter comes before the Court on Defendants', BudsGunShop.com, LLC and Red Dot Arms, Inc, Motions to Dismiss the Roberts and related Complaints. Having heard arguments on this Motion, considered the statutory authority and case law, and being fully advised in the premises, the Court now FINDS AS FOLLOWS:

### BACKGROUND

On July 4, 2022, twenty-one-year-old Robert Crimo III positioned himself on a rooftop in downtown Highland Park and fired 83 rounds from an assault rifle into the crowd below that was gathered for the 4th of July parade. Seven people were killed, 48 others were injured, and countless others suffered injuries in the aftermath. Crimo III ("shooter") carried out this massacre using a Smith & Wesson Military and Police ("M&P") assault rifle that was allegedly

manufactured, distributed, and ultimately sold to the shooter by the various Defendants in this case. There is no doubt that the shooter was directly and primarily responsible for this horrific series of crimes. However, those injured in the massacre, as well as those representing the estates of the decedents, contend that Smith & Wesson, BudsGunShop.com, LLC, and Red Dot Arms, Inc. also bear some of the blame.

## PROCEDURAL HISTORY

The Plaintiffs in these consolidated actions filed Complaints in 2022 and 2024. They have set forth a number of legal theories as to why the Defendants (BudsGunShop.com, LLC and Red Dot Arms, Inc.) should be held partly responsible for this tragedy.[1] All Plaintiffs have brought statutory and negligence claims against BudsGunShop.com, LLC ("Buds") and Red Dot Arms, Inc. ("Red Dot") based on violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 & 505/2DDDD) and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2, et seq.). All Plaintiffs allege claims of In-Concert Liability or Aiding and Abetting against Buds and Red Dot. Some Plaintiffs bring claims for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress. The Uvaldo Plaintiffs bring Negligent Entrustment claims against Buds and Red Dot

Defendants Buds and Red Dot bring Motions to Dismiss Plaintiffs' claims against them. They argue that all of Plaintiffs' legal theories are not only barred under Illinois law, but also precluded by a federal statute, the Protection of Lawful Commerce in Arms Act (PLCAA), which immunizes firearms manufacturers, distributors, and dealers from civil liability for crimes committed by third parties using their weapons. See 15 U.S.C. §§7902(a) and 7903(5) (2025).

## ANALYSIS

### I.     Dismissal pursuant to 735 ILCS 5/2-615

A motion to dismiss brought pursuant to section 2–615 attacks the legal sufficiency of the complaint. *Vitro v. Mihelcic*, 209 Ill.2d 76, 81 (2004). When ruling on such a motion, the court must accept as true all well-pleaded facts in the complaint, as well as any reasonable inferences that may arise from them. *Doe v. Chicago Board of Education*, 213 Ill.2d 19, 28 (2004). The merits of the case, at this point, are not yet considered. See *Kilburg v. Mohiuddin*, 2013 IL App (1st) 113408, ¶ 19. However, a court cannot accept as true mere conclusions unsupported by specific facts. *Pooh–Bah Enterprises, Inc. v. County of Cook*, 232 Ill.2d 463, 473 (2009). The

---

[1] Plaintiffs also bring claims against Crimo III and Crimo Jr. However, this order addresses only Motions to Dismiss brought by Defendants BudsGunShop.com, LLC and Red Dot Arms, Inc.

court is to construe the complaint liberally and should not dismiss it unless it is clearly apparent from the pleadings that "no set of facts can be proved which would entitle * * * plaintiff[s] to recover." *Napleton v. Village of Hinsdale,* 229 Ill.2d 296, 305 (2008). The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action on which relief may be granted. *Sheffler v. Commonwealth Edison Co.,* 2011 IL 110166, ¶ 61.

Illinois is a fact-pleading state. *Time Savers, Inc. v. LaSalle Bank, N.A.,* 371 Ill.App.3d 759, 767 (2007). This means that, although pleadings are to be liberally construed and formal or technical allegations are not necessary, a complaint must, nevertheless, contain facts to state a cause of action. *Purmal v. Robert N. Wadington & Associates,* 354 Ill.App.3d 715, 720 (2004). The complaint is deficient when it fails to allege the facts necessary for a plaintiff to recover. See *Doe v. Chicago Board of Education,* 339 Ill.App.3d 848, 853 (2003). "But it is a rule of pleading long established, that a pleader is not required to set out his evidence. To the contrary, only the ultimate facts to be proved should be alleged and not the evidentiary facts tending to prove such ultimate facts." *Board of Education of the Kankakee School District No. III v. Kankakee Federation of Teachers Local No. 886,* 46 Ill.2d 439, 446–47 (1970).

### a.    Have Plaintiffs' sufficiently stated aiding and abetting and in-concert liability claims?

Buds and Red Dot ("Gun Store Defendants") move the court, under 735 ILCS 5/2-615 to dismiss Plaintiffs' aiding and abetting and in-concert liability claims arguing Plaintiffs have not pled facts sufficient to state such claims. The theory of liability set forth in Plaintiffs' Complaints is that both Highland Park and Highwood make it illegal to "manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine." Highwood, Ill., Code of Ordinances §6-7-2(A); Highland Park, Ill., Code of Ordinances §136.005. On or about July 2020, Buds sold the Rifle to the shooter through an online transaction. The shooter provided Buds with his address and the shooter resided in either Highland Park or Highwood. Buds then shipped the Rifle to Red Dot to complete the transfer to the shooter. On or about July 2020, Red Dot transferred the Rifle to the Shooter after conducting a background check and verifying the shooter's identification. Despite knowing the shooter resided in a municipality that prohibited the possession of assault weapons, the Gun Store Defendants sold and transferred the Rifle to the shooter, thereby aiding and abetting and acting in-concert in violating the ordinances. (Complaint, 22LA487, ¶¶133, 136, 137, 138).

3

The Gun Store Defendants first assert that the Highwood Ordinance §6-7-2 does not provide a private cause of action. The Court finds this argument without merit. Plaintiffs have brought tort claims for aiding and abetting and in-concert liability against the Gun Store Defendants, not a cause of action for directly violating the ordinances. There is no need to find a private cause of action under the ordinances in order to proceed.

Second, the Gun Store Defendants allege Plaintiffs make baseless and conclusory allegations that the Gun Store Defendants were "aware of [its] role as part of the overall or tortious activity" – the shooting (or even the shooter's violation of the ordinances)—"at the time that [it] provide[d]" the Rifle and "knowingly and substantially assist[ed]." They argue the shooter could have lawfully acquired the Rifle from Red Dot and kept it at another location without violating the ordinance. Further, Plaintiffs do not come close to alleging facts to support their claim that the Gun Store Defendants had "actual knowledge" that the shooter would use the Rifle to commit the shooting.

The purpose of pleadings is to present, define, and narrow the issues and limit the proof needed at trial. *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 37; *People ex rel. Fahner v. Carriage Way West, Inc.,* 88 Ill.2d 300, 307 (1981). Pleadings are intended not to erect barriers to a trial on the merits but instead to remove them and facilitate the trial. *Id.* The object of pleadings is to produce an issue asserted by one side and denied by the other so that a trial can determine the actual truth. *Id.* at 307–08. In determining whether a cause of action has been stated, we must consider the whole complaint, rather than taking a myopic view of a disconnected part. *Borcia v. Hatyina*, 2015 IL App (2d) 140559, ¶ 37; *Stenwall v. Bergstrom,* 398 Ill. 377, 383 (1947).

The Court finds the Plaintiffs have sufficiently alleged the elements for their aiding and abetting and in-concert liability claims. A claim for aiding and abetting in the commission of a tort requires Plaintiffs to prove: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time he provides assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Thornwood, Inc. v. Jenner & Block,* 344 Ill. App. 3d 15, 27-28 (2003). Plaintiffs allege the shooter committed a wrongful act by violating Highwood Ordinance's prohibitions on acquiring and possessing assault weapons. By violating the ordinance and possessing the Rifle, the shooter caused Plaintiffs' injuries. The Complaint allegations provide that the Gun Store Defendants were aware of their roles in aiding the shooter's violations of the Highwood Ordinance. They knew the shooter's address and knew

4

the laws and whether purchasers may lawfully acquire and possess firearms. They knowingly and substantially assisted the violation of the ordinances.

For a cause of action based on an in-concert theory of liability, section 876 of the Restatement (Second) of Torts provides in pertinent part: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he. . .(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself [.]" Restatement (Second) of Torts § 876 (1979). Section 876 of the Restatement (Second) of Torts becomes operative when "harm result[s] * * * from the tortious conduct of another." The in-concert liability allegations in Plaintiffs' complaint assert the shooter breached a duty by purchasing an assault rifle that he intended to, and did, possess in a jurisdiction that prohibited such possession. As to the knowledge requirement, the allegations state the Gun Store Defendants knew the shooter sought to buy an assault rifle that was illegal to possess where he lived. Based on the information provided by the shooter during both the online purchase and the in-person transfer, the Gun Store Defendants knew he lived in Highwood, which has an ordinance outlawing the possession or use of automatic weapons. The Plaintiffs further make allegations that the Gun Store Defendants gave "substantial assistance" to the shooter. The shooting took place just over one mile from the shooter's residence, where the Gun Store Defendants knew it was illegal to possess an assault rifle. Plaintiffs allege the Gun Store Defendants directly enabled the shooter to violate the ordinance and caused the shooter to gain unlawful possession of the assault rifle that he used for the shooting.

While the Gun Store Defendants characterize these allegations as conclusions, the court finds they are inferences from pleaded facts. Black's Law Dictionary defines "inference" as "[a] conclusion reached by considering other facts and deducing a logical consequence from them." Black's Law Dictionary 793 (8th ed. 2004). Black's Law Dictionary defines a "legal conclusion" as "[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." *Id.* at 912. Therefore, despite the Gun Store Defendants arguments that Plaintiffs only presented conclusions as to their actual knowledge and substantial assistance, Plaintiffs presented factual allegations with proper inferences sufficient to survive a section 2-615 dismissal motion. Plaintiffs will still bear the burden of proof with respect to the elements of their claim (see 740 ILCS 180/0.01 *et seq.* (West 2012)). The Court's holding only recognizes the sufficiency of Plaintiffs' allegations vis-à-vis the in-concert theory of liability under section 876 of the Restatement (Second) of Torts and the aiding and abetting claims.

**b.    Is a duty owed to Plaintiffs?**

The Gun Store Defendants argue they owed no duty to protect the Plaintiffs from the shooter's deliberate acts. They rely specifically on *City of Chicago v. Beretta U.S.A. Corp.*, to argue that no common law duty is owed to Plaintiffs. Quoting *City of Chicago*, they maintain, "[w]hether a duty of care exists is a question of law to be determined by the court" and firearms industry members "owe no duty to the city of Chicago or its residents to prevent their firearms from ending up in the hands of persons who use and possess them illegally." 213 Ill.2d 351, 392 (2004).

To determine whether a duty exists, the critical question is whether the defendant and the plaintiff "stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* To answer this question, four factors are utilized: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Jarosz v. Buona Companies, LLC*, 2022 IL App (1st) 210181, ¶ 34.

After considering these four traditional factors for evaluating the issue of duty against the Plaintiffs' Complaint allegations, the Court finds that Plaintiffs have established a "reasonable foreseeability of the injury" and "the likelihood of the injury". As alleged by Plaintiffs, the Gun Store Defendants acted by selling a rifle of the kind that had been used in the past by mass shooters to a 19-year-old with multiple red flags. The Gun Store Defendants sold the weapon to a resident of a municipality that prohibited the possession of assault weapons within its borders. Further, as pointed out by Plaintiffs, the court in *City of Chicago* addressed the four factor test as it related to the dealer defendants and held that "[o]nly the fourth factor, the consequences of placing [the] burden on the defendant, weighs heavily against imposing a duty upon the dealer defendants." *Id.* at 394. Here, the concern regarding burden is not present. The injury complained of by Plaintiffs is not remote from the sale of the weapon. Unlike in *City of Chicago*, where the public nuisance alleged was several times removed from the initial sale of the weapon by the dealer defendants, the Gun Store Defendants interacted directly with the shooter. Thus, the four traditional factors for evaluating the issue of duty weigh in favor of holding that the Gun Store Defendants owed Plaintiffs the standard of care applicable to all persons to guard against the risks of harms to others created by their own conduct.

The Gun Store Defendants' arguments that a special relationship must exist between Plaintiffs and Defendants in order to establish a duty is similar to Smith and Wesson's argument. Thus, those arguments were addressed in that order and this Court's determination is incorporated herein. The Complaint asserts that the Gun Store Defendants, by their acts, contributed to the risk of harm to Plaintiffs. Their claims are not premised upon the theory that they failed to act or failed to protect, but that they breached a duty of reasonable care by affirmatively acting in a manner that unreasonably exacerbated a risk of harm. Thus, the finding of a "special relationship" is not required here.

    **c.**    **Did the Gun Store Defendants proximately cause Plaintiffs' injuries?**

The Gun Store Defendants' arguments regarding proximate cause are very similar to Smith & Wesson's argument that under *Young v. Bryco Arms*, if the "defendant's conduct merely furnishes a condition by which injury is made possible, and a third person, acting independently, subsequently causes injury, the defendant's creation of the condition is not a proximate cause of the injury." 213 Ill. 2d 433, 449 (2004). However, the *Young* case did not find foreseeable the creation of a public nuisance from the aggregate effect of the lawful manufacture and sale of firearms. That case is distinguishable from the facts and claims present in this case. The Plaintiffs' negligence, aiding and abetting, and in-concert liability claims seek redress for individual harms resulting from a single negligent transaction to a single individual preceding a single act of violence.

That said, Plaintiffs' allegations sufficiently set forth that the Gun Store Defendants' acts created a condition conducive to a foreseeable intervening criminal act. They allege that the Gun Store Defendants knew: (1) the shooter was only 19 years old; (2) he fit the demographic profile for a mass shooter; (3) he obtained the Rifle despite being prohibited from acquiring or possessing one where he lived; (4) that particular brand of Rifle had been marketed aggressively to young people in a manner that glorified military combat-style violence and (5) that type of Rifle had been used in multiple mass shootings. Complaint, 22LA487, ¶¶116, 181, 190,215, 218, 221-22, 224, 228, 243, 252, 255, 257,261, 265, 263, 415-32, 424, 430, 451-52, 453, 467-68. For purposes of a motion to dismiss pursuant to 2-615, it was foreseeable for the shooter to commit the mass shooting when the Gun Store Defendant's furnished the shooter with the Rifle given the knowledge of the characteristics of the shooter and that he was prohibited from possessing the weapon where he lived. Thus, proximate cause has been established by Plaintiffs.

    **II.**    **Dismissal pursuant to 735 ILCS §5/2-619**

A motion to dismiss under section 2–619 alerts the trial court to certain defects or defenses which avoid the legal effect of or defeat the claims in the pleadings. *Mio v. Alberto-Culver Co.*, 306 Ill. App. 3d 822, 824–25 (2d Dist. 1999). The purpose of section 2–619 is to allow for a threshold disposition of questions of law and easily proved issues of fact. *Zedella v. Gibson*, 165 Ill.2d 181, 185 (1995). A section 2–619 motion to dismiss admits the legal sufficiency of the cause of action (absent the defects or defenses raised by the motion) much the same way a section 2–615 motion to dismiss admits a complaint's well-pleaded facts. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill.2d 112, 115 (1993). The trial court should grant a section 2–619 motion if, after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, it finds that no set of facts can be proved upon which relief could be granted. *Mio v. Alberto-Culver Co.*, 306 Ill. App. 3d at 824–25.

  **a.**   **Are Plaintiff's claims barred by the PLCAA?**

Both parties acknowledge that the Protection of Lawful Commerce in Arms Act ("PLCAA") prohibits the institution of a "qualified civil liability action" in any state or federal court. 15 U.S.C. §7902(a). Here, there is no dispute that the claims brought by Plaintiffs against the Gun Store Defendants are qualified civil liability actions. The Gun Store Defendants request dismissal of the claims against them pursuant to 2-619 arguing that no exceptions to the PLCAA apply to Plaintiffs' claims.

Initially, the Gun Store Defendants recognize that the only potential relevant exception is the predicate exception contained in 15 U.S.C. §7903(5)(A)(iii) which excludes from the definition of a prohibited qualified civil liability action an "action in which a [seller of firearms] knowingly violated a state or federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought. . ." 15 U.S.C. §7903(5)(A)(iii). So, the initial question to be determined is whether Plaintiffs' claims for aiding and abetting and in concert liability for violations of Highwood and Highland Park ordinances are a violation of "a state or federal statute applicable to the sale or marketing" of a firearm.

First, the Gun Store Defendants claim the Highwood and Highland Park ordinances are not "State or Federal Statutes" for purposes of the predicate exception. Citing *City of Chicago v. Janssen Pharms., Inc.*, 2017 IL App (1st) 150870, ¶24, they claim the phrase "State law" must be afforded its plain and ordinary meaning, which necessarily excludes municipal ordinances. They also claim the word "statutory" is very distinct from the phrase "State law" with the former to include municipal ordinances and the latter being a proper noun which refers to the State of

Illinois. *See City of Chicago*, 2017 IL App (1ˢᵗ) 150870, ¶23. The *City of Chicago* case cited by the Gun Store Defendants specifically noted that if a phrase or word is not defined by the legislature, it is presumed that the legislature intended the term to have its ordinary and popularly understood meaning. *Id.* at ¶22. While that may be case, these arguments ignore the plain text of the PLCAA which defines the word "State" and is the deciding factor to this question. The predicate exception uses the term "State. . .Statutes" and the term "State" is defined as "each of the several States of the United States, the District of Columbia. . . and any political subdivision of any such place." 15 U.S.C. §7903(7). As noted by Plaintiffs, "[w]hen Congress takes the trouble to define the terms it uses, a court must respect its definitions as virtually conclusive. This Court will not deviate from an express statutory definition merely because it varies from [the] term's ordinary meaning." *Dep't of Agric. Rural Dev. Rural Hous. Serv. V. Kirtz*, 601 U.S. 42, 59 (2024). Thus, the Court determines that the phrase "State or Federal Statute" includes municipal ordinances applicable to the sale or marketing of firearms.

     Next, the Gun Store Defendants, specifically BudsGunShop.com, argue the Plaintiffs' in-concert liability or aiding and abetting claims are not premised on the violation of a statute applicable to the sale or marketing of firearms. They maintain that a law prohibiting a person from bringing a firearm into a municipality in which it is not legal to possess that firearm, is not a law applicable to the "sale or marketing" of firearms as required to satisfy the predicate exception. However, this argument is contrary to the plain text of the PLCAA. The general language contained in section 7903(5)(A)(iii) (providing that predicate statutes are those "applicable to" the sale or marketing of firearms) is followed by the more specific language referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. § 7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling to someone prohibited from possessing a firearm. 15 U.S.C. §(5)(A)(iii)(II). "[T]he meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases (*noscitur a sociis* )." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008). In addition, "where general words" are accompanied by "a specific enumeration of persons or things, the general words should be limited to persons or things similar to those specifically enumerated (*ejusdem generis* )." *Id.* The Plaintiffs' allege the Gun Store Defendants knowingly aided and abetted or acted in-concert in the shooter's unlawful possession of the rifle in jurisdictions that have passed ordinances prohibiting "assault weapons." The Gun Store Defendants never explain why this is not similar

to the enumerated examples contained in the PLCAA including where a violation of a law applicable to the sale or marketing of firearms includes aiding and abetting others in the selling to someone prohibited from possessing a firearm. This appears to be a similar situation and is related to the example. The argument by the Gun Store Defendants that the sale was made outside the municipal boundaries and the shooter could have avoided taking the rifle into the jurisdictions that prohibited possession is an argument as to the sufficiency of the allegations for making the claim. The Court is to take all well-pled allegations and inferences therefrom as true. *Doe v. Chicago Board of Education*, 213 Ill.2d 19, 28 (2004). In this case, the allegations state the Gun Store Defendants knew the shooter sought to buy an assault rifle that was illegal to possess where he lived. Based on the information provided by the shooter during both the online purchase and the in-person transfer, the Gun Store Defendants knew he lived in Highwood, which has an ordinance outlawing the possession or use of automatic weapons. The Plaintiffs further make allegations that the Gun Store Defendants gave "substantial assistance" to the shooter. The shooting took place just over one mile from the shooter's residence, where the Gun Store Defendants knew it was illegal to possess an assault rifle. Plaintiffs allege the Gun Store Defendants directly enabled the shooter to violate the ordinance. These allegations, along with the PLCAA plain text allowing aiding and abetting claims as an example of a predicate statute, lead this Court to conclude that the Plaintiffs' claims for in-concert liability and aiding and abetting are not barred by the PLCAA.

Finally, the Gun Store Defendants claim that the exception would not include Plaintiffs' negligence claims or claims for emotional distress. However, this assertion ignores the language in the Act that the PLCAA does not apply to "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute." 15 U.S.C. §7903(5)(A)(iii) (emphasis added). That language is in contrast with other exceptions in PLCAA, such as the exceptions for "an action for breach of contract" and "for negligent entrustment." 15 U.S.C. §7903(5)(A)(ii), (iv). Plaintiffs have alleged in their Negligence, IIED and NIED causes of action that the Gun Store Defendants aided and abetted or acted in concert in knowingly violating Highwood and Highland Park ordinances that barred the shooter from possessing the firearm within the boundaries of Highwood and Highland Park. The *Ileto* case and other cases relied on by the Gun Store Defendants are distinguishable. None of those cases alleged a knowing violation of a predicate statute. Instead, they held that the PLCAA preempts general negligence claims seeking damages resulting from the criminal use of a firearm, with no

allegations pertaining to a knowing violation of a predicate statute. The *Ileto* court was only addressing the issue of a plaintiff's claim based on general tort theories of liability which plaintiffs claimed was codified into the California Civil Code, not claims of liability based on violations of federal or state law applicable to the sale or marketing or a firearm. Further, several courts have allowed negligence claims premised, at least in part, upon alleged knowing violations of state law to proceed under the predicate exception. *See Prescott v. Slide Fire Solutions*, 410 F.Supp.3d 1123; *Goldstein v. Earnest*, No. 37-2020-00016638-CU-PO-CTL; *Apolinar, et al. v. Polymer80, Inc.*, No. 21STCV29196 (Cal. Super. Ct. L.A. Cty). Thus, the fact that Plaintiffs' claims are brought as Negligence and Emotional Distress claims are not an automatic bar under the PLCAA.

Accordingly, the Court finds that the PLCAA exception under 7903(5)(A)(iii) applies to the Plaintiffs' claims against the Gun Store Defendants.

### b.    Is the Uvaldo Plaintiff's Negligent Entrustment Claim Barred by the PLCAA

The Gun Store Defendants argue that the PLCAA preempts the Uvaldo Plaintiff's negligent entrustment claim because it has a specific carve out in the statute for negligent entrustment, and the Uvaldo Plaintiff's claim does not fit within it. *See* 15 U.S.C. §7903(5)(A)(ii). The PLCAA defines negligent entrustment as "supplying of a [firearm] by a seller for use by another person when the seller knows, or reasonably should know, the person whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. §7903(5)(B).

Red Dot premises their request for dismissal on Plaintiff's failure to state a claim for negligent entrustment.[2] They argue that the mere possibility that someone can misuse or dangerously use a product is not sufficient. Although this argument is attacking the sufficiency of the Complaint, and does not address whether the exception under PLCAA applies, the Court will address it. They cite to the Illinois Supreme Court that "liability will not attach if one entrusts a product where 'nothing. . . would have red flagged' the purchaser as inexperienced, incompetent or reckless." *Evans v. Shannon*, 201 Ill.2d 424, 436 (2002). In this case, Plaintiffs allege the Gun Store Defendants knew or had reason to know that the shooter resided in a municipality that prohibited the possession of assault weapons, including the M&P 15. (Uvaldo Complaint, ¶69). The Gun Store Defendants knew the shooter was 19 and wanted a brand of

---

[2] Buds also makes the argument, although it is not their main contention.

assault rifle that was most associated with mass shootings. (Uvaldo Complaint, ¶¶255, 261, 265, 423-24). They knew or should have known that young men had carried out some of the most horrific mass shootings in U.S. history. (*Id.* ¶¶181-82, 190, 215, 218, 221). The shooter's age put him in the demographic that had used the M&P 15 to carry out these shootings. (*Id.* ¶¶20, 181-82, 215, 218, 221, 229). These are allegations that the Court takes as true and all inferences therefrom. Plaintiffs have sufficiently alleged a number of red flags of the shooter that Red Dot and Buds knew or should have known would make it likely for the shooter to use the rifle in a manner involving unreasonable risk of injury to others. Accordingly, the Uvaldo Plaintiffs have sufficiently pled a cause of action for negligent entrustment.

Buds additionally argues that they did not transfer the rifle to the Shooter, but rather shipped it to another federally licensed firearms arms dealer (Red Dot), which transferred it to the shooter after completing a background check. Thus, the Uvaldo Plaintiff's claim does not satisfy the negligent entrustment exception requirements found in the PLCAA. Negligent entrustment under the PLCAA is defined as the "supplying of a [firearm] by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the [firearm] is supplied is likely to, and does, use the [firearm] in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. §7903(5)(B). According to Buds, Plaintiffs allege that Bud's supplied the rifle to Red Dot, who then transferred it to the shooter. Thus, Buds did not entrust anything to the shooter. However, Buds cannot dispute that Plaintiffs have alleged that the shooter went onto the BudsGunShop.com website and purchased the rifle from them. Pursuant to that purchase, Buds shipped the rifle to Red Dot, a dealer located in Illinois. Red Dot then physically transferred the rifle to the shooter. Plaintiffs also specifically allege that Buds and Red Dot supplied and transferred the rifle to the shooter. The Court finds that this satisfies the requirements of negligent entrustment under the PLCAA. The PLCAA defines "seller" as "a dealer who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business. . . ." 15 U.S.C. §7903(6). That is exactly what Buds is in this case. Further, Buds was a "seller" who supplied a firearm for use by another person. The general definition of the verb "supply" is "to make available for use." https://www.merriam-webster.com. 2025. The shooter purchased the rifle online from Buds. Therefore, Buds sold the rifle to the shooter. Buds then sent the rifle to Red Dot with the express purpose of being transferred to the shooter. Thus, Buds made the rifle available for use to the shooter after he purchased it from them. Buds' attempt to liken this case to the *Beretta* case is

unconvincing. First, the *Beretta* court did not explain the reasoning for the trial court to dismiss the negligent entrustment claim, only mentioning it in the Background section of the opinion. Second, the *Beretta* case was discussing liability of firearm manufacturers based on aggregate sales and multiple crimes. That case dealt with firearms that changed hands multiple times after the initial sale. In this matter, it was a direct sale from Buds to the Shooter. The fact that the rifle needed to be shipped to a dealer in Illinois in order to be physically transferred to the shooter does not make the *Berretta* case any less distinguishable from the current case. Hence, the Court finds that the Uvaldo Plaintiff's negligent entrustment claim is not barred by the PLCAA. The Plaintiff's allegations are sufficient to fit within the negligent entrustment exception found in the PLCAA.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Complaints is Denied with respect to all Counts of Plaintiffs' Complaints against BudsGunShop.com, LLC and Red Dot Arms, Inc.

SO ORDERED.

ENTER: _____

Jorge L. Ortiz, Circuit Judge

Dated this   1st day of April   , 2025, at Waukegan, Illinois.

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| • Everytown Law<br>• Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>• Romanucci & Blandin<br>• Hunt Law<br>  ○ Appearing only on behalf of the Zeiferts and the Roberts<br>• MDR LAW<br>  ○ Appearing only on behalf of the Gutmans | • *Roberts*, 22-LA-00000487<br>  ○ Keely Roberts and Jason Roberts, individually and as parents and next friends of C.R. and L.R.<br>• *Sundheim*, 22-LA-00000488<br>  ○ Bruce Sundheim as Special Administrator of the Estate of Jacqueline Sundheim<br>• *Straus*, 22-LA-00000489<br>  ○ Peter Straus and Jonathan Straus as Co-Administrators of the Estate of Stephen Straus<br>• *Rebollar Sedano*, 22-LA-00000490<br>  ○ Lorena Rebollar Sedano<br>• *Bennett*, 22-LA-00000491<br>  ○ Lauren Bennett and Michael Bennett, individually and as parents and next friends of W.B. and T.B.<br>  ○ Terrie Bennett<br>  ○ Jeffrey Bennett<br>  ○ Deborah Samuels<br>  ○ Elliot Samuels<br>• *Rodriguez*, 22-LA-00000492<br>  ○ Mirna Rodriguez and Oscar Sanchez, individually and as parents and next friends of J.S., K.S., and O.S.<br>• *Tenorio*, 22-LA-00000493<br>  ○ Amelia Tenorio and Antonio Melgar, individually and as parents and next friends of C.M.<br>• *Vergara*, 22-LA-00000494<br>  ○ Sylvia Vergara<br>  ○ Lizet Montez<br>  ○ Gabriela Vergara | • Cybear Interactive, LLC<br>• Watauga Group, LLC<br>• Clandestine Media Group, LLC | • Count I-Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 &2BBBB-Unfair and Unlawful Acts (All Pl v. Smith & Wesson Defendants)<br>• Count II - Violation of Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2 &2BBBB-Deceptive and Unlawful Acts (All Pl v. Smith & Wesson Defendants)<br>• Count III-Violation of The Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2, et seq. (All Pl v. Smith & Wesson)<br>• Count IV-Negligence (All Pl v. Smith & Wesson)<br>• Count V-Negligence (All Pl v. Gun Store Defendants)<br>• Count VI-In-Concert Liability-Restatement (Second) of Torts §876 |

1

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | • *Toledo*, 22-LA-00000495<br> o Ricardo Toledo, individually and as Special Administrator of the Estate of Nicolas Toledo<br> o Petra Toledo<br> o Josefina Toledo<br> o Alejo Toledo<br>• *Zeifert*, 22-LA-00000496<br> o Michael Zeifert and Christine Zeifert, individually and as parents and next friends of B.R.Z., B.M.Z., K.Z., and L.Z.<br>• *Aguilar*, 24-LA-00000475<br> o Adan Aguilar<br>• *Castellanos*, 24-LA-00000476<br> o Castelia Castellanos<br>• *Castillo*, 24-LA-00000477<br> o Alan Castillo<br>• *Gutman*, 24-LA-00000478<br> o Sheila Gutman<br> o Joseph Gutman<br>• *Medina*, 24-LA-00000479<br> o Barbara Medina<br>• *Ring*, 24-LA-00000480<br> o Dana Ring and Greg Ring, individually and as parents and next friends of J.R., Z.R., and A.R. | | • (All Pl v. Gun Store Defendants)<br>• Count VII-Negligence (All Pl v. Robert Crimo Jr.)<br>• Count VIII- Battery (certain Pl v. Robert Crimo III)<br>• Count IX-Assault (certain Pl v. Robert Crimo III)<br>• Count X-Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (certain Pl v. All Defendants)<br>• Count XI-Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress (certain Pl v. All Defendants) |
| • Brady Center to Prevent Gun Violence<br>• Dentons<br>• Edelson PC | • *Chupack*, 22-LA-00000532<br> o Joshua Chupack, individually and as next friend of I.C.<br>• *Turnipseed*, 22-LA-00000497<br> o Elizabeth Turnipseed<br>• *Goldstein*, 24-LA-00000474 | • Cybear Interactive, LLC<br>• Watauga Group, LLC<br>• Clandestine Media Group, LLC | • Count I-Violation of Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1, et seq. (All Pl v. Smith & Wesson)<br>• Count II- Negligence (Pl v. Smith & Wesson) |

2

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | o  Craig Goldstein, as Special Administrator of the Estate of Katherine Goldstein<br>o  Cassie Goldstein | • Charles Osborne<br>• Leslie Osborne | • Count III-Negligence (Pl v. Gun Store Def)<br>• Count IV-Assault and Battery (Pl v. Crimo III)<br>• Count V-Intentional Infliction of Emot. Distress (Pl v. Crimo III)<br>• Count VI-Negligence and Negligent Infliction of Emot. Distress (Pl v. Crimo III)<br>• Count VII- Negligence and Negligent Infliction of Emot. Distress (Pl v. Crimo Jr.) |
| Levin & Perconti | • *Joyce*, 24-LA-00000201<br>  o  Michael Joyce<br>• *Z. Kolpack*, 24-LA-00000203<br>  o  Zoe Kolpack<br>• *S. Kolpack*, 24-LA-00000206<br>  o  Stephen Kolpack | | • Count I-Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act-Unfairness 815 ILCS 505/2 (Pl v. Smith & Wesson)<br>• Count II- Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act-Deception 815 ILCS 505/2 (Pl v. Smith & Wesson) |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | • Count III- Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 et seq. (Pl v. Smith & Wesson)<br>• Count IV-Negligence (Pl v. Smith & Wesson)<br>• Count V-Negligence (Pl v. Gun Store Defendants)<br>• Count VI-Aiding & Abetting (Pl v. Gun Store Defendants)<br>• Count VII-Negligence (Pl v. Crimo Jr.)<br>• Count VIII-Battery (Pl v. Crimo III)<br>• Count IX-Assault (Pl v. Crimo III)<br>• Count X-IIED and NIED (Pl v. All Defendants) |
| Coplan & Crane | *Jaffe*, 24-LA-0000481<br>• Ashlee Jaffe | • Cybear Interactive, LLC<br>• Watauga Group, LLC<br>• Clandestine Media Group, LLC<br>• Charles Osborne | • Count I-Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act-Unfairness 815 ILCS 505/2 (Pl v. Smith & Wesson)<br>• Count II- Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act- |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | • Leslie Osborne | Deception 815 ILCS 505/2 (Pl v. Smith & Wesson)<br>• Count III- Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 et seq. (Pl v. Smith & Wesson)<br>• Count IV-Negligence (Pl v. Smith & Wesson)<br>• Count V-Negligence (Pl v. Gun Store Defendants)<br>• Count VI-In-Concert Liability-Rstmt (2nd) Torts §876 (Pl v. Gun Store Defendants)<br>• Count VII-Negligence (Pl v. Crimo Jr.)<br>• Count VIII-In-Concert Liability (Pl v. Crimo Jr.)<br>• Count IX-Battery (Pl v. Crimo III)<br>• Count X-Assault (Pl v. Crimo III)<br>• Count XI-IIED and NIED (Pl v. All Defendants) |
| Salvi, Schostok & Pritchard | *McCarthy*, 24-LA-00000466<br>• Estate of A.M. by and through The Chicago Trust Company, NA | • Cybear Interactive, LLC | • Count I-Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act- |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | • Estate of Irina McCarthy, by and through The Chicago Trust Company, NA<br>• Margo McCarthy, individually and as Independent Administrator of the Estate of Kevin McCarthy | • Watauga Group, LLC<br>• Clandestine Media Group, LLC<br>• Charles Osborne<br>• Leslie Osborne | • Unfairness 815 ILCS 505/2 (Pl v. Smith & Wesson)<br>• Count II - Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act- Deception 815 ILCS 505/2 (Pl v. Smith & Wesson)<br>• Count III - Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 et seq. (Pl v. Smith & Wesson)<br>• Count IV-Negligence (certain Pl v. Smith & Wesson)<br>• Count V-Negligence (certain Pl v. Smith & Wesson Defendants)<br>• Count VI- Count V- Negligence (certain Pl v. Gun Store Defendants)<br>• Count VII-Negligence (certain Pl v. Gun Store Defendants)<br>• Count VIII-Negligence (certain Pl v. Crimo Jr.)<br>• Count IX- Negligence (certain Pl v. Crimo Jr.) |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | • Count VIII-In-Concert Liability (Pl v. Crimo Jr.)<br>• Count X-In-Concert Liability (Pl v. Gun Store Defendants)<br>• Count XI- In-Concert Liability (Pl v. Crimo Jr.)<br>• Count XII-Battery (certain Pl v. Crimo III)<br>• Count XIII-Assault (certain Pl v. Crimo III)<br>• Count XIV- Assault (certain Pl v. Crimo III)<br>• Count XV-IIED and NIED (certain Pl v. Crimo III)<br>• Count XVI-IIED and NIED (certain Pl v. Crimo III)<br>• Count XVII-Wrongful Death Act (certain Pl v. Smith & Wesson)<br>• Count XVIII-Wrongful Death Act (certain Pl v. Smith & Wesson)<br>• Count XIX-Wrongful Death Act (certain Pl v. Gun Store Defendants)<br>• Count XX-Wrongful Death Act (certain Pl v. Gun Store Defendants) |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | • Count XXI-Wrongful Death Act (certain Pl v. Crimo Jr.)<br>• Count XXII-Wrongful Death Act (certain Pl v. Crimo Jr.)<br>• Count XXIII-Survival Act (certain Pl v. Smith & Wesson)<br>• Count XXIV-Survival Act (certain Pl v. Smith & Wesson)<br>• Count XXV-Survival Act (certain Pl v. Gun Stores)<br>• Count XXVI-Survival Act (certain Pl v. Gun Stores)<br>• Count XXVII-Survival Act (certain Pl v. Crimo Jr.)<br>• Count XXVIII-Survival Act (certain Pl v. Crimo Jr.) |
| • Koskoff Koskoff & Bieder<br>• Rapoport Law | *Uvaldo,* 24-LA-00000471<br>• Maria Uvaldo, individually and as Co-Independent Administrator of the Estate of Eduardo Uvaldo<br>• Tanya Castro, individually; as Co-Independent Administrator of the Estate of Educardo Uvaldo; and as mother and next friend of Ian Castro<br>• Fred Castro, individually and as father and next friend of Ian Castro | • NSSF<br>• Cybear Interactive, LLC<br>• Watauga Group, LLC<br>• Clandestine Media Group, LLC | • Count I-Wrongful Death-Negligent Entrustment/Willful & Wanton Conduct (certain Pl v. Smith & Wesson)<br>• Count II-Survival-Negligent Entrustment/Willful & |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | • Nubia Uvaldo-Hogan, individually and as mother and next friend of Brian F. Hogan<br>• Brian Hogan, individually and as mother and next friend of Brian F. Hogan<br>• Jose Guzman as father and next friend of Mayleen Guzman<br>• Alexander Kuchar<br>• Eley Kuchar<br>• Charles Kuchar<br>• Aubrey Noltemeyer, individually and as mother and next friend of Margaret Noltemeyer and Mary Graham Noltemeyer<br>• Charles W. Noltemeyer, individually and as father and next friend of Margaret Noltemeyer and Mary Graham Noltemeyer<br>• Guadalupe Miranda, individually and as a mother and next friend of Jamie Mazariegos | | Wanton conduct (certain Pl v. Smith & Wesson)<br>• Count III-Negligent Entrustment/Wilfful & Wanton Conduct (certain Pl v. Smith & Wesson)<br>• Count IV-Wrongful Death-Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 (certain Pl v. Smith & Wesson)<br>• Count V-Survival - Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 (certain Pl v. Smith & Wesson)<br>• Count VI- Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/2 (certain Pl v. Smith & Wesson) |
| | | | • Count VII-Wrongful Death-Negligence/Willful and Wanton Conduct (certain Pl v. Smith & Wesson) |
| | | | • Count VIII-Survival Action-Negligence/Willful and Wanton Conduct (certain Pl v. Smith & Wesson) |
| | | | • Count IX-Negligence/Willful and Wanton Conduct (certain Pl v. Smith & Wesson) |
| | | | • Count X-Wrongful Death-Aiding & Abetting (certain Pl v. Gun Stores) |
| | | | • Count XI-Survival Action-Aiding & Abetting (certain Pl v. Gun Stores) |
| | | | • Count XII-Aiding & Abetting (certain Pl v. Gun Stores) |
| | | | • Count XIII-Wrongful Death- |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | Negligence/Willful and Wanton Conduct (certain Pl v. Gun Stores) |
| | | | • Count XIV-Survival-Negligence/Willful and Wanton Conduct (certain Pl v. Gun Stores) |
| | | | • Count XV-Negligence/Willful and Wanton Conduct (certain Pl v. Gun Stores) |
| | | | • Count XVI-Wrongful Death-Negligent Entrustment/Willful and Wanton Conduct (certain Pl v. Gun Stores) |
| | | | • Count XVII-Survival-Negligent Entrustment/Willful and Wanton Conduct (certain Pl v Gun Stores) |
| | | | • Count XVIII-Negligent Entrustment/Willful and Wanton Conduct (certain Pl v. Gun Stores) |
| | | | • Count XIX-Wrongful Death-Negligent Entrustment (certain Pl v Sports South LLC) |

11

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | • Count XX-Survival-Negligent Entrustment (certain Pl v. Sport South) |
| | | | • Count XXI-Negligent Entrustment (certain Pl v. Sports South) |
| | | | • Count XXII-Wrongful Death-Negligence/Willful and Wanton Conduct (certain Pl v. Crimo Jr.) |
| | | | • Count XXIII-Survival-Negligence/Willful and Wanton Conduct (certain Pl v. Crimo Jr.) |
| | | | • Count XXIV-Negligence/Willful and Wanton Conduct (certain Pl v. Crimo Jr.) |
| | | | • Count XXV-Wrongful Death-Battery (certain Pl v. Crimo III) |
| | | | • Count XXVI-Survival-Battery (certain Pl v. Crimo III) |
| | | | • Count XXVII-Battery (certain Pl v. Crimo III) |
| | | | • Count XXVIII-Assault (certain Pl v. Crimo III) |
| | | | • Count XXIX-Survival-Negligent Infliction of |

Cases Consolidated under *Roberts v. Smith & Wesson*

| Law Firm(s) | Parties | RIDs | Complaint |
|---|---|---|---|
| | | | Emotional Distress (certain Pl v. Smith & Wesson, Gun Stores, and Crimo Jr.)<br>• Count XXX-NIED (Pl v. Smith & Wesson, Gun Stores, and Crimo Jr.)<br>• Count XXXI-Survival-NIED (certain Pl v. Crimo III)<br>• Count XXXII-IIED (Pl v. Crimo III) |

13